### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| STUDENT FINANCE CORPORATION, | Case No. 02-11620 (DDS) |
| Debtor. | |
| CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION, | Adversary Proceeding No. 04-58003 |
| Plaintiff, | District Court Case No. 1:05-cv-00072-JJF |
| v. | |
| McGLADREY & PULLEN, LLP, and MICHAEL AQUINO, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF McGLADREY & PULLEN, LLP AND MICHAEL AQUINO

DUANE MORRIS LLP
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Phone: 302-657-4951
Fax: 302-657-4901

-and-

THELEN REID & PRIEST LLP
Richard P. Swanson
Veronica E. Rendon
Jason M. Butler
875 Third Avenue
New York, NY 10022
Phone: 212-603-2000
Fax: 212-603-2001

*Attorneys for McGladrey & Pullen, LLP
and Michael Aquino*

## TABLE OF CONTENTS

Page

STATEMENT OF PROCEEDINGS ................................................................1

SUMMARY OF ARGUMENT ....................................................................2

FACTS ...........................................................................................4

ARGUMENT ....................................................................................10

I.    *LAFFERTY* AND THE *IN PARI DELICTO* DOCTRINE BAR CLAIMS
      BROUGHT ON BEHALF OF THE SFC ESTATE ....................................10

      A.    The Interaction of the *In Pari Delicto* and Standing Doctrines ..............10

      B.    *Lafferty* and the *In Pari Delicto* Doctrine Bar Claims Brought On Behalf
            Of The SFC Estate ..............................................................11

II.   THE TRUSTEE LACKS STANDING TO BRING CLAIMS ON BEHALF OF
      THE ESTATE'S CREDITORS ........................................................15

      A.    *Caplin* and Other Cases Hold That the Trustee Has No Standing ............16

      B.    Section 544 of the Bankruptcy Code Does Not Authorize the Trustee to
            Sue ..............................................................................19

III.  THE TRUSTEE'S FRAUD CLAIMS ARE DEFICIENT ..............................23

IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND
      ABETTING A BREACH OF FIDUCIARY DUTY ....................................25

V.    THE TRUSTEE FAILS TO STATE A CLAIM FOR NEGLIGENT
      MISREPRESENTATION ..............................................................28

VI.   THE TRUSTEE FAILS TO STATE A CLAIM FOR FRAUDULENT
      CONVEYANCE ......................................................................30

CONCLUSION ..................................................................................31

i

## TABLE OF AUTHORITIES

### CASES

*In re APF Co.,*
    308 B.R. 183 (Bank. Del. 2004) ................................................................31

*American Trade Partners, L.P. v. A-1 International Importing Partners, L.P.,*
    770 F. Supp. 273 (E.D. Pa. 1991) ..........................................................13

*Beiger v. Price Waterhouse,*
    81 B.R. 303 (E.D. Pa. 1987) ...............................................................29

*Caplin v. Marine Midland Grace Trust Co. of New York,*
    406 U.S. 416 (1972) ...............................................................*passim*

*Colin v. Onyx Acceptance Corp.,*
    31 Fed. Appx. 359 (9th Cir. 2002) ..........................................................24

*Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.,*
    187 F. Supp. 2d  400 (W.D. Pa. 2002) ....................................................26

*E.F. Hutton & Co. v. Hadley,*
    901 F.2d 979 (11th Cir. 1990) ...............................................................20

*E.F. Hutton Mortgage Corporation v. Pappas,*
    690 F. Supp. 1465 (D. Md. 1988) ........................................................24, 27

*Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick and Cabot,*
    312 Pa. Super. 125 (Pa. Super. Ct. 1983) .............................................13

*Ferris Baker Watts, Inc. v. Ernst & Young LLP,*
    395 F.3d 851 (8th Cir. 2005) ...............................................................24

*Flood v. Makowski,*
    No. 03-1803, 2004 U.S. Dist. LEXIS 16957 (M.D. Pa. Aug. 24, 2004) ...........25

*Fluke v. Heidrick & Struggles, Inc.,*
    No. 02-CV-8385, 2003 WL 22316772 (E.D. Pa. Aug. 27, 2003) .............25, 29

*In re Granite Partners, L.P.,*
    194 B.R. 318 (Bankr. S.D.N.Y. 1996) ....................................................20

*Greenberg v. Bear Stearns & Co.,*
    220 F.3d 22 (2d Cir. 2000) ...............................................................26

*Hirsch v. Arthur Andersen & Co.,*
    72 F.3d 1085 (2d Cir. 1995) ..........................................................15, 29

ii

*In re Ikon Office Solutions, Inc.,*
  277 F.3d 658 (3d Cir. 2002)..................................................................................24

*Jackson Nat'l Life Ins. Co. v. Kennedy,*
  741 A.2d 377 (Del. Ch. 1999)..............................................................................27

*John Hancock Mutual Life Ins. Co. v. KPMG Peat Marwick,*
  232 A.D. 2d 283, 648 N.Y.S. 2d 911 (1st Dep't 1986) ........................................24

*In re John W. Miller,*
  197 B.R. 810 (W.D. N.C. 1996) ...........................................................................20

*KBT Corp., Inc. v. Ceridian Corp.,*
  966 F. Supp. 369 (E.D. Pa. 1997) ........................................................................25

*Leo v. Kerr-McGee Chem. Corp.,*
  37 F.3d 96 (3d Cir.1994).......................................................................................26

*Lichtman v. Taufer,*
  2004 WL 1632574 (Pa. Comm. Pl. 2003) .......................................................26, 27

*In re Lukens Inc. Shareholders Litig.,*
  757 A.2d 720 (Del. Ch., New Castle 1999) .........................................................27

*Lum v. Bank of America,*
  361 F.3d 217 (3d Cir. 2004)..................................................................................24

*Michelson v. Exxon Research & Engineering Co.,*
  629 F. Supp. 418 (E.D. Pa. 1986) ........................................................................25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001).................................................................................22

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,*
  267 F.3d 340 (3d Cir. 2001)...........................................................................passim

*In re Ozark Restaurant Equipment, Co., Inc.,*
  816 F.2d 1222 (8th Cir. 1987) .............................................................................20

*In re Phar-Mor, Inc. Securities Litig.,*
  892 F. Supp. 676 (W.D. Pa. 1995)........................................................................28

*Pierce v. Rossetta Corp.,*
  1992 WL 165817 (E.D. Pa. June 12, 1992) .........................................................26

*Production Resources Group, L.L.C. v. NCT Group, Inc.,*
  863 A.2d 772 (Del. Ch. Nov. 17, 2004).................................................................28

iii

*In re Reliance Securities Litigation,*
    135 F. Supp. 2d 480 (D. Del. 2001).............................................................................24

*Rolick v. Collins Pine Co.,*
    925 F.2d 661 (3d Cir. 1991)...................................................................................25

*In re Santa Fe Pacific Corp.,*
    669 A.2d 59 (Del. 1995) ........................................................................................27

*Shearson Lehman Hutton, Inc. v. Wagoner,*
    944 F.2d 114 (2d Cir. 1991)...................................................................................15

*In re The Bennett Funding Group, Inc. v. Kirkpatrick & Lockhart LLP,*
    336 F.3d 94 (2d Cir. 2003)................................................................................15, 16

*The Pitt News v. Fisher,*
    215 F.3d 354 (3d Cir. 2000)...................................................................................16

*Thompson v. Glenmede Trust Co.,*
    No. Civ. A. 92-5233, 1993 WL 197031 (E.D. Pa. June 8, 1993))....................................15

*Ultramares Corp. v. Touche,*
    255 N.Y. 170, 174 N.E. 441 (1931)...........................................................................22

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982)..............................................................................................16

*Warth v. Seldin,*
    422 U.S. 490 (1975)..............................................................................................16

*Waslow v. Grant Thornton (In re Jack Greenberg, Inc.),*
    212 B.R. 76 (Bankr. E.D. Pa. 1997) .........................................................................14

*Wedtech Corp. v. KPMG Main Hurdman,*
    81 B.R. 240 (S.D.N.Y. 1981)..................................................................................15

*In re Worlds of Wonder Securities Litigation,*
    35 F.3d 1407 (8th Cir. 1984) ..................................................................................24

*Ziemba v. Cascade Int'l, Inc.,*
    256 F.3d 1208 (11th Cir. 2001) ...............................................................................23

## STATUTES

11 U.S.C. § 544.............................................................................................*passim*

11 U.S.C. § 548(a)(1)............................................................................................30

11 U.S.C. § 567(3) ..............................................................................................17

11 U.S.C. § 75 ................................................................................................................17

Fed. R. Civ. Pro. 9(b) ..........................................................................................23, 25, 30

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................................1

6 Del. Code § 1304(a)(1) ...................................................................................................30

**MISCELLANEOUS**

124 Cong. Rec. §17406 (daily ed. Oct. 6, 1978), reprinted in 1978 U.S. Code Cong. &
    Admin. News 5787, 6525 ..........................................................................................21

124 Cong. Rec. H11089 (daily ed. September 28, 1978), reprinted in, 1978 U.S. Code
    Cong. & Admin. News 5787, 6456 ...........................................................................21

H.R. 8200, 95th Cong., 1st Sess., 416-17 (1977) ............................................................20

*Mark L. Prager, et al., Pursuing Alter-Ego Liability Against Non-Bankrupt Third*
    *Parties: Structuring A Comprehensive Conceptual Framework*, 35 St. Louis U.
    L.J. 657 (1991) ...........................................................................................................21

*Restatement (Second) of Torts*, § 552(1) ........................................................................28

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 7 |
| STUDENT FINANCE CORPORATION, | ) |
| | ) Case No. 02-11620 (DDS) |
| Debtor. | ) |
| | ) |
| | ) |
| CHARLES A. STANZIALE, JR., | ) |
| CHAPTER 7 TRUSTEE OF STUDENT | ) |
| FINANCE CORPORATION, | ) Adversary Proceeding No. 04-58003 |
| | ) |
| Plaintiff, | ) District Court Case No. 1:05-cv-00072-JJF |
| | ) |
| v. | ) |
| | ) |
| McGLADREY & PULLEN, LLP, and | ) |
| MICHAEL AQUINO, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS

Defendants McGladrey & Pullen, LLP and Michael Aquino (collectively, "McGladrey")

submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, to dismiss the complaint of the Chapter 7 Trustee (the

"Trustee") of Student Finance Corporation ("SFC") for failure to state a claim.

### STATEMENT OF PROCEEDINGS

On December 22, 2004, the Trustee initiated this action by filing an adversary proceeding

in the United States Bankruptcy Court for the District of Delaware.  On January 26, 2005,

McGladrey filed an uncontested motion to withdraw the reference of the adversary proceeding

from the United States Bankruptcy Court to the United States District Court for the District of

Delaware. That motion was granted by the Bankruptcy Court and is pending before the district court.

McGladrey has filed, today, a Motion to Dismiss. This is Defendants' Memorandum of Law In Support of their Motion to Dismiss.

## SUMMARY OF ARGUMENT

1.     McGladrey was one of the independent outside accountants for SFC. From 1996 through 1999, SFC was audited by other firms and SFC utilized the services of other outside accountants. The Trustee has not elected to sue any of them. The Trustee sued McGladrey for opining on an allegedly false and misleading December 31, 2000 financial statement for SFC, the only audit report which McGladrey ever issued, and for issuing certain "agreed upon procedures" reports (or "AUPs") as of December 31, 2000. The Trustee, who steps into the shoes of SFC, makes these claims notwithstanding that the allegedly false financial statement on which McGladrey opined was SFC's, issued by SFC's management (*see* AU § 110.03 promulgated by the AICPA), and the AUPs performed by McGladrey were extremely limited engagements that did not rise to the level of an audit and did not require McGladrey to make disclosures regarding the alleged forbearance payments at issue. The Trustee concedes that SFC's December 31, 2000 financial statements made disclosures concerning forbearance payments and that McGladrey insisted upon those disclosures.

2.     The theory of the Trustee's complaint is that McGladrey, by not insisting upon stronger language in the financial statements related to forbearance, or making a forbearance disclosure in the AUPs, assisted in a fraud perpetrated by Andrew Yao, the sole shareholder and CEO of SFC. The problem with the Complaint is that the Trustee steps into the shoes of SFC and has no greater right to sue than the alleged fraudster. The doctrine of *in pari delicto*

2

therefore bars the Trustee from bringing claims on behalf of the SFC Estate. Definitive Third Circuit law compels this conclusion. *See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340 (3d Cir. 2001). The holding of *Lafferty* is directly on point and was decided on facts almost identical to those present here.

3.    Recognizing this obstacle, the Trustee purports to assert five tort claims on behalf of SFC's creditors. The Trustee, however, does not have standing to assert claims on behalf of SFC's creditors. *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972). All the Trustee can do is assert claims on behalf of SFC's Estate and, as to those claims, *Lafferty* holds that the *in pari delicto* doctrine is a complete bar.

4.    If the Trustee's theory of the case were correct, two bedrock principles of accountant's liability—reliance and privity—would be eviscerated. The Trustee cannot establish reliance by individual creditors, nor can he show they individually were in privity with McGladrey. The creditors are in the best position to decide if they believe they have a claim and to assert any such claim. The creditors cannot stand behind the Trustee while he purports to assert claims on their behalf.

5.    The Trustee attempts to deal with what he knows to be an *in pari delicto* and standing problem by relying on section 544(a) of the Bankruptcy Code, which he claims entitles him to sue "on behalf of, and for the benefit of, SFC's creditors." (Compl., ¶ 8; *see also* Compl., p. 1) The Trustee, however, misconstrues section 544, the so-called "strong arm" clause, which applies only to avoidance actions and does not permit the bringing of tort claims on behalf of Estate creditors.

3

## FACTS

Defendants assume, as they must, the truth of the facts alleged in the complaint for purposes of this motion only.

### The Complaint

SFC's business was the origination and securitization of sub-prime student loans principally for students at trucking schools. (Compl., ¶¶ 2-4)[1] The schools enrolled students, who in turn borrowed funds for tuition from SFC. SFC originated the loans utilizing financing from two "warehouse" lenders, Wilmington Trust and PNC, ultimately selling the student loans to securitization trusts which issued notes to be re-paid via collections received on the student loans. Wells Fargo served as Indenture Trustee of the securitization trusts. Royal Indemnity Company ("Royal") insured the collection of the student loans in order to guaranty payment to the securitized noteholders. (Compl., ¶¶ 16 *et seq*.)

The complaint alleges that SFC perpetrated a "Ponzi" scheme. SFC allegedly made loan payments on behalf of the students, disguising the default rates and enabling SFC to finance new loans. (Compl., ¶ 3) The complaint alleges that "[i]n fact, students failed to repay their loans in numbers much higher than the advertised 20% default rate." (Compl., ¶ 25) The payments allegedly were "misleadingly dubbed 'forbearance payments'" because SFC was making payments on the students' behalf, not agreeing to "a temporary cessation of payments." (Compl., ¶¶ 25, 64) The complaint alleges that McGladrey knew about the forbearance payments, their purpose and effect, and acquiesced in them. Specifically, the Trustee alleges that "[b]y

---

[1]    The Complaint in this action is attached as Exhibit A to the Appendix of Exhibits to this Memorandum of Law.

4

certifying financial Reports McGladrey knew were misleading and deceptive and that

McGladrey knew would be used by SFC with creditors, and by not requiring that SFC disclose

its misrepresentations to creditors, McGladrey aided and abetted SFC's directors' and officer's

fraud on SFC's creditors." (Compl., ¶ 84) In addition, the Trustee alleges "McGladrey also

knew that it had not conducted its audit in accordance with GAAS," and that it gave a "false

opinion that the financial statements fairly presented SFC's financial position in all material

respects in conformity with GAAP." (Compl., ¶¶ 86, 89)

In his complaint, the Trustee concedes that SFC perpetrated a fraud. (Compl., ¶ 4, *et*

*seq.*) Indeed, in another adversary proceeding, the Trustee sued Andrew Yao, SFC's principal,

who was "SFC's sole shareholder and served as its Chief Executive Officer and Treasurer,"

alleging that Yao perpetrated a Ponzi scheme and a fraud, looted the company and engaged in

fraudulent conveyances. (Ex. B, ¶ 17)

In addition to suing Yao, the Trustee also sued Royal in a separate adversary proceeding.

Royal is, of course, the Estate's principal creditor. In his action against Royal, the Trustee

alleged that "[t]hrough its due diligence, before Royal issued its first policy, Hibberd [Royal's

employee] was aware that SFC maintained accounts that SFC could use to pay claims that

otherwise could be made against the Royal Policies." (Ex. C, ¶ 44) The Trustee further alleged

against Royal that "[t]he forbearance payments prevented numerous Student Loan Accounts

from going into default, and claims that otherwise would be made against Royal were not made,"

and that "[t]he fact that SFC utilized such forbearance payments was not disclosed to *all*

creditors or parties in interest." (*Id.*, ¶¶ 47, 48) (Emphasis added) The Trustee has thus alleged

that Royal was aware of the forbearance payments, even if other creditors may not have been.

5

These allegations against Royal demonstrate that reliance on McGladrey's statements is an individualized issue and may not be alleged *en masse*, as the Trustee has attempted to do here.

The Trustee's complaint against McGladrey is critical of the disclosures about forbearance payments made in SFC's year 2000 financial statements. In his complaint against Royal, however, the Trustee admits that the foregoing disclosures adequately apprised Royal of forbearance payments, stating, "SFC's use of 'forbearance' payments to make payments for obligors was referenced in footnotes in SFC's audited financial statement for the year 2000. This financial statement was furnished by SFC to Royal." (*Id.*, ¶ 46) The Trustee also alleges in his complaint against Royal that "[p]rior to Royal's issuance of the Royal Policies, Royal was afforded the opportunity to perform, and did in fact conduct, substantial due diligence." (*Id.*, ¶ 32) These allegations again show why reliance is an individualized inquiry.

## SFC's December 31, 2000 Financial Statements

As noted above, SFC's December 31, 2000 financial statements were the only financial statements on which McGladrey ever opined. The Trustee concedes that the financial statements disclosed the existence, purpose and magnitude of the forbearance payments. The Trustee also concedes that it was McGladrey that insisted on the disclosure. (Compl., ¶ 63)

The Trustee nevertheless criticizes the disclosure, stating "[t]he use of the term 'forbearance' ... does not comport with the commonly understood definition of 'forbearance.'" (Compl., ¶ 68) The Trustee's position is that the language misled the reader into thinking these were not actual cash payments, but simply an agreement to defer payment to a later date.

6

In fact, the existence of forbearance payments and their materiality is expressly disclosed in the financial statements. For example, note 1, "Summary of Significant Accounting Policies," p. 13 states:

> School Reserves
>
> When originating or purchasing student loans, the Company generally funds only a portion of the principal borrowed. School reserves represent the unfunded portion of the loan to the student. Payment of such unfunded balance to the school is contingent upon certain criteria relating to: (1) the student meeting certain educational requirements, and (2) the Company receiving a specific number of timely payments from the student. These funds are released to the schools at various stages during the student's education, with the final portion released upon graduation if the student's loan is not delinquent.
>
> The school reserve may include additional amounts designated to absorb forbearance made in accordance with school and borrower agreements and potential credit losses for sold loans based upon the deemed credit quality of the borrower. Ultimately, some of these amounts may be released to the schools under the terms of their agreements.

(Ex. D at p. 13) The financial statements indicate that the school reserve account was in excess of $26,000,000. (*Id.* at p. 4)

Likewise, note 3, "Securitization and Retained Beneficial Interest," shows a total principal loan balance of $245,000,000, of which $184,000,000 had been securitized, $61,000,000 was available for sale, and $48,000,000 was 60 days or more past due. The note also states that "[t]he above information reflects school reserve forbearance." (*Id.* at p. 19)

The Trustee alleges that these disclosures were "cryptic," and "purposely misleading" (Compl., ¶ 67), essentially because they did not disclose that these were actual cash payments being made. However, in note 7, "School Reserves," it is stated that:

7

A summary of the activity in school reserves was as follows:

| December 31, | 2000 | 1999 |
|---|---|---|
| Balance at beginning of year | $7,367,768 | $4,500,000 |
| Originations | 146,455,946 | 57,623,651 |
| Payments to schools | (111,877,722) | (42,850,518) |
| Forbearance payments | (9,515,841) | (2,012,190) |
| Allocations to allowance for credit losses | (5,182,163) | (9,893,175) |
| Charge-offs | (629,016) | - |
| Balance at end of year | $26,618,972 | $7,367,768 |

(*Id.* at p. 22)

Contrary to the Trustee's contention, it is clear from this table that forbearance payments were actual cash payments. The Trustee concedes as much when he says, "McGladrey 'blessed' SFC's misleading and meaningless term – 'forbearance' and, in one instance, 'forbearance payments' – in the financial statements." (Compl., ¶ 65)  If the reader of the financial statement had questions about the forbearance payments or their significance, he could have asked and may have had a duty to do so.  To the extent that SFC's warehouse lenders, insurers and underwriters received or read the financial statements, they were all sophisticated institutional investors.  The fact of cash forbearance payments was disclosed clearly on the face of SFC's financial statements.

**The December 31, 2000 AUPs**

McGladrey also issued certain AUPs as of December 31, 2000.  "Agreed-upon procedures," as the term suggests, represent specified procedures performed by an accountant pursuant to an agreement between the accountant and his client.  Essentially they are creatures of contract.  These procedures are governed by different standards than the AICPA's Generally Accepted Auditing Standards (or "GAAS"), which are the standards cited by the Trustee throughout his complaint.  *See* AU §622; *see also* AU §201.

8

In this case, McGladrey performed AUPs on each of the four securitization trusts that were created and closed during 2000. (Ex. E.) The reports, while dated February 21, 2001, were actually issued on April 30, 2001, as can be determined from the McGladrey report control sheets. (Ex. F) The McGladrey audit opinion on SFC's December 31, 2000 financial statements was issued the same day. Pursuant to AICPA guidelines, a report is to be dated as of the date of completion of the relevant fieldwork, even if the report is actually issued later (as is typically the case). *See* AU §530.

The AUPs each state that "[t]his report is intended solely for the information and use of Student Loan Servicing, LLC and the Trustee [i.e., Wells Fargo, the Trustee of the Grantor Trustee, *not* the Chapter 7 Trustee], and is not intended to be, and should not be used by anyone other than the listed parties." (Ex. E)[2]

### Causes of Action

The Trustee asserts seven causes of actions:

1. Aiding and Abetting Fraud (Compl., ¶¶ 79, *et seq.*);

2. Fraud (*Id.*, ¶¶ 85, *et seq.*);

3. Fraudulent Concealment (*Id.*, ¶¶ 94, *et seq.*);

4. Aiding and Abetting Breach of Fiduciary Duty (*Id.*, ¶¶ 99, *et seq.*);

5. Negligent Misrepresentation (*Id.*, ¶¶ 105, *et seq.*); and

6-7. Avoidance of Fraudulent Transfers (*Id.*, ¶¶ 111, *et seq.*).

---

[2]     Student Loan Servicing was 30% owned by SFC.

9

For the reasons discussed below, each one of these claims should be dismissed.

**ARGUMENT**

I.     ***LAFFERTY* AND THE *IN PARI DELICTO* DOCTRINE BAR CLAIMS BROUGHT ON BEHALF OF THE SFC ESTATE**

     A.     **The Interaction of the *In Pari Delicto* and Standing Doctrines**

The Trustee purports to assert five tort claims against McGladrey on behalf of the creditors of the SFC Estate. In the first paragraph of the Complaint, the Trustee states that this action is "brought by the Trustee … on behalf of all creditors to SFC." Similarly, paragraph 8 states that, "This is an adversary proceeding brought pursuant to section 544 (a) … on behalf of, and for the benefit of SFC's creditors."

The Trustee brought the action in this manner purportedly to redress "[i]njury to SFC's creditors …." (Compl., ¶ 93) Numerous other references in the Complaint demonstrate the degree to which the Trustee attempts to step into the shoes of individual creditors to assert their claims, including by alleging their individual reliance on McGladrey's reports:

- ¶ 84: "By certifying financial Reports McGladrey knew were misleading and deceptive and that McGladrey knew would be used by SFC with [sic] creditors, and by not requiring that SFC disclose its misrepresentations to creditors, McGladrey aided and abetted SFC's directors' and officers' fraud on SFC's creditors."
- ¶ 98: "SFC's investors and creditors justifiably relied on the Accounting Reports in extending further credit to SFC and were injured by their reliance."
- ¶ 104: "By issuing and then failing to amend or revise their Reports, McGladrey aided and abetted SFC's officers and directors breach of their fiduciary duties to SFC's creditors during SFC's period of insolvency."
- ¶ 110: "SFC's creditors were damaged when they relied on McGladrey's Reports because they continued to do business with and extend credit to a company, SFC, whose business was a sham."

Additionally, in his Introduction to the Complaint, the Trustee alleges that "[e]ssential to SFC's officers and directors' Ponzi-plan was that SFC have legitimate-seeming financial reports,

10

and that those reports hide the core of SFC's fraud. These reports were the bait SFC used to lure unsuspecting creditors and investors to the scheme." (Compl., ¶ 4)

One may question why the Trustee attempts to bring this action on behalf of SFC's creditors, and not on behalf of the SFC Estate itself, as normally would be the case. An understanding of Third Circuit law, however, makes the answer abundantly clear.

The Trustee attempts to bring this action on behalf of the Estate's creditors for one purpose and one purpose alone: to prevent dismissal of the action pursuant to the Third Circuit's controlling *Lafferty* decision and the doctrine of *in pari delicto*. In seeking to avoid the *in pari delicto* pitfall, however, the Trustee walks straight into another, more fundamental one: lack of standing. As discussed below in Section II, it is well settled that a trustee does not have standing to assert claims of creditors, as the Trustee attempts to do here. Dismissal is also warranted because section 544 of the Bankruptcy Code does not authorize the Trustee to assert claims on behalf of SFC's creditors.

**B.    *Lafferty* and the *In Pari Delicto* Doctrine Bar Claims Brought On Behalf Of The SFC Estate**

The doctrine of *in pari delicto* provides that a plaintiff who is an intentional wrongdoer may not assert a claim against a third party for participating in such wrongdoing. *See Lafferty*, 267 F.3d at 354. Here, there can be no doubt, based on the allegations of the Complaint and allegations made by the Trustee in the many other adversary proceedings, that SFC and its principal Andrew Yao are charged with having perpetrated a massive fraud, and that the Trustee alleges McGladrey participated in that fraud. As a result, any claim made against McGladrey on behalf of the SFC Estate is subject to dismissal. SFC, as the primary fraudster, may not sue a third-party, such as McGladrey, for participating in a fraud of SFC's own making. Such is the

11

holding of *Lafferty*, a case which is almost eerily on point. Indeed, reading *Lafferty* is essentially reading a recital of the facts and circumstances of this case.

In *Lafferty*, two leasing companies controlled by a single family allegedly operated as a Ponzi scheme. The companies, which acquired leases and sold debt certificates, allegedly misstated their financial position to induce investors to purchase the certificates. According to the *Lafferty* complaint, certain third-party professionals, including the companies' accountants, lawyers and underwriters, were instrumental in helping to perpetrate the fraud. The *Lafferty* creditors' committee, which was appointed by the *Lafferty* bankruptcy trustee, sued those third-parties under a number of theories, including common law fraud, negligent misrepresentation, mismanagement, breach of fiduciary duty, breach of contract, professional malpractice and aiding and abetting breach of fiduciary duty — the very same causes of action alleged here. *See id.* at 345-46.[3]

After finding that the committee had standing to assert section 541(a) claims on behalf of the estate (as compared to section 544(a) claims on behalf of the estate's creditors, a concept discussed more fully below), the Third Circuit dismissed the committee's claims on the basis of the *in pari delicto* doctrine. In doing so, the court initially found that "[t]he doctrine of *in pari delicto* provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *Id.* at 354. Applying that doctrine to the facts of the case, the *Lafferty* court

---

[3]     That the claims in *Lafferty* were brought by the creditors' committee and not the bankruptcy trustee is of no consequence and certainly not a distinguishing fact. Under the stipulation pursuant to which the *Lafferty* committee commenced the action, "the Committee effectively acquired all the attributes of a bankruptcy trustee for purposes of this case." *Lafferty*, 267 F.3d at 345.

held that "the *in pari delicto* doctrine bars the Committee, standing in the shoes of the Debtors, from bringing its claims against Lafferty" and the other estate professionals. *Id*. at 360.[4]

The *Lafferty* court so held after finding that it was appropriate to impute the fraud of the directors and officers of the company to the company — the debtor into whose shoes the trustee steps. The *Lafferty* court found such imputation to be appropriate because, as here, the directors and officers of the company committed the fraud in the course of their employment. In essence, *Lafferty* precluded a fraudster from blaming others for his fraud.

Moreover, the *Lafferty* court also held that the "adverse interest exception" to the *in pari delicto* doctrine did not apply since the "sole actor" rule was applicable. *Id*. at 359. Pursuant to the "adverse interest exception" if there were innocent, independent actors in positions of authority who might have stopped the wrongdoing had they been apprised of all the relevant facts, *in pari delicto* may not apply. When there is a "sole actor," however, those conditions do not exist. According to *Lafferty*, the general principle of the "sole actor" rule provides:

> If an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests.... The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and the corporation must bear the responsibility for allowing an agent to act without accountability....

*Id*. (internal citations omitted).

---

[4]     *See also American Trade Partners, L.P. v. A-1 Int'l Importing Partners, L.P.*, 770 F. Supp. 273, 276 (E.D. Pa. 1991) (under the *in pari delicto* doctrine, "a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in"); *Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick and Cabot*, 312 Pa. Super. 125 (Pa. Super. Ct. 1983).

For the same reasons as in *Lafferty,* the "sole actor" rule is applicable here. Just as the

debtor in *Lafferty* was dominated and controlled by the sole shareholders who were the primary

wrongdoers and fraudsters, so SFC was dominated and controlled by Andrew Yao, SFC's sole

shareholder, who clearly was the purported primary wrongdoer and fraudster. *Id.* (internal

citations omitted); *see also Waslow v. Grant Thornton (In re Jack Greenberg, Inc.),* 212 B.R. 76,

86 (Bankr. E.D. Pa. 1997).

Thus, it is indisputable that the *in pari delicto* doctrine bars any claim brought by the

Trustee against McGladrey on behalf of SFC. That is true whether or not the third-party claim is

based on a deepening insolvency theory, or other fraud or negligence theories, such as aiding and

abetting fraud, fraud, fraudulent concealment, aiding and abetting breach of fiduciary duty and

negligent misrepresentation, all of which are alleged here. As the Third Circuit observed in

*Lafferty*:

> More generally, the broad idea captured by the *in pari delicto*
> doctrine may involve a number of different defenses, depending on
> whether a contract, tort or other claim is asserted. We nevertheless
> can legitimately speak of one doctrine, *in pari delicto,* across the
> different claims because the analysis under the various causes of
> action will typically be the same. Judge Posner made this point in
> *Cenco, Inc. v. Seidman & Seidman*:
>
> > The challenged [jury] instructions relate to the question
> > whether Seidman was entitled to use the wrongdoing of
> > Cenco's managers as a defense against the charges of
> > breach of contract, negligence, and fraud [which] when
> > committed by auditors, are a single form of wrongdoing
> > under different names.... Because these theories of auditor
> > misconduct are so alike, the defenses based on misconduct
> > of the audited firm or its employees are also alike, though
> > verbalized differently. A breach of contract is excused if
> > the promisee's hindrance or failure to cooperate prevented
> > the promissor from performing the contract. The
> > corresponding defense in the case of negligence is, of
> > course, contributory negligence.... [And, in the fraud
> > context, a] participant in a fraud cannot also be a victim

14

> entitled to recover damages, for he cannot have relied on
> the truth of the fraudulent representations, and such
> reliance is an essential element in a case of fraud.

*Lafferty*, 267 F.3d at 355 (quoting *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453-54 (7th

Cir. 1982) (citation omitted)). *See also In re The Bennett Funding Group, Inc.*, 336 F.3d 94, 102

(2d Cir. 2003) (dismissing claims against debtor's accountants and attorneys for their alleged

malpractice, breach of fiduciary duty and negligence in failing to report their suspicions that

management was using debtor to perpetrate a Ponzi scheme); *Hirsch v. Arthur Andersen & Co.*,

72 F.3d 1085, 1094 (2d Cir. 1995) ("[W]e are persuaded that the *Wagoner* rule should be applied

here, and that Hirsch is precluded from asserting the professional malpractice claims alleged in

the Complaint because of the Debtors' collaboration with the defendants-appellees in

promulgating and promoting the Colonial Ponzi schemes"); *Shearson Lehman Hutton, Inc. v.

Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991) ("A claim against a third party for defrauding a

corporation with the cooperation of management accrues to creditors, not to the guilty

corporation"); *Wedtech Corp. v. KPMG Main Hurdman*, 81 B.R. 240, 241 (S.D.N.Y. 1981).

## II.     THE TRUSTEE LACKS STANDING TO BRING CLAIMS ON BEHALF OF THE ESTATE'S CREDITORS

The doctrine of *in pari delicto* applies to any non-avoidance claim the Trustee may seek

to bring on behalf of the SFC Estate against McGladrey. Because of this insurmountable

obstacle, the Trustee purports to bring his claims on behalf of the Estate's creditors pursuant to

section 544 of the Bankruptcy Code, not section 541 (as to which *Lafferty* holds *in pari delicto*

applies). Two problems are inherent in this approach.

First, in attempting to avoid the doctrine of *in pari delicto*, the Trustee faces another,

more fundamental problem: lack of standing. It is basic black-letter law that a bankruptcy

15

trustee does not have standing to assert non-avoidance claims on behalf of the estate's creditors; rather, the trustee may only assert such claims on behalf of the estate itself (which the Trustee cannot do here due to the *in pari delicto* doctrine).

Second, section 544 only vests the Trustee with "avoidance" powers – it does *not* empower the Trustee to bring third-party tort claims, especially when those claims purportedly are brought on behalf of the estate's creditors and not the estate itself.

### A.    *Caplin* and Other Cases Hold That the Trustee Has No Standing

Standing "'consists of both 'a case or controversy' requirement stemming from Article III, Section 2 of the Constitution, and a subconstitutional 'prudential' element.'" *Lafferty*, 267 F.3d at 346 (quoting *The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000)). Standing is a fundamental requirement, and requires that the party bringing the suit has suffered a "distinct and palpable injury." *Id.* at 347; *see also Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-74 (1982) (discussing fundamental requirement of standing); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (standing requires "distinct and palpable injury").

It is a fundamental principle that a bankruptcy trustee does not have standing to assert claims on behalf of the estate's creditors, but may assert only those claims which belong to the estate itself. *See Lafferty*, 267 F.3d at 347; *see also In re Bennett Funding Group, Inc.*, 336 F.3d 94, 99-100 (2d Cir. 2003) ("[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself") (citing *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991)).

In *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 434 (1972), the Supreme Court of the United States specifically held that a bankruptcy trustee does not have

16

standing to assert claims belonging to estate creditors on their behalf. In *Caplin*, the bankruptcy

trustee attempted to assert claims against an indenture trustee on behalf of certain debenture

holders. The bankruptcy trustee alleged that the indenture trustee negligently and willfully failed

to fulfill obligations to the debenture holders. Specifically, the bankruptcy trustee claimed that

the indenture trustee knew or should have known that the company which issued the debentures

had created and issued fraudulent certificates of indenture compliance which grossly overstated

the company's value. The trial court dismissed the claims for lack of standing. Both the Second

Circuit and the Supreme Court affirmed. *See id.* at 417.

In affirming the dismissal, the Supreme Court identified "three problems with [the

bankruptcy trustee's] argument," each of which required dismissal and each of which is

applicable here. *Id.* at 428. The first standing problem identified by *Caplin* was that the

Bankruptcy Code, or its predecessor the Bankruptcy Act, does not permit bankruptcy trustees to

assert non-avoidance actions belonging to estate creditors:

> [N]owhere in the statutory scheme is there any suggestion that the
> trustee in reorganization is to assume the responsibility of suing
> third parties on behalf of debenture holders. The language, in fact,
> indicates that Congress had no such intent in mind. The statute, 11
> U.S.C. § 567(3), gives the Trustee the right, and indeed imposes
> the duty, to investigate fraud and misconduct and to report to the
> judge the potential causes of action 'available to the estate'…
> [however] there is nothing in the section that enables him to collect
> money not owed to the estate…. His task is simply to 'collect and
> reduce to money the property of the estates for which (he is
> trustee).' 11 U.S.C. § 75.

*Id.* at 428.

The second standing problem discussed in *Caplin, in pari delicto,* is also applicable here:

> This brings us to the second problem with [the bankruptcy
> trustee's] argument…. Assuming that the [bankruptcy trustee's]
> allegations of misconduct on the part of the indenture trustee are

17

> true, [the bankruptcy trustee] has at most described a situation
> where [the debtor] and [the indenture trustee] were *in pari delicto*.
> Whatever damage the debenture holders suffered, under [the
> bankruptcy trustee's] theory [the debtor] is as much at fault as [the
> indenture trustee], if not more so.

*Id.* at 429-30.

In discussing this second problem, the Supreme Court pointed out that it is the creditors,

and not the bankruptcy trustee, who can best evaluate whether they can and should sue:

> It is difficult to see precisely why it is at that point that the trustee
> in reorganization should represent the interests of the debenture
> holders, who are capable of deciding for themselves whether or not
> it is worthwhile to seek to recoup whatever losses they may have
> suffered by an action against the debenture trustee.... It would
> seem, therefore, that the debenture holders, the persons truly
> affected by the suit against [the indenture trustee] should make
> their own assessment of the respective advantages and
> disadvantages, not only of litigation, but of various theories of
> litigation....

*Id.* at 431. This factor has special relevance here, where each SFC creditor must demonstrate

justifiable reliance and privity.

Third, and relatedly, the Supreme Court observed in *Caplin* that granting standing to a

bankruptcy trustee threatens a proliferation of suits with the potential for procedural complexity

and inconsistent outcomes:

> [A] suit by [the bankruptcy trustee] on behalf of the debenture
> holders may be inconsistent with any independent actions that they
> may bring themselves. [The bankruptcy trustee] and the SEC
> make very plain their position that a suit by the trustee in
> reorganization does not pre-empt suits by individual debenture
> holders.... Moreover, if the indenture trustee wins the suit brought
> by the trustee in reorganization, unless the debenture holders are
> bound by that victory, the proliferation of litigation that [the
> bankruptcy trustee] seeks to avoid would then ensue. Finally, a
> question would arise as to who was bound by any settlement....
> Thus, there is no showing whatever that by giving petitioner
> standing to sue on behalf of the debenture holders we would

> reduce litigation. On the contrary, there is every indication that
> litigation would be increased, or at least complicated.

*Id.* at 431-32. The Supreme Court closed its opinion by stating, "For the reasons discussed

above we conclude that petitioner does not have standing to sue an indenture trustee on behalf of

debenture holders." *Id.* at 433.

**B.    Section 544 of the Bankruptcy Code Does Not Authorize the Trustee to Sue**

The Trustee asserts that he has authority to assert creditor claims pursuant to

section 544(a) of the Bankruptcy Code. (Compl., at ¶ 8)[5] The Trustee, however, misconstrues

section 544. That section applies only to avoidance actions and does not grant the Trustee

---

5    Section 544, the so-called "strong arm" clause, provides in pertinent part:

> (a)    The Trustee shall have, as of the commencement of the case, and
> without regard to any knowledge of the trustee or of any creditor, the rights and
> powers of, or may avoid any transfer of property of the debtor or any obligation
> incurred by the debtor that is voidable by—
>
> (1)    a creditor that extends credit to the debtor at the time of the
> commencement of the case, and that obtains, at such time and with respect to
> such credit, a judicial lien on all property on which a creditor on a simple
> contract could have obtained such a judicial lien, whether or not such a creditor
> exists;
>
> (2)    a creditor that extends credit to the debtor at the time of the
> commencement of the case, and obtains, at such time and with respect to such
> credit, an execution against the debtor that is returned unsatisfied at such time,
> whether or not such a creditor exists; or
>
> (3)    a bona fide purchaser of real property, other than fixtures, from the
> debtor, against whom applicable law permits such transfer to be perfected, that
> obtains the status of a bona fide purchaser and has perfected such transfer at the
> time of the commencement of the case, whether or not such a purchaser exists.
>
> (b)    Except as provided in paragraph (2), the trustee may avoid any transfer
> of an interest of the debtor in property or any obligation incurred by the debtor
> that is voidable under applicable law by a creditor holding an unsecured claim
> that is allowable under section 502 of this title or that is not allowable only
> under section 502(e) of this title.

11 U.S.C. § 544

19

authority to bring tort claims on behalf of creditors of SFC. *See In re Granite Partners, L.P.*, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) (stating that section 544 does not extend beyond avoidance actions and does not confer authority upon the trustee to bring "personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors"); *see also E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985 (11th Cir. 1990) (trustee lacks authority to assert claims of debtor's customer creditors); *In re John W. Miller*, 197 B.R. 810 (W.D. N.C. 1996) (trustee lacked standing under section 544's "strong arm" clause to bring malpractice claims against the debtor's attorney that belonged to individual creditors rather than to the debtor).

Section 544(a) is not an alternative way around the Trustee's standing and *in pari delicto* problems, which the U.S. Supreme Court has held preclude a bankruptcy trustee from asserting claims of creditors. *See Caplin*, 406 U.S. at 429-31. Rather, section 544 gives the Trustee the powers of a hypothetical perfect lien creditor to marshal assets of the estate. It does not give the Trustee the power to assert personal claims belonging to individual estate creditors.

Congress never intended to allow bankruptcy trustees to assert personal claims on behalf of creditors via section 544(a). *See In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d 1222 (8th Cir. 1987) (bankruptcy trustee lacks standing to assert alter ego action on behalf of the debtor-corporation's creditors because the claim belongs to the creditors). In so holding, the *Ozark* court examined the legislative history of section 544 and noted that a prior version of that section included a proposed subsection (c), which was intended to overrule *Caplin* and provide a trustee with authority to assert claims on behalf of individual creditors or classes of creditors where recovery in the suit would reduce the claims of those creditors or creditors classes against the estate. *See id.* at 1227-28; *see also* H.R. 8200, 95th Cong., 1st Sess., 416-17 (1977). Congress,

20

however, refused to enact proposed section 544(c), which was deleted from an amended version

of the House Bill.[6]

The Supreme Court in *Caplin* invited Congress to consider expanding the trustee's

authority to bring creditor claims, stating:

> [T]his does not mean that it would be unwise to confer such
> standing on trustees in reorganization. It simply signifies that
> Congress has not yet indicated even a scintilla of intention to do
> so, and that such a policy decision must be left to Congress and not
> the judiciary.

406 U.S. at 434. Congress, however, did not accept the Supreme Court's invitation. The

legislative history of section 544 of the Bankruptcy Code clearly indicates that Congress

concluded that a bankruptcy trustee should have authority to bring claims only on behalf of the

debtor, and not personal claims belonging to individual creditors.

The overall structure of the Bankruptcy Code reinforces this conclusion. The so-called

"marshalling powers," which are embodied in the "540" series of sections of the Bankruptcy

Code, include the power to seek turnover of estate property and to recover preferences and

fraudulent conveyances. Section 544, the "strong arm" clause, gives the trustee the power to

invalidate unperfected liens and security interests. These powers have everything to do with

marshalling the assets of the estate, and nothing to do with giving the trustee the power to assert

tort claims belonging to third parties.

---

[6]    *See Mark L. Prager, et al., Pursuing Alter-Ego Liability Against Non-Bankrupt Third Parties. Structuring
A Comprehensive Conceptual Framework*, 35 St. Louis U. L.J. 657, 667-70 (1991) (discussing the removal
of proposed Section 544(c)); *see also* 124 Cong. Rec. §17406 (daily ed. Oct. 6, 1978) (statement of Rep.
DeConcini), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 6525; 124 Cong. Rec. H11089
(daily ed. September 28, 1978) (statement of Rep. Edwards), reprinted in, 1978 U.S. Code Cong. & Admin.
News 5787, 6456.

The Trustee's broad reading of section 544 is extreme and unprecedented. First, the Trustee's position would effectively dispense with the reliance requirement for fraud and misrepresentation claims, notwithstanding that any creditor who sues for fraud and negligent misrepresentation must demonstrate justifiable reliance. Many creditors may not have received or read McGladrey's 2000 reports, a fact which cannot be overlooked or excused by virtue of the Trustee having been the one to commence the action.

Second, the Trustee, in essence, is attempting to bring a creditor class action as to which no class could ever be certified. Reliance is inherently an individualized inquiry, which would prevent findings of commonality or typicality under Rule 23 of the Federal Rules of Civil Procedure. The only way around the reliance requirement in a securities class action is through the application of the "fraud on the market" theory. *See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 179 (3d Cir. 2001) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)). That theory does not apply here because this is not a securities case; there is no open and efficient market; and the creditors did not invest in SFC and are in disparate positions. The creditor body here is quite diverse, and includes Royal, Pepper Hamilton, the truck schools and trade vendors. Section 544 should not be interpreted to authorize a class action or to enable the Trustee to prove reliance *en masse*.

Finally, the Trustee's novel reading of section 544 would eliminate the privity requirement. Creditors and investors have long been required to demonstrate privity before they can sue an accountant. *See, e.g., Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). If the Trustee could assert tort claims of creditors in the manner which he seeks, each of these bedrock principles of accounting malpractice law would be eviscerated.

22

### III.    THE TRUSTEE'S FRAUD CLAIMS ARE DEFICIENT

The Trustee has asserted fraud claims against McGladrey for aiding and abetting fraud, fraud and fraudulent concealment. In Count I, aiding and abetting, the Trustee alleges that, "[i]n part through use of McGladrey's Reports, the directors and officers [of SFC] defrauded SFC's creditors into believing that they were doing business with a legitimate business." (Compl., ¶ 50) The Trustee further alleges that McGladrey aided and abetted the SFC fraud "[b]y certifying financial Reports McGladrey knew were misleading and deceptive." (Compl., ¶ 84) In Count II, fraud, the Trustee alleges that McGladrey made "false statements" that SFC's financial statements were "fairly presented … in conformity with GAAP," that "the audit was conducted in accordance with GAAS" and that the AUPs "state they were performed to AICPA standards." (Compl., ¶ 86; *see also* ¶ 89). In Count III, fraudulent concealment, the Trustee alleges McGladrey "deliberately concealed … its knowledge of the Ponzi-payments." (Compl., ¶ 86)

There are several legal deficiencies inherent in the Trustee's position. First, the existence, purpose and magnitude of forbearance payments were disclosed in the notes to the December 31, 2000 financial statements. These detailed disclosures, which the Trustee admits occurred, undercut the Trustee's claim of fraud or fraudulent concealment. To the extent the Trustee attacks McGladrey's professional judgment for failing to disclose more information, such a claim may sound in malpractice, but not fraud. In *Ziemba v. Cascade International, Inc.*, the court ruled that allegations of violations of GAAP and GAAS, which included allegations that the accountant "did not make reasonably adequate informative disclosures," were insufficient to meet the requirements of Rule 9(b), or to establish *scienter* or a claim of fraud. 256 F.3d 1194, 1208 (11th Cir. 2001).

23

Second, violations of GAAP and GAAS, standing alone, are insufficient to create an inference of fraud, or to establish the *scienter* required for a claim of fraud. In *E.F. Hutton Mortgage Corp. v. Pappas*, 690 F. Supp. 1465 (D. Md. 1988), a strikingly similar case, the court said "evidence indicating actionable fraud on the part of [Ernst & Whinney] simply does not exist in this case." *Id.* at 1471. The case involved alleged errors in accounting involving mortgage loan securitizations. The court said, "[i]f an accounting firm could be charged with fraud every time that its audit did not conform to generally accepted accounting principles, then every claim of malpractice would also constitute a claim of fraud." *Id. See also In re Ikon Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994), *cert. denied*, 516 U.S. 909 (1995) ("Even deliberate violations of [GAAP and GAAS], without more, do not amount to fraud"); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 507 (D. Del. 2001) ("GAAP violations, alone, do not constitute fraud."); *Ferris Baker Watts, Inc. v. Ernst & Young LLP*, 395 F.3d 851, 855 (8th Cir. 2005) ("Allegations of GAAP violations are insufficient, standing alone, to raise an inference of *scienter*. Only where these allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient."); *Colin v. Onyx Acceptance Corp.*, 31 Fed. Appx. 359, 361 (9th Cir. 2002) ("A failure to follow GAAP, without more, does not establish *scienter*."); *John Hancock Mut. Life Ins. Co. v. KPMG Peat Marwick*, 232 A.D. 2d 283, 648 N.Y.S. 2d 911 (1st Dep't 1996) (violation of GAAP and GAAS "does not sufficiently allege the element of scienter required in a fraud cause of action").

Third, the Trustee's complaint against McGladrey fails to pass muster under Rule 9(b), which requires that allegations of fraud be made with particularity. *See Lum v. Bank of America*,

24

361 F.3d 217 (3d Cir. 2004) (citing cases). Rule 9(b) requires particularized allegations

regarding *scienter*. Yet, the Trustee's complaint is absolutely bereft of *scienter* allegations.

Finally, the Trustee cannot as a matter of law raise fraud claims based upon alleged

misrepresentations made to and relied upon by third parties, because a cause of action for fraud

requires allegations that the Trustee himself relied upon the alleged misrepresentations. *See*

*Fluke v. Heidrick & Struggles, Inc.*, No. 02-CV-8385, 2003 WL 22316772, at \*\*3-4 (E.D. Pa.

Aug. 27, 2003) ("The Complaint in the present action alleges that Cognis -- not Plaintiff -- relied

upon the statements .... Thus, Plaintiff has failed to allege that he relied on Defendant's

allegedly fraudulent and negligent statements.")[7] For all of these reasons, the Trustee's fraud

claims should be dismissed.

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

The Trustee's fourth claim alleges that McGladrey aided and abetted a breach of

fiduciary duty allegedly owed by SFC's officers and directors to SFC's creditors. The

Pennsylvania Supreme Court, however, has not recognized a cause of action for aiding and

abetting a breach of fiduciary duty, and there is no reason to believe it will soon create such a

tort. *See Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991). Recent federal district

court decisions have predicted that the Pennsylvania Supreme Court will not expand

Pennsylvania law to embrace such an action. *See Flood v. Makowski*, No. Civ. A: CV-03-1803,

---

[7]    *See also KBT Corp., Inc. v. Ceridian Corp.*, 966 F. Supp. 369, 377 (E.D. Pa. 1997) ("accepting [plaintiff's] allegations as true, it is the *advertisers* (1) whom Defendants intended to act on their statements and (2) who did in fact act on them … if Defendant's statements were fraudulent, only the advertisers would have a claim."); *Michelson v. Exxon Research & Engineering Co.*, 629 F. Supp. 418, 423-24 (E.D. Pa. 1986) (holding that plaintiff may not raise a cause of action for fraud "because he cannot … satisfy the requirement that he himself must detrimentally rely on the alleged misrepresentation.").

2004 WL 1908221, at *36 (M.D. Pa. Aug. 24, 2004) ("Pennsylvania has not recognized a cause

of action for aiding and abetting breach of fiduciary duty, and neither will I."); *Daniel Boone*

*Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 413 (W.D. Pa. 2002) ("adoption of

[the cause of action] would represent a significant expansion of Pennsylvania tort liability").[8]

Assuming that the Court does embrace such a claim, the essential elements are: (1) a

breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor;

and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

*See Lichtman v. Taufer*, No. 00556 March Term 2004, 2004 WL 1632574, at **8-9 (Pa. Com. Pl.

2004). Here, the Trustee fails to allege either the existence of a fiduciary duty, or that

McGladrey substantially assisted in any breach of such a duty by SFC's officers and directors.

A claim of accounting malpractice does not meet the pleading requirements to allege

substantial assistance in someone else's intentional tort. The Trustee's theory appears to be that

McGladrey aided and abetted Yao's breach of fiduciary duty to SFC's creditors, because

McGladrey failed to give a "going concern" qualification in its April 2001 opinion on SFC's

December 31, 2000 financial statements. (Compl., ¶ 101) However, a professional's routine or

ordinary services does not constitute "substantial assistance." *See, e.g., Greenberg v. Bear*

*Stearns & Co.*, 220 F.3d 22, 29 (2d Cir. 2000), *cert. denied*, 531 U.S. 1075 (2001) ("The simple

providing of normal clearing services to a primary broker who is acting in violation of the law

---

[8] Some courts in the Eastern District of Pennsylvania have recognized a cause of action for aiding and abetting a breach of fiduciary duty based upon the decisions of lower Pennsylvania state courts. *See, e.g., Pierce v. Rossetta Corp.*, 1992 WL 165817 (E.D. Pa. June 12, 1992). However, the more recent authority from the Western District of Pennsylvania comports with well-settled precepts of federalism, which "require that [federal courts] permit state courts to decide whether and to what extent they will expand common law .... Our role is to apply the current law of the jurisdiction, and leave it undisturbed." *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994).

does not make out a case of aiding and abetting against the clearing broker"); *cf. E.F. Hutton Mortgage Corp.*, 690 F. Supp. at 1465.

To satisfy the "substantial assistance" prong, the Trustee must allege "specific facts" showing that McGladrey knowingly participated in the alleged breach of fiduciary duties by SFC's officers and directors. *See Jackson Nat'l Life*, 741 A.2d at 392; *Lichtman*, 2004 WL 1632574, at **8-9. The Trustee's complaint is devoid of any such detail. Although the Trustee makes the conclusory allegation that McGladrey "was aware" that SFC's officers and directors were furthering SFC's insolvency (Compl., ¶ 102), that is insufficient to establish "substantial assistance" as a matter of law. *See In re Santa Fe Pacific Corp. Shareholders Litig.*, 669 A.2d 59, 72 (Del. 1995) (conclusory allegations that defendant "had knowledge of" and "knowingly and substantially participated and assisted" failed to state a claim for aiding and abetting a breach of fiduciary duty). *See also In re Lukens Inc. Shareholders Litig.*, 757 A.2d 720, 735 (Del. Ch. 1999) (conclusory allegation that defendant "approved and urged" directors to take an act alleged to constitute a breach of the directors' fiduciary duty does not satisfy the pleading burden for aiding and abetting a breach of fiduciary duty); *Thompson v. Glenmede Trust Co.*, No. Civ. A. 92-5233, 1993 WL 197031, at *9 (E.D. Pa. June 8, 1993) (dismissing aiding and abetting claims where the complaint fails to sufficiently allege substantial assistance or encouragement).

Moreover, the Trustee's allegations reveal a fatal flaw. The Trustee alleges that SFC became insolvent in May 2001, at which time the SFC officers' and directors' fiduciary duty to creditors purportedly arose. Yet, the Trustee alleges that McGladrey's 2000 reports were issued in April 2001, one month <u>before</u> the purported fiduciary duty existed. At the time McGladrey issued its report, the fiduciary duty had not even arisen, much less been breached. McGladrey

27

could not knowingly and substantially assist a breach of fiduciary duty which had not yet
occurred.

Finally, the Trustee purports to bring this claim based on the critical legal assumption that
a fiduciary duty was even owed by SFC to SFC's creditors. In fact, there may be no fiduciary
duty owed to individual creditors that would entitle them to bring suit. *See* Vice Chancellor
Strine's discussion of fiduciary duties of directors of insolvent companies in *Production
Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 787-93 (Del. Ch. Nov. 17, 2004). If
there is no actionable fiduciary duty breach, there is no claim for aiding and abetting such a
breach.

## V.     THE TRUSTEE FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

The tort of negligent misrepresentation is defined as:

> One who, in the course of his business, profession or employment
> … supplies false information for the guidance of others in their
> business transactions, is subject to liability for pecuniary loss
> caused to them by their justifiable reliance upon the information, if
> he fails to exercise reasonable care or competence in obtaining or
> communicating the information.

*In re Phar-Mor, Inc. Sec. Litig.*, 892 F. Supp. 676, 690 (W.D. Pa. 1995) (quoting *Restatement
(Second) of Torts*, § 552(1)). Under this rule, a cause of action is confined to, at most, the
"limited group of persons for whose benefit and guidance" the alleged misrepresentation was
intended, and those persons must adequately allege that they "justifiably relied" upon the
challenged misrepresentation. *Id.* at 690.

These standards doom the Trustee's negligent misrepresentation claim. The Trustee
purports to bring this action not on behalf of itself or SFC, but, rather, on behalf of an
unidentified group of "major creditors," presumably Royal, who allegedly received and relied

28

upon McGladrey's reports. (Compl., ¶ 108). A negligent misrepresentation claim, however, is by its very nature a claim personal to each creditor, each of whom must establish that it individually received the alleged misrepresentation and justifiably relied upon it. *See Beiger v. Price Waterhouse*, 81 B.R. 303 (E.D. Pa. 1987); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995) (negligent misrepresentation claims based upon an allegedly false and misleading private placement memorandum distributed to investors "are property of those investors, and may be asserted only by them and to the exclusion of [the trustee]").

As a matter of law, the Trustee cannot raise a negligent misrepresentation claim based upon representations allegedly received by and relied upon by third parties. *See Fluke*, 2003 WL 22316772, at **3-4 (holding that a required element of negligent misrepresentation is that the plaintiff himself justifiably relied upon the alleged negligent statements). This is especially true here where the Trustee is not in a position to allege, one way or the other, whether individual creditors read and justifiably relied upon McGladrey's reports.

Although the Trustee alleges that McGladrey's April 2001 audit opinion and AUPs contain misrepresentations to Royal (Compl., ¶¶ 107, 108), in his Amended Complaint against Royal, the Trustee admits that SFC's use of forbearance payments "was referenced in footnotes in SFC's audited financial statement for the year 2000," and Royal therefore was or should have been aware of SFC's use of forbearance payments. (Ex. C, ¶¶ 46-48) Thus, according to the Trustee, Royal would have severe hurdles in establishing that it "justifiably relied" upon McGladrey's reports in continually issuing insurance policies and even making loans to SFC. And, Royal is but one creditor of the Estate, albeit the largest.

29

## VI.    THE TRUSTEE FAILS TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE

The Trustee's sixth and seventh causes of action are for fraudulent conveyance under bankruptcy and state law. These claims are limited to the Trustee's recovery of professional fees allegedly paid to McGladrey for 1998-2002. The Trustee claims that these fee payments were made "with the actual intent to hinder, delay and defraud creditors." (Compl., ¶ 113) The Trustee seeks disgorgement by McGladrey for all years, even though, as noted above, McGladrey did not audit years prior to 2000.[9]

Under the Bankruptcy Code "[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily ... made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became indebted, on or after the date that such transfer was made or such obligation incurred ...." 11 U.S.C. § 548 (a)(1)(A). Delaware state law is substantively similar, but allows the Trustee to avoid transfers made prior to one year before the date the petition is filed. *See* 6 Del. Code § 1304 (a)(1).[10]

Under both the Code or state law, the Trustee's fraudulent conveyance claims are facially defective. To state a claim for fraudulent transfer, the Trustee must allege, with the same particularity required by Rule 9(b), that the transfer sought to be avoided was made with actual

---

[9]    The Trustee's fee calculation is unclear. In Count VI he seeks $2,288,000 for the period June 1, 2001 through June 5, 2002, and in Count VII he seeks $2,388,000 for fees paid from June 6, 1998 through June 5, 2002. It seems unlikely that there was only, and precisely, a $100,000 difference between the two periods.

[10]    Count 7 of the Trustee's complaint expressly relies upon the Delaware fraudulent conveyance statute. We do not concede that Delaware law applies.

30

fraudulent intent. *See In re APF Co.*, 308 B.R. 183 (Bankr. D. Del. 2004). Yet, the Trustee alleges no facts showing that the fees paid to McGladrey were paid by SFC with such actual fraudulent intent. To the contrary, the Trustee alleges that SFC "paid McGladrey ... in the normal course of business." (Compl., ¶ 106) The payment of professional fees for services rendered is not the same as the secretion or fraudulent conveyance of assets.

## CONCLUSION

The Trustee's complaint against McGladrey should be dismissed in its entirety.

Date:  March 1, 2005

DUANE MORRIS LLP

By:_____
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE  19801-1246
Phone:  302-657-4951
Fax:  302-657-4901

-and-

THELEN REID & PRIEST LLP

By:_____
Richard P. Swanson
Veronica E. Rendon
Jason M. Butler
875 Third Avenue
New York, NY  10022
Phone:  212-603-2000
Fax:  212-603-2001

Attorneys for McGladrey & Pullen, LLP
and Michael Aquino

31