# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------   :
In re:                                             :    Chapter 7
                                                   :
STUDENT FINANCE CORPORATION,                       :    Case No. 02-11620 (DDS)
                                                   :
                        Debtor.                    :
------------------------------------------------   :
CHARLES A. STANZIALE, JR.,                          :
Chapter 7 Trustee of Student Finance               :
Corporation,                                       :
                        Plaintiff,                 :    Adv. Proceeding No. 04-58003
                                                   :
            v.                                      :    District Case No. 05-00072 (JJF)
                                                   :
MCGLADREY & PULLEN, LLP, and                        :
MICHAEL AQUINO,                                     :
                                                   :
                        Defendants.                :
------------------------------------------------   :
```

## CHAPTER 7 TRUSTEE'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO
## DISMISS IN PART PURSUANT TO FED. R. CIV. P. 12(b)

March 27, 2006

THE BAYARD FIRM
Daniel K. Astin (No. 4068)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

McELROY, DEUTSCH, MULVANEY
& CARPENTER LLC
Michael S. Waters, Esquire
Lois H. Goodman, Esquire
Donald J. Crecca, Esquire
Candice E. Chesson, Esquire
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
Telephone: (973) 622-7711
Facsimile: (973) 622-5313

Attorneys for Chapter 7 Trustee

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

NATURE AND STAGE OF PROCEEDINGS ............................................................3

STATEMENT OF FACTS ..........................................................................................4

ARGUMENT

STANDARD OF REVIEW ........................................................................................7

    POINT I

        IN PARI DELECTO IS NOT A DEFENSE WHERE THE
        PARTIES SEEKING TO ASSERT IT BEAR GREATER
        FAULT IN THE ALLEGED WRONGDOING OR WHERE
        THE PUBLIC INTEREST IS IMPACTED...........................................................9

    POINT II

        BECAUSE A JURY COULD REASONABLY DETERMINE
        THAT AQUINO WAS AN INSIDER OF SFC, *IN PARI*
        *DELICTO* CANNOT SERVE AS A BASIS FOR DISMISSAL .........................19

CONCLUSION.........................................................................................................23

## TABLE OF AUTHORITIES

ABC Elec. Servs. v. Rondout Elec.
(In re ABC Electric Servs. Inc.),
190 B.R. 672 (Bankr. M.D. Fla. 1995) ..................................................................20, 21

Baker O'Neal Holdings, Inc.
v. Ernst & Young LLP,
2004 U.S. Dist. LEXIS 6277
(S.D. Ind. Mar. 24, 2004) ...........................................................................................11

Butler v. David Shaw, Inc.,
72 F.3d 437(4th Cir. 1996) .........................................................................................20

Cent. Cmty. Church of God
v. Ent & Imler CPA Group, PC,
2004 U.S. Dist. LEXIS 24339 at *28
(S.D. Ind. Nov. 24, 2004) .....................................................................................10, 11

Gaines v. Krawczyk,
354 F.Supp.2d 573 (W.D.Pa. 2004) .............................................................................7

In re Bennett Funding Group, Inc.
1997 Bankr. LEXIS 2366
(Bankr. N.D.N.Y. Dec. 19, 1997) ..........................................................................10, 12

In re Granite Partners, L.P.,
194 B.R. 318 (Bankr. S.D.N.Y. 1996) ....................................................................19, 20

In re HealthSouth Corp. S'holders Litig.,
845 A.2d 1096 (Del. Ch. 2003) ..................................................................................12

In re Ingleside Assoc.,
136 B.R. 955 (Bankr. E.D. Pa. 1992) ..........................................................................19

In re Karen Louise Demko,
264 B.R 404 (Bankr. W.D. Pa. 2001) ..........................................................................20

In re Montanino,
15 B.R. 307 (Bankr. D.N.J. 1981). ..............................................................................20

McAdam v. Dean Witter Reynolds, Inc.,
896 F.2d 750 (3d Cir. 1990) .........................................................................................9

Metropolitan Mortgage, Inc.
v. PriceWaterhouseCoopers,

2005 U.S. Dist. LEXIS 39851 (E.D. Wash. Dec. 21, 2005) ....................................................10

Neitzke v. Williams,
    490 U.S. 319 (1989) ..........................................................................................................7

Official Comm. Of Unsecured Creditors
        of the Debtors of Austin Fin. Serv.
        (In re KDI Holdings, Inc.),
    277 B.R. 493 (Bankr. S.D.N.Y. 1999) ...........................................................................19

Official Comm. Of Unsecured Creditors
        v. Credit Suisse First Boston
        (In re Exide Techs., Inc.),
    299 B.R. 732 (Bankr. D. Del. 2003) ................................................................................7

Official Comm. Of Unsecured Creditors
        v. R.F. Lafferty & Co.,
    267 F.3d 340 (3d Cir. 2001) ...........................................................................8, 13, 14

Official Committee of Unsecured
        Creditors v. Shapiro,
    2001 U.S. Dist. LEXIS 18734 (E.D.Pa. Nov. 16, 2001) ...............................................19

Otto v. Pennsylvania State Ed. Ass'n-NEA,
    330 F.3d 125 (3d Cir. 2003) ...........................................................................................13

Peyton v. Margiotti,
    398 Pa. 86 (1959) .....................................................................................................10, 12

Port Auth. v. Arcadian Corp.
    189 F.3d 305 (3d Cir. 1999) .............................................................................................7

Stanziale v. Pepper Hamilton LLP,
    335 B.R. 539 (Bankr. D. Del. 2005) ..............................................................................20

Tse v. Ventana Medical Sys., Inc.,
    1998 U.S.Dist. LEXIS 16760
    (D. Del. Sept. 23, 1998) .................................................................................................21

Williams v. State Farm Mutual Automobile Ins. Co.,
    763 F.Supp. 121 (E.D.Pa. 1991) .................................................................................7, 21

Williams v. United States v. Arthur Young & Co.,
    465 U.S. 805, 817-18, 104 S. Ct. 1495 (1984) .............................................................13

Young v. West Coast Industrial Relations Ass'n.
    763 F. Supp. 64 (D. Del. 1991)..........................................................................................7

## STATUTES AND OTHER AUTHORITIES

Federal Rules of Civil Procedure Rule 12(b)(6) ......................................................................1, 7

## PRELIMINARY STATEMENT

Charles A. Stanziale, Jr., as Trustee in bankruptcy for Student Finance Corporation ("SFC"), filed the Amended Complaint, alleging, among other things, professional malpractice against McGladrey and Pullen LLP ("McGladrey") and its partner Michael Aquino ("Aquino") (collectively, "Defendants").  Defendants now seek to dismiss the malpractice count pursuant to Rule 12(b)(6), solely on the basis of their claim that the affirmative defense of *in pari delicto* prohibits the Trustee from bringing this claim against Defendants.  At this early stage of the litigation, all factual allegations are deemed true and all inferences favor the Trustee.  Defendants' motion should be denied for failure to meet their burden under the Federal Rules of Civil Procedure.

Defendants' argument is flawed in several respects.  First, the *in pari delicto* defense only applies when the parties are in equal fault, and is not a valid defense when the defendant is even a little more culpable than the plaintiff.  Here, Defendants' conduct played a major role in effectuating the fraud as alleged in detail in the Amended Complaint.  That conduct includes certifying to an Audit Report based on the fraud, which implicates the public interest and thus provides another reason not to dismiss the Amended Complaint at this early stage.

Further, Aquino worked closely with SFC for many years, was involved even before the preparation and validation of the misleading reports at issue, and may qualify as an insider.  As an insider, Aquino cannot assert the *in pari delicto* defense against SFC.

1

Because these issues cannot be resolved at this stage, on the pleadings and before discovery, Defendants' motion to dismiss based on the affirmative defense of *in pari delicto* should be denied.

## NATURE AND STAGE OF PROCEEDINGS

On June 5, 2002, an involuntary petition for bankruptcy was filed against SFC. On November 4, 2002, the Bankruptcy Court entered an Order for Relief under Chapter 11, and on September 29, 2003, the court appointed Mr. Stanziale as Chapter 11 Trustee for SFC.  In November 2003, the case was converted to Chapter 7, and Mr. Stanziale was appointed as Chapter 7 Trustee.  Amended Complaint ¶13-15.  The Trustee filed this action on or about December 22, 2004 against Defendants, SFC's accountants.  By Order dated January 7, 2005, the Court withdrew the reference of the adversary proceeding from the United States Bankruptcy Court to the United States District Court for the District of Delaware.

Defendants moved to dismiss the Complaint on March 1, 2005.  By Memorandum Opinion and Order dated December 20, 2005, the Court denied the motion in part and granted it in part.  The Trustee then filed an Amended Complaint on January 23, 2006. By way of the amendment, the Trustee added a count for professional malpractice against Defendants, as well as two counts alleging fraudulent transfers.  On February 27, 2006, Defendants filed the instant motion to dismiss Count VI of the Amended Complaint, which alleges professional malpractice, based on the affirmative defense of *in pari delicto*.

## STATEMENT OF FACTS

SFC was involved in a Ponzi scheme whereby it purchased student loans and bundled and sold those loans to investors in securitized transactions. Amended Complaint ¶ 2. In order to induce those purchases, however, SFC used the proceeds from the loan sales as supposed "forbearance payments" to pay off some of the loans, thereby artificially reducing the default rate. Id. ¶ 3. Creditors and investors therefore believed that the loans were a stable investment. Id.

On April 6, 2001, McGladrey issued its 2000 Auditor's Report, which provided McGladrey's allegedly independent opinion that SFC's financial statements "presented fairly, in all material respects" SFC's complete financial position. Id. ¶ 57. As alleged in the Amended Complaint, however, McGladrey was aware that SFC's financial statements were in fact inaccurate and misleading. Id. ¶ 57. For example, McGladrey's Audit Report utilized the term "forbearance payment" without explaining that, in actuality, SFC, and not the borrower, was making the payments in order to mask and artificially reduce the default rate for the loans at issue. Id. ¶ 62-65. Quite simply, these were not forbearance payments at all.

In addition, Aquino was aware of the fraud as early as 1998. Id. ¶ 51-56. Aquino began acting as SFC's accountant in 1998 and represented SFC continuously through his employment with several firms. Id. ¶ 51. From at least 1998, Aquino knew that SFC secretly made payments to cover borrower defaults and to avoid notifying the insurer of the defaults. Id. ¶ 52-56. As set forth in the Amended Complaint, in 1998, Aquino's associate wrote:

4

> [SFC] has made a payment on behalf of two of the students
> tested in 1996. The effect of this is that the certificate
> holders receive a better yield than they would have, had the
> loan defaulted and the claim been filed. Another effect of
> the practice is that it distorts the delinquency and default
> ratios of the pool.

Id. ¶ 53.

While the parties have only begun discovery, many of the actions of which the Trustee is currently aware are set out in the Amended Complaint, which describes in detail the conduct known at this stage of the litigation, which makes Defendants so clearly a part of effectuating the fraud that a final allocation of fault cannot be made without allowing the development of a full record:

- o Defendants knowingly issued a materially false and misleading Independent Auditor's Report on Consolidated Financial Statements, for year ended December 31, 2000. Amended Complaint ¶ 1.

- o Defendants acted with full knowledge that the representations in their Audit Report were material, and "played a knowing, calculated and direct role in perpetuating the SFC Ponzi scheme." Id. ¶ 5-6, 58.

- o Defendants stated in the Independent Auditor's Report on Consolidated Financial Statements that "the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Student Finance Corporation and subsidiaries as of December 31, 2000 … in conformity with generally accepted accounting principles," while knowing at the time that the financial statements were in fact false, misleading, and distorted the default rates. Id. ¶ 57.

o   Defendants were aware of the fraud as early as 1998 but took no action to disclose it; instead they endorsed it.  Id. ¶ 4, 47, 53.

o   Defendants legitimized the use of the terms "forbearance" and "forbearance payments" despite their knowledge that the terms were misleading and were not defined.  Id. ¶ 5-6, 49, 62-65, 71.

o   Defendants knew that the default rates in the servicer reports, which were based upon payments made by SFC as "forbearance payments," materially altered the appearance of SFC's finances and distorted the delinquency and default rates.  Id. ¶ 53-54, 56.

o   Defendants knew that the 10% credit loss figure listed in the Audit Report was material, grossly understated, and false.  Id. ¶ 59-61.

o   Defendants issued their Accountant's Reports, verifying the Monthly Servicer Reports, while aware of SFC's Ponzi payments and misleading financial reporting.  In so doing, they disregarded their express duty to investigate and disclose such information.  Id. ¶ 76-77.

o   Defendants had the duty to disclose that SFC was on the brink of insolvency when McGladrey issued its Audit Report in April 2001, but chose not to disclose that fact.  Id. ¶ 78.

These allegations are based on information available before discovery, and the Trustee should be allowed to explore the conduct of Defendants, which may further support an allocation of fault, impact on the public interest or insider status that may preclude the successful assertion of the affirmative defense.

## ARGUMENT

## STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Gaines v. Krawczyk, 354 F.Supp.2d 573, 576 (W.D.Pa. 2004); Neitzke v. Williams, 490 U.S. 319, 326 (1989). "The court must determine if plaintiff may be entitled to relief under any reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Port Auth. v. Arcadian Corp., 189 F.3d 305, 310 (3d Cir. 1999); see also Williams v. State Farm Mutual Auto. Ins. Co., 763 F. Supp. 121, 123 (E.D. Pa. 1991) ("[T]he complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved."). The party seeking dismissal bears the burden of establishing that the plaintiff has failed to state a claim. Young v. West Coast Industrial Relations Ass'n., 763 F. Supp. 64, 67 (D. Del. 1991). Accordingly, "a plaintiff is not required to plead in the complaint all requirements for a claim as well as contemplate and plead in anticipation of all affirmative defenses that may lie against such claim." Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.), 299 B.R. 732, 752 (Bankr. D. Del. 2003).

Thus, McGladrey and Aquino must prove, on the face of the Amended Complaint, that under any set of facts that could be proven consistent with the allegations

7

of the Amended Complaint, the affirmative defense of *in pari delicto* serves as an absolute bar to the professional malpractice claims against them.   In support of their motion, Defendants rely exclusively on <u>Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.</u>, 267 F.3d 340 (3d Cir. 2001) and claim its holding requires this Court to grant the motion.  The Court in <u>Lafferty</u>, however, did not address all the issues that are presented by the allegations of the Amended Complaint and that decision is not dispositive.

## POINT I

### *IN PARI DELICTO* IS NOT A DEFENSE WHERE THE PARTIES SEEKING TO ASSERT IT BEAR GREATER FAULT IN THE ALLEGED WRONGDOING OR WHERE THE PUBLIC INTEREST IS IMPACTED

The defense of *in pari delicto* does not apply in all circumstances in which both parties bear some degree of fault for the alleged wrongful act.  Rather, if there is a potential issue as to whether the party asserting the defense bears greater responsibility, the Court must examine the facts and determine whether the parties are on equal footing or there is a disparity in the level of fault borne by each party.  Similarly, the Court must determine whether the public interest is impacted by the alleged wrongdoing.  This necessarily gives rise to a question of fact, which must be determined on a full record and after discovery has been conducted.

The *in pari delicto* defense only applies in circumstances in which the party seeking recovery bears at least equal responsibility for the harm alleged and therefore should not be allowed to benefit.  Thus, in order for the *in pari delicto* defense to apply, the parties must stand on equal footing and not bear different degrees of guilt.  For example, in McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750 (3d Cir. 1990), the Third Circuit held:

> The defense derives from the Latin maxim, *in pari delicto potior est condito defendentis,* which means: In a case of equal or mutual fault … the position of the party … defending is the better one.  **Unless the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater, the *in pari delicto* defense should not be allowed, and the plaintiff should be compensated**. … Thus, the *in pari delicto* defense in its traditional formulation is limited to situations where the plaintiff, as a direct result of his own actions, bears at least

substantially equal responsibility for the underlying
illegality.

Id. at 756-57 (citations omitted) (emphasis added); see also Peyton v. Margiotti, 398 Pa.
86, 92 (1959) ("When the parties to a contract against public policy or otherwise illegal
are not *in pari delicto*, or equally guilty, and when public policy is considered as
advanced by allowing either, or at least the more excusable of the two, to sue, relief may
be granted."). Accordingly, if there is a disparate degree of fault, the defense of *in pari
delicto* will not be allowed to protect a defendant.

Where the relative fault of the parties is in dispute, it is inappropriate to grant a
motion to dismiss on the basis of *in pari delicto*. In re Bennett Funding Group, Inc., 1997
Bankr. LEXIS 2366 (Bankr. N.D.N.Y. Dec. 19, 1997)[1]; see also Cent. Cmty. Church of
God v. Ent & Imler CPA Group, PC, 2004 U.S. Dist. LEXIS 24339 at *28 (S.D. Ind.
Nov. 24, 2004) (dismissal based on *in pari delicto* should only be granted in "unusual
cases where the challenged complaint shows beyond dispute that an affirmative defense
is valid"). "Where both parties are *in delicto*, but not *in pari delicto*, a trial court should
make findings regarding the respective amount of blame assigned to each, granting
relief to the one whose wrong is less." Id. at *23-24. Accordingly, it "is generally
inappropriate to make an *in pari delicto* finding on the pleadings." Id. at *28.

The recent holdings of other courts addressing *in pari delicto* have been consistent
with the proposition that the defense should not apply if the party seeking its protection
bore greater fault in causing the harm. For example, in Metropolitan Mortgage, Inc. v.
PriceWaterhouseCoopers, 2005 U.S. Dist. LEXIS 39851 (E.D. Wash. Dec. 21, 2005), the
court declined to grant the independent auditor's motion to dismiss claims of professional

---

[1] Unpublished decisions are attached hereto as Exhibit C.

negligence, negligent misrepresentation and breach of contract based on *in pari delicto*, noting that "[w]hether both parties are indeed of 'equal guilt' is a factual issue that precludes granting a motion to dismiss. Whether Defendant is as blameworthy as [Plaintiffs] is an issue of fact that cannot be decided based on the Complaint alone." Id. at 11.

Similarly, the court in Baker O'Neal Holdings, Inc. v. Ernst & Young LLP, 2004 U.S. Dist. LEXIS 6277 (S.D. Ind. Mar. 24, 2004), denied a motion to dismiss where it could not find as a matter of law that the accountants' degree of fault was less than that of the plaintiffs. There, the plaintiffs alleged that the defendants had gone beyond mere facilitation of the fraud, and had also acted wrongfully in not disclosing the actual financial history of the company and in failing to report in accordance with the "Statement on Standards for Accounting and Review Services." Id. at *26-27. Recognizing that "*in pari delicto* is an affirmative defense and generally dependent on the facts, and so often not an appropriate basis for dismissal," id. at *28, the court denied defendants' motion to dismiss. Id. at *28-30; see also Cent. Cmty. Church of God v. Ent & Imler CPA Group, PC, supra, 2004 U.S. Dist. LEXIS 24339 at *31 (denying motion to dismiss claim against accounting firm based on *in pari delicto* in light of allegations that the accounting firm was "directly involved in CEG's fraudulent misrepresentations to noteholders by recklessly ignoring and perpetuating those misrepresentations" and that "a fair inference from [the] allegations was that [the accountants] participated or played a substantial role in defrauding investors"; as a result the court could not determine whether the plaintiffs bore greater responsibility).

As in <u>Baker</u> and <u>Cent. Cmty. Church</u>, the harm complained of here is the failure to disclose the true state of the debtor's finances to creditors and investors. While SFC may have been complicit in creating the underlying circumstances, in using its own money to make payments on student loans, Defendants here played a significant role in calling them forbearances, and in presenting the misleading information, the default rates and value of the loans that was the heart of the fraud. Without the active involvement of Defendants, there would have been no massive Ponzi scheme.

The public interest also requires that that involvement be examined. Some of the courts considering the application of *in pari delicto* have addressed the impact on the public from the wrongful action, finding that

> [t]he defense of *in pari delicto* will be allowed only in the sound discretion of the trial court, and only where (1) the plaintiff's acts were at least as serious as those of the defendant; (2) the plaintiff acted knowingly; and (3) **the application of the doctrine would not frustrate [ ] an important public purpose**.

<u>In re: Bennett Funding Group, Inc.</u>, 1997 Bankr. LEXIS 2366 at *28 (emphasis added); <u>see</u> <u>also</u> <u>Peyton v. Margiotti</u>, <u>supra</u>, 398 Pa. at 93 ("where the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not *in pari delicto*, and **where there are elements of public policy more outraged by the conduct of one than the other**, then relief in equity may be granted to the less guilty") (emphasis added); <u>In re HealthSouth Corp. S'holders Litig.</u>, 845 A.2d 1096, 1108 (Del. Ch. 2003) (*in pari delicto* could not be used to shield former CEO where it would contravene important public policy).

In this case, it is clear that the actions of Defendants implicate an important public interest. As noted by the United States Supreme Court,

12

> [a]n independent certified public accountant performs a
> different role [from that of the attorney/advocate].  By
> certifying the public reports that collectively depict a
> corporation's financial status, the independent auditor
> assumes a *public* responsibility transcending any
> employment relationship with the client.  The independent
> public accountant performing this special function owes
> ultimate allegiance to the corporation's creditors and
> stockholders, as well as to the investing public.  This
> 'public watchdog' function demands that the accountant
> maintain total independence from the client at all times and
> requires complete fidelity to the public trust.

United States v. Arthur Young & Co., 465 U.S. 805, 817-18, 104 S. Ct. 1495 (1984)

(emphasis in original).  Thus, the Supreme Court has recognized a heightened duty to the

public on the part of an independent certified public accountant or auditor.[2]  Along with

this heightened duty to the public comes greater culpability when that duty is breached.

Here, it would work an injustice should those having substantial responsibility for the

public harm resulting from this scheme, the auditors, be permitted to escape liability

based on this equitable doctrine; rather, it is a factor that the Court must weigh after

hearing all of the facts, to determine whether or not the doctrine should apply.

Significantly, in Lafferty, the only case on which Defendants rely in making their

*in pari delicto* argument, the Court clearly identified the issues to be addressed with

regard to *in pari delicto*:  "First, we must decide whether, when evaluating a claim

brought by a bankruptcy trustee, a court of law may consider post-petition events that

may affect an equitable defense, such as *in pari delicto*. Second, we must decide whether,

---

[2] The Third Circuit recently reiterated that an audit involves the highest standard of evaluation. Otto v.
Pennsylvania State Educ. Ass'n-NEA, 330 F.3d 125, 133 (3d Cir. 2003).  The Court first distinguished
among a compilation, a review, and an audit, noting that "[i]n an audit, which provides 'the highest level of
assurance on financial statements,' the accountant 'provides verification of the financial statements' claims
and assertions' and expresses an opinion on the entity's financials." Id. at 133 (citations omitted).  In
further distinguishing between a review and an audit, the Court found that "a review does not contemplate
obtaining an understanding of the internal control structure or assessing control risk; tests of accounting
records and of responses to inquiries by obtaining corroborating evidential matter through inspection,
observation or confirmation; and certain other procedures ordinarily performed during an audit." Id.

in light of our answer to the first question, the Shapiro family's conduct should in fact be imputed to the Debtors such that the doctrine of *in pari delicto* bars the Committee's claims." Lafferty at 355.

Thus, the Lafferty Court did not analyze the *in pari delicto* defense to ascertain whether the defendants were equally at fault with the plaintiff, or to determine whether the public interest was impacted by the wrongful actions of the defendants. In fact, those issues were not even addressed by the Court. A close reading of that case makes clear why: the professionals, including the accountants, were no longer in the case when Lafferty was decided. The only party remaining at the time was one of the underwriters.[3] McGladrey therefore misstates Lafferty when citing it on page 8 of its brief, to say that "the *Lafferty* court held that 'the *in pari delicto* doctrine bars the Committee, standing in the shoes of the Debtors, from bringing its claims against Lafferty' and the other estate professionals." While the quoted portion is taken directly from the opinion, the language that follows, "and the other estate professionals," is not. The Court did not rule on whether the other estate professionals, and specifically the accountant, would have been protected by the doctrine of *in pari delicto*; that issue was not before the Court. Accordingly, the ruling in Lafferty does not govern the issues presented to the Court on this motion.

In this case, the allegations of the pleading make clear that McGladrey and Aquino went beyond merely acquiescing in SFC's perpetrating the fraud. They were part of creating the misleading presentation which was at the heart of the fraud. In doing so, they failed to meet the standards governing their own professional conduct in the

---

[3] The motion relating to the law firm had been denied, and the Creditors Committee settled with the accounting firm. Only Lafferty, one of two underwriters, was left in the case when the Third Circuit considered it. Lafferty at 346.

preparation of an audit, and then certified the false results, thus implicating the public interest.

Well-established procedures and standards govern the conduct of an audit; those procedures and standards apply to Defendants' preparation of the Audit Reports at issue. Audits must be conducted in accordance with the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct and standards promulgated by the AICPA Auditing Standards Board ("ASB"). Generally Accepted Auditing Standards ("GAAS"), codified by the AICPA, mandate that "[i]n all matters relating to the assignment, an independence in mental attitude is to be maintained by the auditor…" GAAS, AU Section 150.02.[4] In addition, an "auditor has a responsibility to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud." Id. (Responsibilities and Functions of the Independent Auditor), AU Section 110.02. Furthermore, "[t]he independent auditor also has a responsibility to his profession, the responsibility to comply with the standards accepted by his fellow practitioners." Id. (Responsibility to the Profession), AU Section 110.10.

The standards also govern disclosure of information that is uncovered in the conduct of an audit, by requiring, inter alia, that "[t]he report shall identify those circumstances in which such principles have not been consistently observed in the current period," and that "[t]he report shall either contain an expression of opinion regarding the financial statements, taken as a whole, or an assertion to the effect that an opinion cannot be expressed." AU Section 150.02. In addition, GAAS specifically addresses materiality

---

[4] The GAAS and AICPA procedures and standards cited are those that were in effect at the time of McGladrey's issuance of the Auditor's Report, prior to the passage of the Sarbanes-Oxley Act of 2002. For the Court's convenience, relevant portions of the procedures and standards are attached as Exhibit A.

of any errors, and provides that "there should be stronger grounds to sustain the independent auditor's opinion with respect to those items which are relatively more important and greater than with respect to those of lesser importance or those in which the possibility of material misstatement is remote." Id. Section 150.04.

Similarly, standards promulgated by the AICPA govern attestation activities of auditors, including those conducted by Defendants in reviewing the servicer reports. Among the attestation standards are the requirements that "[t]he report shall state the practitioner's conclusion about the **reliability of the assertion based on** the established or stated criteria against which it was measured," and should also set forth "all of the practitioner's significant reservations about the engagement and the assertion." AICPA Attestation Standards (Standards of Reporting) 2, 3 (emphasis in original).

As set forth in the Amended Complaint, McGladrey's Audit Report states that it was prepared in accordance with GAAP:

> In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Student Finance Corporation and subsidiaries as of December 31, 2000, and the consolidated results of their operations and their cash flows for the year ended in conformity with generally accepted accounting principles.

Id., ¶ 57. Similarly, the Accountant's Reports claim to have been prepared according to American Institute of Certified Public Accountants ("AICPA") standards. Amended Complaint ¶ 37.

The standards in effect at the time required Defendants to act independently and to give a true and accurate assessment of the company's financial conditions. Id., ¶ 38-39. GAAS also required accountants to perform an audit with skepticism and to carefully

test for fraud and misstatements. In accordance with the auditing standards, McGladrey and Aquino had an obligation to carefully review SFC's financial position and, upon recognizing any discrepancies, to disclose the inaccurate or deceptive information. Defendants ignored their duties and endorsed fraudulent and misleading financial statements. Id., ¶ 42-43.

At this point in the litigation, when the parties, including Defendants, have not yet completed discovery,[5] and based solely on the pleadings, the burden on the Trustee is not to prove his case against Defendants but rather, to offer allegations sufficient for the Court to conclude that there could be some set of facts upon which the Trustee could prevail in his claims against Defendants. Even so, the allegations of the Amended Complaint are compelling: as set forth in greater detail at pages 4-6, supra, Defendants not only acquiesced in the issuance of false and misleading financial statements but they acted to further the scheme.

As alleged in the Amended Complaint, Defendants were aware of the misleading use of forbearance payments to distort the actual default rate as early as 1998. Amended Complaint ¶ 4, 47, 53. They failed to independently disclose material information relating to the nature and impact of the forbearance payments and SFC's impending insolvency. They knew that the use of so-called "forbearance payments" distorted the default rates, and that it was a fact material to the investing public, but nonetheless failed to disclose that fact. Amended Complaint ¶ 5-6, 53, 58-61. They knew that SFC's net worth was in large part based upon the collectability of the loans at issue, and that the

---

[5] As noted in recent correspondence to Defendants' counsel, document production is ongoing, particularly with regard to electronic documents and metadata on some of the very audit reports discussed in the Amended Complaint. See letter from Michael S. Waters to Jason Butler, dated February 27, 2006, attached hereto as Exhibit B.

distortion of the loan default rates also distorted the appearance of solvency of the company.

Moreover, Defendants' reports provided false information about the "Allowance for Credit Losses," which they reported at 10%, when the actual rate was much greater. Id. ¶ 59.  Despite their knowledge that these significant credit loss numbers were grossly understated, and that third parties would rely upon their certification that those statements were accurate when in fact they were false, Defendants endorsed the financial statements. Id. ¶ 61.

According to the pleadings, on which determination of this motion must be based, Defendants took advantage of their position of trust with the public as certified public accountants and audit specialists, by putting their imprimatur of trustworthiness on false and misleading information.  Without Defendants' participation and breach of their independent duties, the scheme would have collapsed.

Because Defendants may be *in delicto*, but not *in pari delicto*, by virtue of their greater responsibility for the dissemination of the fraudulent materials, and because of the impact on the public from that conduct, the motion should be denied.

<u>**POINT II**</u>

**BECAUSE A JURY COULD REASONABLY DETERMINE
THAT AQUINO WAS AN INSIDER OF SFC, *IN PARI DELICTO*
<u>CANNOT SERVE AS A BASIS FOR DISMISSAL</u>**

Defendants move to dismiss from the Amended Complaint the recently added count alleging professional malpractice, contending that as a matter of law the count is barred by the doctrine of *in pari delicto*. The doctrine, however, does not apply when asserted by insiders of the company that is alleged to share the fault for the improper actions taken. Because Aquino may be found to have operated as an insider of SFC, the *in pari delicto* defense cannot bar the malpractice claim, and the motion should be denied.

The *in pari delicto* defense does not apply when claims are made against insiders. <u>Official Comm. of Unsecured Creditors of the Debtors of Austin Fin. Serv. (In re KDI Holdings, Inc.)</u>, 277 B.R. 493, 518-19 (Bankr. S.D.N.Y. 1999); <u>Official Committee of Unsecured Creditors v. Shapiro</u>, 2001 U.S. Dist. LEXIS 18734 (E.D.Pa. Nov. 16, 2001); <u>see</u> <u>also</u> <u>In re Granite Partners, L.P.</u>, 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996) ("In pari delicto bars claims against third parties, but does not apply to corporate insiders or partners. Otherwise, a trustee could never sue the debtor's insiders on account of their own wrongdoing.").

Insiders are not limited to those specifically delineated in the Bankruptcy Code, but the term "should be applied flexibly to include a broad range of parties who have a close relationship with the Debtor." <u>In re Ingleside Assoc.</u>, 136 B.R. 955, 961 (Bankr. E.D. Pa. 1992). "The true test of an 'insider' is one who has such a relationship with the

debtor that their dealing with one another cannot be characterized as an arms-length transaction." In re Montanino, 15 B.R. 307, 310 (Bankr. D.N.J. 1981).

Moreover, whether one qualifies as an insider is a question of fact, and must be decided on a case-by-case basis. ABC Elec. Servs. v. Rondout Elec. (In re ABC Elec. Servs., Inc.), supra, 190 B.R. 672, 675 (Bankr. M.D. Fla. 1995)(considering control as indicia of insider status in the creditor context, and finding that "[c]ontrol is to be determined by an examination of the facts and particularly whether or not the facts indicate an opportunity to self-deal or exert more control over the Debtor's affairs than is available to other creditors"); see also In re Granite Partners, L.P., supra, 194 B.R. at 332 (among factors considered by the court in determining insider status was whether the complaint alleged that the defendants participated in the preparation of the fraudulent materials disseminated by the company).

Indeed, in the companion case to this one, which asserts claims against SFC's former law firm, the Court held that *in pari delicto* would not preclude claims against insiders of SFC and that the Complaint raised a factual question as to whether those defendants were insiders. Stanziale v. Pepper Hamilton LLP, 335 B.R. 539 (Bankr. D. Del. 2005). Thus, the Court denied the law firm defendants' motion to dismiss the breach of fiduciary duty claims based on the defense of *in pari delicto*, stating:

> The trustee contends that all Defendants are insiders of SFC and **his Complaint includes numerous factual allegations in support of that contention. 'Any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an 'insider.''** In re Karen Louise Demko, 264 B.R. 404, 408 (Bankr. W.D. Pa. 2001) (citing Butler v. David Shaw, Inc., 72 F.3d 437, 443 (4th Cir. 1996)). **Thus, the inquiry into insider status is fact-intensive and can be made only on a case-by-case basis.** Demko, 264 B.R.

> at 408 (citing <u>In re ABC Electric Services, Inc.</u>, 190 B.R.
> 672, 675 (Bankr. M.D. Fla. 1995)). Therefore, whether
> Defendants in this case are insiders of SFC can be
> determined only after full discovery. The Court concludes
> that the affirmative defense of <u>in pari delicto</u>, not having
> been established on the face of the Complaint, does not
> compel dismissal of Count I at this stage of the
> proceedings.

<u>Id.</u> at *7-8 (citations to record omitted) (emphasis added).

As noted <u>supra</u>, on a motion to dismiss, "the court must accept as true all allegations contained in the complaint and is bound to give the plaintiff the benefit of every reasonable inference to be drawn from those allegations." <u>Tse v. Ventana Med. Sys., Inc.</u>, 1998 U.S. Dist. LEXIS 16760 (D. Del. Sept. 23, 1998); <u>Williams v. State Farm Mutual Automobile Ins. Co.</u>, 763 F.Supp. 121, 123 (E.D. Pa. 1991) ("[r]easonable factual inferences will be drawn to aid the pleader.").

Here, as discussed in the detail in Point I, <u>supra</u>, the Amended Complaint sets forth allegations that, together with facts developed in discovery, could give rise to the inference that Aquino acted as an insider of SFC. For instance, Aquino maintained a long relationship with SFC, beginning in 1998, and consistently provided accounting and auditing services for the debtor despite his repeated change of employers during that time. Amended Complaint, ¶ 51. Further, as specifically alleged in paragraphs 52 through 56 of the Amended Complaint, Aquino was aware of the fraudulent scheme as early as 1998. Aquino's insider status is adequately alleged and can reasonably be inferred from the instrumental role he played in SFC's financing scheme. The facts alleged in the Amended Complaint, together with facts that could be adduced in discovery that are consistent with those allegations, may be sufficient to create the inference that Aquino is an insider of SFC and therefore is not entitled to assert the *in*

21

*pari delicto* defense.  See In re Exide Technologies, Inc., supra, 299 B.R. at 740

(dismissal is appropriate only if plaintiff can prove no set of facts that would allow

recovery).

      In addition, Defendants' motion has been made at the very early stages of

discovery.  The discovery process is likely to uncover further information relating to

Aquino's close relationship with SFC and his dealings with Andrew Yao.  At a minimum,

whether Aquino's involvement renders him an insider is a factual inquiry that cannot be

decided on a motion to dismiss, without the benefit of discovery to explore this

relationship.  Thus, until the question of whether Aquino is an insider to SFC is resolved,

the *in pari delicto* doctrine cannot be invoked to bar SFC's claims against him.

## CONCLUSION

For the reasons set forth above, plaintiff Charles A. Stanziale, Jr., as Trustee in Bankruptcy for Student Finance Corporation, respectfully requests that this Court deny the Motion to Dismiss of Defendants McGladrey & Pullen LLP and Michael Aquino in its entirety.

Dated: March 27, 2006

THE BAYARD FIRM

Daniel K. Astin (No. 4068)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and -

McELROY, DEUTSCH, MULVANEY
& CARPENTER LLC
Michael S. Waters, Esquire
Lois H. Goodman, Esquire
Donald J. Crecca, Esquire
Candice E. Chesson, Esquire
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
Telephone: (973) 622-7711
Facsimile: (973) 622-5313

Attorneys for Plaintiff, Charles A.
Stanziale, Jr., Chapter 7 Trustee for
Student Finance Corporation