# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>　　　　　　　　　　　Debtor. | : <br> : <br> : | Chapter 7<br><br>Case No. 02-11620-JBR |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br>　　　　　　　　　　　Plaintiff,<br>　　　　v. | : <br> : <br> : <br> : <br> : | |
| PEPPER HAMILTON LLP; W.<br>RODERICK GAGNÉ; ROBERT L. BAST;<br>PAMELA BASHORE GAGNÉ; W.<br>RODERICK GAGNÉ, TRUSTEE OF<br>TRUST UNDER DEED OF ELIZABETH B.<br>BRENNAN DATED JANUARY 12, 1994;<br>W. RODERICK GAGNÉ, TRUSTEE OF<br>TRUST UNDER DEED OF ELIZABETH B.<br>BRENNAN DATED JANUARY 12, 1994,<br>FBO W. RODERICK GAGNÉ; W.<br>RODERICK GAGNÉ, TRUSTEE OF<br>TRUST UNDER DEED OF ELIZABETH B.<br>BRENNAN DATED JANUARY 12, 1994,<br>FBO PHILLIP B. GAGNÉ; W. RODERICK<br>GAGNÉ, TRUSTEE OF TRUST UNDER<br>DEED OF ELIZABETH B. BRENNAN<br>DATED JANUARY 12, 1994, FBO<br>ELIZABETH L. GAGNÉ; W. RODERICK<br>GAGNÉ, TRUSTEE OF TRUST UNDER<br>DEED OF JAMES T. BRENNAN DATED<br>APRIL 8, 1991, FBO W. RODERICK<br>GAGNÉ; W. RODERICK GAGNÉ,<br>TRUSTEE OF TRUST UNDER DEED OF<br>JAMES T. BRENNAN DATED APRIL 8,<br>1991, FBO PHILLIP B. GAGNÉ; W.<br>RODERICK GAGNÉ, TRUSTEE OF<br>TRUST UNDER DEED OF JAMES T.<br>BRENNAN DATED APRIL 8, 1991, FBO<br>ELIZABETH L. GAGNÉ,<br>　　　　　　　　　　　Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Adversary Proceeding<br>No. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

556615_4

## I. INTRODUCTION

1. Charles A. Stanziale, Jr., Esquire, Chapter 7 Trustee ("Trustee" or "Stanziale") of the Student Finance Corporation ("SFC" or "Debtor"), by and through his undersigned counsel, brings this Complaint against Pepper Hamilton LLP ("Pepper"), its partner W. Roderick Gagné ("Gagné"), Gagné's wife Pamela Gagné, Gagné's uncle Robert Bast, and various trusts created by relatives and for the benefit of Gagné, who served as trustee of those trusts, and for the benefit of his relatives. The conduct of Pepper and Gagné in representing SFC (i) implicated multi-layered conflicts of interest; (ii) elevated personal and familial interests above that of SFC and its creditors; (iii) fell below the standard of care owed to SFC; (iv) occurred with awareness of SFC's deteriorating financial condition and (v) foreseeably contributed to the financial demise of SFC to the detriment of SFC and its creditors. As described in further detail in this Complaint, SFC paid Pepper approximately $3.2 million in legal fees over approximately six years. No lawyer or law firm acting reasonably, with the requisite care and in the best interests of its multiple clients would have represented SFC at the same time that the lawyer's family was loaning millions of dollars of personal wealth to SFC (the transactional documents for which Gagné himself drafted, apparently on behalf of SFC and his family). No lawyer or law firm acting with the requisite care would have enabled a client to continue to incur debt with the obvious – and ultimate – consequence of not being able to satisfy its financial obligations to the material detriment of the client's creditors and investors. No lawyer or law firm acting reasonably and with the requisite care would have facilitated a bail-out of a partner's family's investment by SFC's principal immediately prior to bankruptcy, when it knew or should have known that less assets would be available for recovery by other creditors of SFC in bankruptcy. Only after its actions caused and contributed to SFC's insolvency and it became clear that Gagné

556615_4

2

and his family would no longer benefit from their investment with SFC and that SFC would no longer be able to pay Pepper's fees, did Pepper withdraw from the representation, preceding the commencement of bankruptcy proceedings by just six weeks. For these reasons, *inter alia*, the Trustee asserts the following claims against defendants:

## II. PARTIES

2. Charles A. Stanziale, Jr., Esquire is the Chapter 7 Trustee of SFC, a Pennsylvania business corporation with its principal place of business located at 170 Lukens Drive, New Castle, Delaware.

3. Pepper is a Pennsylvania Limited Liability General Partnership with its principal business address at 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103. Pepper has more than 400 lawyers practicing out of nine offices, the largest of which is in Philadelphia, Pennsylvania. Pepper provided legal services to SFC (and other relevant clients as described herein) from its Philadelphia office, primarily under the guidance of Gagné. Pepper is liable for the acts of Gagné and other Pepper partners and employees. All allegations herein asserted against Gagné or other Pepper lawyers or employees are allegations asserted against Pepper as well.

4. Gagné is an adult individual residing at 515 Cresheim Valley Road, Wyndmoor, Pennsylvania 19038.. Gagné practices law primarily out of Pepper's Philadelphia office.

5. Pamela Bashore Gagné is an adult individual residing at 515 Cresheim Valley Road, Wyndmoor, Pennsylvania 19038. On information and belief, Mrs. Gagné has been married to Gagné at least since 1995.

556615_4

3

6. Robert L. Bast is an adult individual residing at 110 Spruce Lane, Ambler, Pennsylvania 19002. Mr. Bast is Gagné's uncle. On information and belief, Bast and Andrew N. Yao ("Yao"), SFC's founder, have had a relationship spanning approximately 20 years.

7. W. Roderick Gagné, Trustee of Trust Under Deed of James T. Brennan dated April 8, 1991, FBO W. Roderick Gagné ("James Brennan Trust FBO Gagné"), had and on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103.

8. W. Roderick Gagné, Trustee of Trust Under Deed of James T. Brennan dated April 8, 1991, FBO Phillip B. Gagné ("James Brennan Trust FBO Phillip Gagné"), had and on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103. On information, Phillip B. Gagné is a relative of Roderick Gagné.

9. W. Roderick Gagné, Trustee of Trust Under Deed of James T. Brennan dated April 8, 1991, FBO Elizabeth L. Gagné ("James Brennan Trust FBO Elizabeth Gagné"), had and on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103. On information, Elizabeth Gagné is a relative of Roderick Gagné.

10. W. Roderick Gagné, Trustee of Trust Under Deed of Elizabeth B. Brennan dated January 12, 1994 ("Elizabeth Brennan Trust"), had and on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103.

11. W. Roderick Gagné, Trustee of Trust Under Deed of Elizabeth B. Brennan dated January 12, 1994, FBO W. Roderick Gagné ("Elizabeth Brennan Trust FBO Gagné"), had and

on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103.

12. W. Roderick Gagné, Trustee of Trust Under Deed of Elizabeth B. Brennan dated January 12, 1994, FBO Phillip B. Gagné ("Elizabeth Brennan Trust FBO Phillip Gagné"), had and on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103.

13. W. Roderick Gagné, Trustee of Trust Under Deed of Elizabeth B. Brennan dated January 12, 1994, FBO Elizabeth L. Gagné ("Elizabeth Brennan Trust FBO Elizabeth Gagné"), had and on belief has an address of c/o W. Roderick Gagné, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103.

### III. JURISDICTION AND VENUE

14. Jurisdiction is proper pursuant to 28 U.S.C. § 1334 and §157(b), and §§ 547, 548, 550 and 551 of Title 11 of the United States Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 7001, to, *inter alia*, avoid transfers and to recover the transfers for the benefit of the bankruptcy estate.

15. The Trustee brings this Complaint pursuant to 11 U.S.C. § 541(a) as successor to the interests in property of the Estate and pursuant to 11 U.S.C. § 544(a) on behalf of, and for the benefit of, SFC's creditors ("Creditors"), and asserts both core and non-core claims pursuant to 28 U.S.C. §157(b).

16. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV. PROCEDURAL HISTORY

17. On June 5, 2002 ("Filing Date"), four trucking schools filed an involuntary petition against the Debtor, SFC.

556615_4

5

18. With the consent of SFC, on November 4, 2002, the Court entered an Order for Relief under Chapter 11 of the Bankruptcy Code.

19. On September 29, 2003, the Court appointed Mr. Stanziale as Chapter 11 Trustee for the Debtor.

20. On November 14, 2003, upon the expedited motion of Mr. Stanziale, this Court converted this matter to Chapter 7.

21. On November 20, 2003, Mr. Stanziale was appointed as the Chapter 7 Trustee of SFC.

### V. FACTUAL BACKGROUND

#### A. SFC's Business And Financing

22. SFC, a Pennsylvania corporation, was in the business of originating and acquiring non-guaranteed student loans and tuition installment agreements ("Student Loan Accounts") primarily from truck driving schools.

##### 1. SFC's Board And Officers

23. Immediately prior to the Filing Date, Yao was SFC's sole shareholder and its Chief Executive Officer and treasurer.

24. During all relevant periods, Yao's business address was Five Radnor Corporate Center, Radnor, Pennsylvania, and his home address was 107 Leighton Drive, Bryn Mawr, Pennsylvania.

25. As of the Filing Date, the directors of SFC ("Board") were Yao, Perry R. Turnbull, David Zulauf and Gary J. Hawthorne.

26. Pepper employee Maria E. DeCarlo ("DeCarlo") served as an officer, Assistant Secretary, of SFC.

27. On information and belief, from September 2001 through the Filing Date, approximately $9.6 million in dividend distributions were credited to Yao.

### 2. Pepper's Representation Of And Functioning As General Counsel To SFC

28. From December 1, 1996 through April 2002, Pepper acted in the capacity of SFC's general counsel and performed a wide range of legal and legal-related services for SFC, including, *inter alia*: general corporate representation (including preparation and editing of corporate documents, minutes, unanimous consents and maintenance of SFC minute books); corporate finance representation; assisting SFC in refinancings and seeking financing from the capital and lending markets and private investors; wholesale and permanent securitizations; transactional closings and documentation for SFC's financial transactions and private investments; tax advice; consumer finance advice; licensing advice; employment advice; immigration advice and representation of SFC in litigation. The comprehensive nature of these services and Pepper's involvement therein, *inter alia*, establish and confirm Pepper's position as an insider of SFC.

29. More than 100 Pepper partners, associates, legal assistants and other employees worked on a host of SFC-related matters, for which Pepper billed SFC approximately $3.2 million, from 1996 through 2002.

30. At most of the closings on SFC transactions, the Closing Certificates of the Secretary of SFC made representations with respect to SFC's corporate documents such as resolutions, charter documents and bylaws. Such certifications were issued by Pepper paralegal DeCarlo in her capacity as Assistant Secretary of SFC.

31. SFC's legal work was primarily performed by, or under the supervision and guidance of, Gagné; Gagné was listed by Pepper as the originating attorney, billing attorney and principal attorney handling SFC.

32. Gagné devoted a substantial portion of his time at Pepper to the business of SFC, its related entities and Yao. Having this group of fee-generating clients annually paying fees in the hundreds of thousands of dollars increased Gagné's compensation and status at Pepper.

33. Expanding upon the traditional role of general counsel, Gagné became part of the fabric of SFC, and his interests became intertwined with those of SFC, including with respect to the active involvement in procuring funding for SFC in order to perpetuate the survival of the enterprise and his relationship with that enterprise.

34. Gagné represented Yao for more than seventeen years and Pepper performed estate and asset planning services for Yao as well; and Bast, Gagné's uncle, was a regular source of additional funding needed for Yao's enterprises.

35. Among other things, in light of the extent and scope of its representation of SFC, Gagné and his family's relationship to SFC as equity holders and creditors, and DeCarlo's role as an SFC officer, Pepper and Gagné, at all relevant times, were insiders in a position to and actually did influence and exercise dominion and control over SFC.

### 3.   SFC's Originating And Acquiring Student Loan Accounts

36. At the outset of its operations, SFC limited its activities to traditional lending arrangements, including purchasing bundles of pre-packaged Student Loan Accounts at a discount using funds borrowed from either commercial banks or private investors.

37. As SFC expanded its program, its method of financing evolved. With expansion, SFC financed its operations through asset-backed securities transactions and loans from third parties.

38. The securitization process began with SFC's acquisition of Student Loan Accounts at a discount using funds from a warehouse line of credit provided to certain SFC affiliates. SFC, through its affiliated entity, would pool the Student Loan Accounts. The warehouse lenders would obtain security interests in the acquired Student Loan Accounts.

39. Wilmington Trust Company, another client of Pepper, was one of the warehouse lenders. On information and belief, in or around January 1999, Wilmington Trust entered into a $25 million line of credit with certain of SFC's affiliates to fund the purchase of student loans from SFC.

40. To complete the securitization transaction, SFC would sell the pooled Student Loan Accounts to an affiliated special purpose entity. The special purpose entity would transfer the Student Loan Accounts to a trust created by the special purpose entity. To fund the special purpose entity's purchase of the Student Loan Accounts from SFC, the trust would sell either fixed-income trust certificates ("Certificates") or floating-rate notes ("Notes") to investors.

41. Both the Certificates and Notes were backed by the principal and interest received from the Student Loan Accounts and represented an undivided interest in the Student Loan Accounts transferred to those trusts.

42. In order to provide additional security for the warehouse lender and purchasers of the Notes and Certificates, the income streams created from the Student Loan Accounts were backed by credit risk insurance policies issued by Royal Indemnity Company ("Royal"), another client of Pepper.