excess of $1 million in compensation from SMS. SMS's compensation of that officer was made possible by SFC's continued compensation to SMS.

195.    Despite this ongoing conflict and the doubtful fairness of the compensation arrangements, Pepper continued to represent all these entities without any independent approval or waiver by the SFC Board.

196.    On information and belief, although it had separate written retention agreements with SMS and SLS, Pepper never sought or obtained conflict waivers between or among SFC, SMS and SLS.

197.    As the foregoing demonstrates, throughout its representation of SFC, Pepper was concerned with the effects of SFC's business (and its own withdrawal) on other parties and its judgment was clouded by its consideration of others' interests.

198.    Pepper's failure to fulfill its fiduciary duty to its client SFC directly and foreseeably caused SFC's injuries.

199.    No disinterested lawyer, acting reasonably and in the best interests of his client, could have concluded that SFC should not have had independent counsel under the circumstances nor that Pepper and Gagné could have properly asked for conflict waivers or provided representation on the basis of Yao's consent.

200.    No lawyer, acting reasonably and with the requisite degree of care, could have perceived that his representation of SFC might not be materially impacted or limited by his responsibility to others and by his own self-interest.

201.    Any law firm acting reasonably, responsibly and in a disinterested manner would have concluded that under the circumstances, no waiver or consent to such obvious conflicts was proper or valid.

556615_4

202.    To the extent that Pepper purportedly sought or obtained waivers of any of these conflicts, such conflicts were obvious, continuing, substantial and unwaivable and any such waivers were therefore invalid, for each of the following reasons:

a.    Pepper could not reasonably have believed that its representation of SFC would not be adversely affected by Gagné's or the Family's personal interests or by Pepper's representation of the Family, Yao, SLS, SMS, Royal, Wilmington Trust, PEG and/or ECM;

b.    Pepper failed to provide full and complete disclosure of all present and potential conflicts of interest;

c.    Pepper did not properly obtain SFC Board approval for conflict waivers;

d.    Pepper and Gagné's interested transactions and the terms thereof were not fully disclosed and transmitted to SFC;

e.    SFC was not given a genuine opportunity to obtain advice of independent counsel; and

f.    SFC failed to consent in writing to all conflicts and transactions.

203.    As a direct, proximate and foreseeable result of the foregoing conflicts, SFC was ultimately driven into insolvency, and operated well beyond the point of insolvency, finally resulting in the filing of the involuntary bankruptcy petition.

204.    As a direct, proximate and foreseeable result of the foregoing acts, SFC and its creditors were injured in the collapse of Debtor's business and loss of property and assets that would otherwise have been available to SFC and the creditors, who have sustained actual damages.

WHEREFORE, Pepper and Gagné are liable for damages, including forfeiture and disgorgement of fees paid and/or owed by SFC to Pepper, in an amount to be determined at trial

556615_4

41

together with interest, costs, attorney's fees and such other legal and equitable relief as the Court

deems appropriate.

**COUNT II**
DEEPENING INSOLVENCY
Against Pepper, Gagné and the Family

205.    Paragraphs 1 through 204 above are incorporated by reference as if set forth in

full herein.

206.    Pepper's wrongful, negligent, careless, reckless and/or intentional conduct

allowed SFC to incur significant debt that SFC had no prospect of being able to repay.

207.    Pepper and Gagné had detailed knowledge of SFC's business and declining

financial health and knew or should have known that SFC was approaching insolvency, by, at the

latest, May 2001, and this knowledge must be imputed to the Family through Gagné.

208.    On information and belief, the Family knew that SFC was approaching insolvency

when it loaned an additional $3.3 million to SFC in March 2002.

209.    Exercising control over and influencing the course of SFC's financial condition,

Pepper, Gagné and the Family are responsible for the consequences of their conduct in causing and

contributing to the deepening insolvency of SFC.

210.    The conduct of Pepper, Gagné and the Family contributed to and resulted in the

collapse of SFC.

211.    The funding of Forbearance Payments, made possible by the actions and

omissions of Pepper, Gagné and the Family, including the contribution thereto, further delayed the

filing of a bankruptcy petition.

212.    The Forbearance Payments delayed the filing of a bankruptcy petition, depriving unsecured creditors of an earlier opportunity to examine SFC's financial information and of sources of repayment for their claims.

213.    Pepper's role in masking the insolvency of SFC, not adequately disclosing the Forbearance Payments and omission of true default rate information enabled SFC to continue operating and to incur additional expenses and debt, including:  (i) approximately $12 million loaned from Royal to SFC; (ii) approximately $20 million paid to Royal and $29 million in additional debt owed to Royal under the promissory notes funding the Experience Account; (iii) approximately $27 million of debt accumulated in February and March 2002, on loans purchased from trucking schools; (iv) $3.3 million in debt relating to the loan extended to SFC by the Family in March 2002; and (v) $45 million in Forbearance Payments.

214.    The delay in seeking bankruptcy protection caused SFC to increase the total amount of its debt and diminished the amount available to distribute to its creditors.

215.    Because the actions and omissions of Pepper, Gagné and the Family allowed SFC to delay its eventual bankruptcy filing while it was insolvent, they caused additional harm to creditors of SFC and are liable for damages as a result thereof.

216.    As a direct, proximate and foreseeable result of the foregoing acts, SFC was ultimately rendered insolvent, and operated well beyond the point of insolvency, finally resulting in SFC's bankruptcy.

217.    As a direct, proximate and foreseeable result of the foregoing acts, SFC and its creditors were injured in the collapse of Debtor's business and loss of property and assets that would have otherwise been available to SFC and its creditors, which have suffered actual damages.

556615_4

43

WHEREFORE, Pepper, Gagné and the Family are liable for damages in an amount to be determined at trial, together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

## COUNT III
### NEGLIGENT MISREPRESENTATION
Against Pepper and Gagné

218.    Paragraphs 1 through 217 above are incorporated by reference as if set forth in full herein.

219.    Pepper, in the course of its representation of SFC, intentionally, negligently or recklessly misrepresented or omitted from the PPMs material facts related to SFC's financial condition and operations, including, *inter alia*, that SFC was insolvent or in the zone of insolvency and regarding the true rate of the Student Loan Account defaults.

220.    The PPMs prepared by Pepper were the vehicles by which SFC raised money through securitizations.

221.    Pepper, knowing that the lenders and investors (now creditors), would reasonably rely, and did rely, on such representations, failed to exercise reasonable care or diligence in preparing the PPMs.

222.    Pepper provided the PPMs knowing that the Student Loan Account default rate was a material fact upon which creditors would rely.

223.    As a result of the negligent misrepresentations and omissions concerning performance and Forbearance Payments which Pepper made in the PPMs, the securizations were funded, enabling SFC to continue to operate and to incur additional debt and make additional expenditures.

556615_4

44

224.    Pepper's material misrepresentations and omissions furthered Pepper's pecuniary interests in that Pepper continued to collect fees for its services and Gagné and the Family continued to reap the benefits of high interest loans to SFC.

225.    Pepper knew, or should have known, that its misrepresentations and omissions were likely to prevent creditors and others from discovering the facts concealed.

226.    Pepper knew or believed that statements in the PPMs were false and/or that it was proceeding in a reckless disregard for the truth.

227.    Pepper and the Board acted intentionally, willfully, for profit and without just cause or excuse, resulting in actual legal damages.

228.    As a result of Pepper's actions, creditors reasonably relied, to their detriment, on Pepper and were misled into believing that SFC was solvent and that the Certificates and Notes were of greater than their actual value; and SFC was permitted to continue incurring debt which it had no prospect of being able to repay.

229.    Pepper's having issued PPMs which did not accurately reveal default rate information or the insolvency of SFC, and did not disclose the making of Forbearance Payments, misled and harmed those who relied on the misrepresentation and/or omission, caused SFC to incur additional debt and expenses, and has left the estate facing Proofs of Claim of more than $500 million as a result.

230.    As a direct, proximate and foreseeable result of the foregoing acts, SFC was ultimately driven into insolvency, and operated well beyond the point of insolvency, finally resulting in SFC's bankruptcy.

231.    As a direct, proximate and foreseeable result of the foregoing acts, SFC and its creditors were injured in the collapse of Debtor's business and loss of property and assets that

would otherwise have been available to SFC and its creditors, which have sustained actual damages.

WHEREFORE, Pepper and Gagné are liable for damages in an amount to be determined at trial together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

**COUNT IV**
PROFESSIONAL MALPRACTICE
Against Pepper and Gagné

232.    Paragraphs 1 through 231 above are incorporated by reference as if set forth in full herein.

233.    As its counsel, Pepper owed SFC a duty of care that required Pepper to exercise the necessary, proper and ordinary skill and knowledge of members of the legal profession required in connection with such representation.

234.    On information and belief, on an ongoing and continuous basis, Pepper breached its contractual obligation to SFC and the standard of care that a reasonable attorney would have exercised under the circumstances, in failing to, *inter alia*:

    a.    advise SFC regarding its obligations in approaching and eventual insolvency;

    b.    advise SFC regarding the requirement that proper disclosures be made in the PPMs;

    c.    avoid conflicts of interest discussed herein;

    d.    advise SFC that it was required to consider distributions to and compensation arrangements with Yao, including with regard to their impact on SFC and the interests of creditors, customers and students; and

e.      perform adequate due diligence in connection with the PPMs.

235.    Acting as its general counsel and intimately representing SFC in a broad range of substantive matters, Pepper owed both an implied and actual contractual duty to SFC.

236.    Pepper further breached its duty of care to SFC by failing to adequately advise SFC regarding conflicts of interest and by continuing to represent SFC in the face of multiple obvious and unwaivable conflicts of interests.

237.    As described, Pepper's clouded judgment caused its legal advice to SFC to fall below the standard of care, resulting, *inter alia*, in SFC's incurring damage.

238.    As counsel to SFC, Pepper was under a duty to advise the Board that as SFC approached the zone of insolvency it owed a fiduciary duty to its creditors.

239.    As counsel to SFC, Pepper had the obligation to advise the Board to supervise Yao and not to participate in or otherwise facilitate actions that would harm SFC.

240.    This duty also required Pepper to advise the Board, among other things, that SFC could not make distributions to Yao if SFC were insolvent.  Dividend distributions and other compensation to Yao depleted SFC of assets that would otherwise have been available for SFC's business and ultimately for the benefit of its creditors.  (As late as March 2002, Pepper reviewed distributions to Yao.  Pepper billed SFC for time spent on March 13, 2002, for "[r]eview[ing] distribution to Andrew Yao." (*See also* ¶ 193 above.))

241.    Pepper's actions and omissions with regard to SFC's use of Forbearance Payments, camouflaging default rate information and misrepresentations in PPMs as described above also fell below the standard of care owed to SFC and constitute a breach of Pepper's duty.

242.    These breaches directly caused and resulted in the collapse of SFC and the filing of Proofs of Claim in excess of $500 million against the estate.

556615_4

243.    In its representation of SFC, Pepper failed to perform with the degree of specialized skill and care that it held itself out as possessing.

244.    Pepper's continuing failure to exercise the skill and knowledge demanded of it by law directly, proximately and foreseeably caused the injuries complained of herein.

245.    Had Pepper met its standard of care in representing and rendering legal advice to SFC, Pepper could have prevented, or at least ameliorated, the damage to SFC and its creditors alleged herein.

246.    As a direct, proximate and foreseeable result of the foregoing acts and omissions, SFC was ultimately driven into insolvency and operated well beyond the point of insolvency, finally resulting in SFC's bankruptcy.

247.    As a direct, proximate and foreseeable result of the foregoing acts and omissions, SFC and its creditors were injured in the collapse of Debtor's business and loss of property and assets that would otherwise have been available to SFC and its creditors.

WHEREFORE, Pepper and Gagné are liable for damages in an amount to be determined at trial, together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

## COUNT V
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
Against Pepper and Gagné

248.    Paragraphs 1 through 247 above are incorporated by reference as if set forth in full herein.

249.    The members of the Board and officers of SFC, by virtue of their positions with SFC, owed a fiduciary duty to SFC to act in good faith, with the degree of care which an

556615_4

ordinarily prudent person in a like position would use under similar circumstances, in the best interests of SFC.

250.    The Board members and officers of SFC also owed a fiduciary duty to SFC's creditors as early at May 2001, the date SFC was either insolvent on a balance sheet or, at the very least, operating in the zone of insolvency.

251.    The Board members and officers of SFC breached their fiduciary duty by engaging, *inter alia*, in the following wrongful conduct:

      a.    failing to segregate the interests of SFC from SLS, SMS, Yao (and his other business ventures) and/or the Family;

      b.    authorizing or failing to properly authorize distributions to Board members adverse to the interests of SFC and at a time when SFC was not adequately capitalized;

      c.    failing to disclose to lenders/investors/creditors and thereby misleading them regarding the true nature of student loan default rates and thereby incurring debt that ultimately led to bankruptcy; and

      d.    failing to timely file for bankruptcy protection in order to preserve assets.

252.    Pepper had knowledge, both actual and constructive, of the above tortious activity and offered substantial assistance and encouragement to SFC Board members and SFC officers in furtherance of their breaches of fiduciary duty.

253.    Pepper, on an ongoing and continuous basis, knowingly and directly participated in the Board members and officers' breaches of fiduciary duty.

254.    Pepper induced, participated in and/or assisted with, *inter alia*, the following:

      a.    SFC's highly speculative, unsound and poorly documented lending practices;

556615_4

    b.    SFC's transactions with the Family;

    c.    distributions and other compensation to Yao and others, as well as substantial payments from SFC to SMS and SLS to support lucrative compensation arrangements with the entities' overlapping principals;

    d.    misrepresentations or omissions regarding default rate information and the use of Forbearance Payments to obscure actual default rates;

    e.    failing to timely file for bankruptcy protection; and

    f.    SFC's insolvency.

255.    Pepper provided such assistance with actual or constructive knowledge that the effect thereof would be a breach of the Board and officers' fiduciary duties to SFC and its creditors.

256.    Pepper acted intentionally, willfully, for profit and without just cause or excuse, and derived benefits from the foregoing, including substantial legal fees derived from its representation of SFC (as well as other entities in which Yao and the Family were financially involved).

257.    By aiding and abetting the breaches of fiduciary duty, Pepper contributed to SFC's incurring additional expenses and debt including:  (i) approximately $12 million loan from Royal to SFC; (ii) approximately $20 million paid to Royal and $29 million in additional debt owed to Royal under the promissory notes funding the Experience Account; (iii) approximately $27 million of debt accumulated in February and March 2002, on loans purchased from trucking schools; (iv) $3.3 million in debt relating to the loan extended to SFC by the Family in March 2002; (v) the $9.6 million in distributions credited to Yao himself; and (vi) $45