million in Forbearance Payments; and additionally caused and contributed to the estate's having proofs of claim in excess of $500 million being filed against it.

258. As a direct, proximate and foreseeable result of Pepper's aiding and abetting, SFC was ultimately driven into insolvency and operated well beyond the point of insolvency, finally resulting in SFC's bankruptcy.

259. As a direct, proximate and foreseeable result of Pepper's aiding and abetting, SFC and its creditors were injured in the collapse of Debtor's business and loss of property and assets that would have otherwise been available to SFC and its creditors, which have sustained actual damages.

WHEREFORE, Pepper and Gagné are liable for damages in an amount to be determined at trial, together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

### COUNT VI
### CIVIL CONSPIRACY
### Against Gagné and the Family

260. Paragraphs 1 through 259 above are incorporated by reference as if set forth in full herein.

261. As described above, Gagné and the Family combined with one or more members of SFC's Board to perform a number of unlawful acts resulting in actual legal damage as described herein.

262. Gagné and the Family had a personal stake in the conduct of SFC and its Board beyond just a professional interest and beyond an interest in merely collecting legal fees.

263. Gagné, the Family and one or more members of the SFC Board conspired, combined and/or agreed wrongfully to deplete, divert or waste SFC's assets for the self-

interested, personal economic benefit of Gagné and his Family, as well as for Yao personally (and for this other business dealings), to the detriment of SFC.

264. Gagné and the Family acted and/or failed to act with the intent to injure the business activity of SFC including, without limitation, depleting, diverting and wasting the assets of SFC.

265. Gagné and the Family wrongfully acted to protect their interests at the expense of SFC in a manner that was intentional, willful, for profit and without just cause or excuse, resulting in actual legal damage.

266. The actions of Gagné and the Family enabled SFC to continue to operate into and beyond the zone of insolvency and to incur additional expense and debt including: (i) approximately $12 million loan from Royal to SFC; (ii) approximately $20 million paid to Royal and $29 million in additional debt owed to Royal under the promissory notes funding the Experience Account; (iii) approximately $27 million of debt accumulated in February and March 2002, on loans purchased from truck driving schools; (iv) $3.3 million in debt relating to the loan extended to SFC by the Family in March 2002; and (v) $45 million in Forbearance Payments.

267. As a direct, proximate and foreseeable result of the foregoing acts, SFC was ultimately driven into insolvency and operated well beyond the point of insolvency, finally resulting in SFC's bankruptcy.

268. As a direct, proximate and foreseeable result of the foregoing acts, SFC and its creditors were injured in the collapse of Debtor's business and loss of property and assets that would have otherwise been available to SFC and its creditors, which have suffered actual damages.

WHEREFORE, Gagné and the Family are liable for damages in an amount to be determined at trial together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

### COUNT VII
### FRAUDULENT CONVEYANCE CLAIM
Against the Family

269. Paragraphs 1 through 268 above are incorporated by reference as if set forth in full herein.

270. On account of his personal guarantee to the Family, on or about May 5, 2002, Yao pledged his interests in Day Hill Partners, LP, One Summit Place, LP and Premier Education Group, LP.

271. Specifically, Yao pledged his interest in One Summit Place GP, Inc., DHP GP, Inc., and Premier Education Group GP, Inc. One Summit Place GP, Inc. was the corporate general partner of One Summit Place, LP. DHP GP, Inc. was the corporate general partner of Day Hill Partners, LP. Premier Education Group GP, Inc. is the corporate general partner of Premier Education Group, LP.

272. On information and belief, the limited partners of One Summit Place, LP, Day Hill Partners, LP, and Premier Education Group, LP, were members of the Family.

273. Had Yao not pledged his interest in each of these entities to the Family, thereby entitling the Family to receive the distributions in the pledged interests, these assets would have been available to SFC and its creditors in any action to collect against Yao for his activities relating to SFC.

274. Yao pledged these assets to the Family in May 2002, after Royal had indicated that it was no longer providing a credit risk enhancement and after Yao had disclosed to Royal that SFC was no longer able to make the Forbearance Payments.

275. On information and belief, at the time of the pledge, Yao was aware that creditors may hold him liable for his actions related to SFC.

276. On information and belief, Yao retained a residual interest in the assets that allowed him to recover the assets from the Family.

277. On information and belief, Yao pledged the assets with an actual intent to defraud his creditors.

278. The transaction may be avoided and recovered from the Family pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. C.S.A. §§5101-5119.

WHEREFORE, the Family is liable for damages in an amount to be determined at trial together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

### COUNT VIII
TURNOVER OF ESTATE PROPERTY CLAIM
Against the Family

279. Paragraphs 1 through 278 above are incorporated by reference as if set forth in full herein.

280. On or about June 1994, Yao acquired all of the interest in One Summit Place GP, Inc.

281. On information and belief, One Summit Place GP, Inc., was the corporate general partner of One Summit Place, LP, and the limited partners of One Summit Place, LP consisted of certain members of the Family.

556615_4

54

282. On information and belief, Yao acquired his interest in One Summit Place GP, Inc. using funds inappropriately obtained from SFC.

283. On or about May 1996, Yao acquired all of the interest in DHP GP, Inc., which is the corporate general partner of Day Hill Partners, LP.

284. On information and belief, Yao acquired his interest in DHP GP, Inc. using funds inappropriately obtained from SFC.

285. Yao's interests in DHP GP, Inc. and One Summit Place GP, Inc., therefore, were property of SFC.

286. The Family is in possession of Yao's interests in DHP GP, Inc. and One Summit Place GP, Inc.

287. Pursuant to 11 U.S.C. § 542, the Family is required to deliver to the Trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

WHEREFORE, the Family is liable for damages in an amount to be determined at trial together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

### COUNT IX
### EQUITABLE SUBORDINATION
Against Pepper

288. Paragraphs 1 through 287 above are incorporated by reference as if set forth in full herein.

289. On January 31, 2003 and May 9, 2003, Pepper filed Proofs of Claim in the amounts of $526,161.86 and $971.49 respectively against SFC.

290. Pursuant to section 510(c) of the Bankruptcy Code, a Court may, under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

291. Through engaging in the wrongful and inequitable conduct described herein, Pepper has injured creditors and/or given an unfair advantage to Pepper.

292. Pepper's wrongful, inequitable conduct was continuing and occurred while SFC was insolvent and owed fiduciary duties to its creditors.

293. Pepper knew or should have known that as a result of its conduct described herein, SFC would be driven, or driven deeper, into insolvency and would continue to incur debt beyond that which it had any chance of being able to repay.

294. As a result of Pepper's inequitable conduct, SFC's creditors have been deprived of valuable assets.

295. By reason of the foregoing, SFC's unsecured creditors were harmed.

296. Allowing Pepper to receive payments on its claim prior to payment of the general unsecured creditors would be unfair and inequitable.

297. Equitable subordination of Pepper's claim is consistent with the Bankruptcy Code.

298. Because of the actions and omissions described herein, and without waiver of or prejudice to and expressly reserving the Trustee's rights to object to Pepper's Proofs of Claim, Pepper's claims against SFC should be equitably subordinated to the claims of general unsecured creditors pursuant to section 510 of the Bankruptcy Code.

WHEREFORE, Pepper's claims for fees against SFC should be equitably subordinated to the claims of all general unsecured creditors.

### COUNT X
PREFERENCE CLAIM
Against Pepper

299. Paragraphs 1 through 298 above are incorporated by reference as if set forth in full herein.

300. Within one year of the Filing Date, Pepper performed services on behalf of the Debtor.

301. Within one year of the Filing Date, on account of services rendered, Pepper received payments totaling $985,475 from SFC.

302. Pepper received the following payments within one year of the Filing Date:

| Date | Preference Payment |
|---|---|
| June 13, 2001 | $87,741.46 |
| June 26, 2001 | $75,232.10 |
| July 27, 2001 | $176,127.77 |
| August 29, 2001 | $113,721.46 |
| September 28, 2001 | $91,443.95 |
| October 11, 2001 | $45,122.81 |
| November 29, 2001 | $101,955.77 |
| December 13, 2001 | $55,316.98 |
| January 31, 2001 | $208,721.85 |
| March 28, 2002 | $15,000.00 |
| April 2, 2002 | $15,000.00 |
| April 11, 2002 | $15,000.00 |
| April 19, 2002 | $15,000.00 |
| April 24, 2002 | $15,000.00 |
| May 3, 2002 | $15,000.00 |
| May 10, 2002 | $15,000.00 |
| May 16, 2002 | $15,000.00 |
| May 24, 2002 | $15,000.00 |
| May 30, 2002 | $15,000.00 |

303. Pepper was an insider within the meaning of 11 U.S.C. § 101(31), and for purposes of 11 U.S.C. § 547(b)(4)(B).

304. Within 90 days of the Filing Date, Pepper received payments totaling $150,000 from SFC.

305. Pepper received the following payments within 90 days of the Filing Date:

| Date | Preference Payment |
|---|---|
| March 28, 2002 | $15,000.00 |
| April 2, 2002 | $15,000.00 |
| April 11, 2002 | $15,000.00 |
| April 19, 2002 | $15,000.00 |
| April 24, 2002 | $15,000.00 |
| May 3, 2002 | $15,000.00 |
| May 10, 2002 | $15,000.00 |
| May 16, 2002 | $15,000.00 |
| May 24, 2002 | $15,000.00 |
| May 30, 2002 | $15,000.00 |

306. These payments were received to and/or for the benefit of Pepper.

307. These payments were for and/or on account of an antecedent debt owed by SFC before such transfer was made.

308. These payments were made while SFC was insolvent.

309. SFC was insolvent on a balance sheet test at least as of May 2001.

310. These payments enabled Pepper to receive more than it would have received if the case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made and such creditor received the payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

311. The transaction should be avoided pursuant to 11 U.S.C. § 547, and recovered for the benefit of the estate under 11 U.S.C. § 550.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order requiring Pepper to pay the sum of $985,475, together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

## COUNT XI
PREFERENCE CLAIM
Against the Family Defendants

312. Paragraphs 1 through 311 above are incorporated by reference as if set forth in full herein.

313. Within one year of the Filing Date, SFC made principal and interest payments to the Family of:

| | |
|---|---:|
| Pamela Gagné | $64,106.78 |
| Robert Bast | $2,486,596.94 |
| Elizabeth Brennan Trust | $81,369.86 |
| Elizabeth Brennan Trust FBO Gagné | $403,750.00 |
| Elizabeth Brennan Trust FBO Phillip Gagné | $268,583.00 |
| Elizabeth Brennan Trust FBO Elizabeth Gagné | $403,750.00 |
| James Brennan Trust FBO Gagné | $192,217.00 |
| James Brennan Trust FBO Phillip Gagné | $136,483.00 |
| James Brennan Trust FBO Elizabeth Gagné | $192,217.00 |

314. The Family received the following payments within one year of the Filing Date:

| Transferee | Payment Date | Payment Amount |
|---|---|---|
| *Robert L. Bast* | June 28, 2001 | $26,842.00 |
| | July 30, 2001 | $26,842.00 |
| | August 30, 2001 | $26,842.00 |
| | September 27, 2001 | $26,842.00 |
| | October 23, 2001 | $26,842.00 |
| | November 13, 2001 | $2,000,000.00 |
| | November 13, 2001 | $153,334.00 |
| | November 30, 2001 | $26,842.00 |
| | December 21, 2001 | $26,842.00 |
| | February 1, 2002 | $26,842.00 |
| | February 27, 2002 | $26,842.00 |
| | March 28, 2002 | $26,842.00 |
| | April 2, 2002 | $18,000.00 |
| | April 29, 2002 | $46,842.47 |
| *Pamela Bashore Gagné* | June 26, 2001 | $5136.98 |

|  | July 27, 2001 | $5136.98 |
|---|---|---|
|  | August 29, 2001 | $5,136.98 |
|  | September 27, 2001 | $5,136.98 |
|  | October 30, 2001 | $5,136.98 |
|  | November 29, 2001 | $5,136.98 |
|  | December 27, 2001 | $5,136.98 |
|  | February 1, 2002 | $5,136.98 |
|  | March 14, 2002 | $5,136.98 |
|  | March 28, 2002 | $5,136.98 |
|  | April 11, 2002 | $3,600.00 |
|  | April 24, 2002 | $5,136.98 |
|  | April 24, 2002 | $4,000.00 |
| *Elizabeth B. Brennan Trust* | July 26, 2001 | $7,397.26 |
|  | July 27, 2001 | $7,397.26 |
|  | August 29, 2001 | $7,397.26 |
|  | September 27, 2001 | $7,397.26 |
|  | October 30, 2001 | $7,397.26 |
|  | November 29, 2001 | $7,397.26 |
|  | December 27, 2001 | $7,397.26 |
|  | February 1, 2002 | $7,397.26 |
|  | March 14, 2002 | $7,397.26 |
|  | March 28, 2002 | $7,397.26 |
|  | March 28, 2002 | $7,397.26 |
| *Elizabeth B. Brennan Trust FBO W. Roderick Gagné* | November 12, 2001 | $375,000.00 |
|  | November 12, 2001 | $28,750.00 |
| *Elizabeth B. Brennan Trust FBO Phillip B. Gagné* | November 12, 2001 | $250,000.00 |
|  | November 12, 2001 | $18,583.00 |
| *Elizabeth B. Brennan Trust FBO Elizabeth L. Gagné* | November 12, 2001 | $375,000.00 |
|  | November 12, 2001 | $28,750.00 |
| *James T. Brennan Trust FBO Phillip B. Gagne* | November 12, 2001 | $125,000.00 |
|  | November 12, 2001 | $9,583.00 |
|  | April 2, 2002 | $900.00 |
|  | April 24, 2002 | $1,000.00 |
| *James T. Brennan Trust FBO Elizabeth L. Gagné* | November 12, 2001 | $175,000.00 |
|  | November 12, 2001 | $13,417.00 |
|  | April 2, 2002 | $1,800.00 |
|  | April 24, 2002 | $2,000.00 |
| *James T. Brennan Trust FBO W. Roderick Gagné* | November 12, 2001 | $175,000.00 |

556615_4

60

Case 1:05-cv-00072-JJF    Document 58-7    Filed 04/28/2006    Page 11 of 13

| | November 12, 2001 | $13,417.00 |
| --- | --- | --- |
| | April 2, 2002 | $1,800.00 |
| | April 24, 2002 | $2,000.00 |
| *James T. Brennan Trust FBO Phillip B. Gagne* | April 2, 2002 | $900.00 |
| | April 24, 2002 | $1,000.00 |

315. Based on the relationships between Gagné and the Family, Gagné's position as trustee of the Family Trusts, Gagné's influence over SFC as described herein, Bast's long-standing relationship with Yao, and the Family's position as major private investors in SFC, each Family defendant was an insider within the meaning of 11 U.S.C. § 101(31) and for purposes of 11 U.S.C. § 547(b)(4)(B).

316. Within 90 days of the Filing Date, the Family received payments totaling $146,387.66 from SFC.

317. The Family received the following payments within 90 days of the Filing Date:

| Transferee | Payment Date | Payment Amount |
| --- | --- | --- |
| *Robert L. Bast* | March 28, 2002 | $26,842.47 |
| | April 2, 2002 | $18,000.00 |
| | April 29, 2002 | $46,842.47 |
| *Pamela Bashore Gagné* | March 14, 2002 | $5,136.98 |
| | March 28, 2002 | $5,136.98 |
| | April 11, 2002 | $3,600.00 |
| | April 24, 2002 | $5,136.98 |
| | April 24, 2002 | $4,000.00 |
| *Elizabeth B. Brennan Trust* | March 14, 2002 | $7,397.26 |
| | March 28, 2002 | $7,397.26 |
| | March 28, 2002 | $7,397.26 |
| *James T. Brennan Trust FBO Phillip B. Gagne* | April 2, 2002 | $900.00 |
| | April 24, 2002 | $1,000.00 |
| *James T. Brennan Trust FBO Elizabeth L. Gagné* | November 12, 2001 | $175,000.00 |
| | November 12, 2001 | $13,417.00 |
| | April 2, 2002 | $1,800.00 |
| | April 24, 2002 | $2,000.00 |

556615_4

61

| James T. Brennan Trust FBO W. Roderick Gagné | November 12, 2001 | $175,000.00 |
| --- | --- | --- |
| | November 12, 2001 | $13,417.00 |
| | April 2, 2002 | $1,800.00 |
| | April 24, 2002 | $2,000.00 |

318. These payments were transferred by SFC to or for the benefit of the Family.

319. These payments were for or on account of an antecedent debt owed by SFC before such transfer was made.

320. These payments were made while SFC was insolvent.

321. SFC was insolvent on a balance sheet test at least as of May 2001.

322. These payments enabled the Family to receive more than they would have received if the case were a case under Chapter 7 of the Bankruptcy Code, the transfers had not been made and such creditors received the payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

323. These transactions should be avoided pursuant to 11 U.S.C. § 547, and recovered for the benefit of the estate under 11 U.S.C. § 550.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order requiring Pamela Gagné to pay the sum of $64,106.78, Robert Bast to pay the sum of $2,486,596.94, the Elizabeth Brennan Trust to pay the sum of $81,369.86, the Elizabeth Brennan Trust FBO Gagné to pay the sum of $403,750, the Elizabeth Brennan Trust FBO Phillip Gagné to pay the sum of $268,583, the Elizabeth Brennan Trust FBO Elizabeth Gagné to pay the sum of $403,750, the James Brennan Trust FBO Gagné to pay the sum of $192,217, the James Brennan Trust FBO Phillip Gagné to pay the sum of $136,483, and the James Brennan Trust FBO Elizabeth Gagné to pay the sum of $192,217, each together with interest, costs, attorney's fees and such other legal and equitable relief as the Court deems appropriate.

556615_4

Respectfully submitted,

DILWORTH PAXSON LLP


/s/ Peter C. Hughes
Peter C. Hughes (No. 4180)
Dawn Zubrick (No. 4327)
DILWORTH PAXSON LLP
First Federal Plaza, Suite 500
Wilmington, DE 19801
(302) 571-9800

James J. Rodgers
Derrick A. Dyer
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania 19103
(215) 575-7000

Special Counsel to Charles A. Stanziale, Jr.,
Chapter 7 Trustee of Student Finance Corporation