Debtors' underwriters, but also the Debtors' financial and restructuring advisors, the lead lenders on the warehouse facility, and powerful warrant holders (Adv.Doc. # 1, ¶ 11). The complaint alleges, among other things, that the defendants had such influence over the Debtors that they exercised de facto control (Adv.Doc. # 1, ¶ 31). This control and influence arose from more than just the Debtors' contractual relationships with the defendants (Adv.Doc. # 1, ¶ 11, 14). Rather, the defendants' influence began early, even before entering into formal contracts, and grew over time (Adv.Doc. # 1, ¶ 31). Through the years, this multifaceted relationship placed the defendants in a position of higher trust. This position of higher trust obligated the defendants to act in the best interests of the Debtors. See *EBC I, 799 N.Y.S.2d 170, 832 N.E.2d at 31-33*. But, according to the complaint, the defendants abandoned this obligation, and engaged in a self-serving campaign to extract unnecessary fees (Adv.Doc. # 1, ¶ 19, 37).

*5 As such, the complaint alleges facts that the defendants abused their trusted positions in the "inner-circle" by intentionally guiding the Debtors down the path to financial ruin. If the defendants so acted, then they failed to deal honestly with the Debtors and instead chose purposefully to mislead the Debtors in order to loot the corporate coffers. Thus, the defendants' motion to dismiss Count I is denied. [FN2]

*II. Second Counterclaim--Negligence*

Count II of the complaint sounds in negligence. The defendants seek to dismiss the claim on three grounds: 1) the exculpatory clause of the Financial Advisory Agreement relieves CSFB of damages resulting from ordinary negligence; 2) the negligence count does not allege an obligation independent of the breach of contract claim; and, 3) economic loss is not recoverable under a theory of negligence. None of these arguments warrant dismissal.

[5] First, the defendants contend that an exculpatory clause in the Financial Advisory Agreement bars OHC's recovery. That clause relieves the defendants of liability to OHC "for or in connection with advice or services rendered or to be rendered ... except ... [those] determined by a judgment ... to have resulted solely from ... gross negligence or willful misconduct in connection with any such advice, actions, inactions or services" (Adv.Doc. # 22, Exh. G, Sched.I). By its terms, the exculpatory clause only relieves the defendants of ordinary negligence. As discussed in greater detail in Count X infra, an inference may be drawn from the complaint that the defendants' conduct rose to a level far above ordinary negligence. Therefore, the Court cannot grant dismissal based on the exculpatory clause.

[6] Second, the defendants assert that the plaintiff's breach of contract claim prohibits it from succeeding on its claim of negligence. To support this, the defendants rely on four decisions applying New York law. None of these cases supports the defendants' position; to the contrary, each decision supports denying the defendants' motion.

[7][8] At the outset, the defendants begin by quoting *Chase Manhattan Bank, N.A. v. Remington Prods., Inc.*, 865 F.Supp. 194, 200 (S.D.N.Y.1994) aff'd 71 F.3d 407 (2d Cir.1995): "New York does not recognize a cause of action for negligent performance of a contract." However, the language immediately preceding the quoted language is relevant: "Chase correctly notes and the defendants do not contest, *with certain exceptions not relevant here,* that New York does not recognize a cause of action for negligent performance of a contract." *Id.* (emphasis added). The exceptions, not relevant in that case, are relevant in the instant matter. Specifically, a plaintiff may properly bring a claim of negligence where a "legal duty independent of the ... contract itself has been violated." *TD Waterhouse Inv. Servs. v. Integrated Funds Servs., Inc.*, No. 01 Civ. 8986, 2003 WL 42013, at *12, 2003 U.S. Dist. LEXIS 70, at *35 (S.D.N.Y. Jan.6, 2003) rev'd in part on unrelated grounds 85 Fed Appx. 779 (2d Cir.2004). Here, the complaint sufficiently alleges facts necessary to support a finding of a separate legal duty (Adv. Doc # 1, ¶ 11).

*6 Thus, under the weight of the authority relied on in the defendants' brief, the plaintiff's claim of negligence cannot be dismissed at this stage of the case. See *id.*; *Clark-Fitzpatrick, Inc. v. Long Island R.R. Company*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (N.Y.1987)("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); *Asian Vegetable Research & Dev. Ctr. V. Inst. Of Int'l Educ.*, 944 F.Supp. 1169, 1180 (S.D.N.Y.1996) ("Where a policy concern dictates the existence of an independent legal duty--such as where the defendant is a fiduciary, or a professional-- such a legal duty may be imposed by law as an incident to the parties' relationship, and is not dependent on the parties' contractual relationship.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[9] Third, the defendants argue that "economic loss is not recoverable under a theory of negligence" (Adv. Doc. # 22, p. 34 (quoting *AT & T v. New York City Human Res. Admin.,* 833 F.Supp. 962, 982 (S.D.N.Y.1993)). Again, the defendants overstate the law by quoting the general rule without noting the applicable exceptions. Two such exceptions are relevant here: "The first exception, broadly stated, is that a party may recover purely economic loss damages in a tort malpractice action when the underlying contract is for the rendering of professional services .... The second exception is where a party is seeking to recover economic loss damages on a theory of negligent performance of a contract for services." *Niagra Mohawk Power Corp. v. Stone, Webster, Eng'g Corp.,* No. 88-CIV-819, 1992 WL 121726, at *23, 1992 U.S. Dist. LEXIS 7721, at *79-80 (N.D.N.Y. May 23, 1992); *see also AT & T,* 833 F.Supp. at 983 (recognizing an exception to the economic loss doctrine for service contracts).

[10] Here, the contracts are based on the defendants' performance of various services, including professional services. The plaintiff alleges that the defendants negligently performed these services and breached their professional and fiduciary duties. Accordingly, the Court will deny the defendants' motion to dismiss Count II.

*III. Third Counterclaim--Unjust Enrichment*

[11][12] Count III of the complaint alleges unjust enrichment. To state a viable claim for unjust enrichment, the plaintiff must allege "the defendant was enriched at the plaintiff's expense and that the circumstances are such that equity and good conscience require that the defendant make restitution." *Granite Partner, L.P. v. Bear, Stearns & Co., Inc.,* 17 F.Supp.2d 275, 311 (S.D.N.Y.1998). "Unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists." *Id.* This is so because a quasi-contract "is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Clark-Fitzpatrick,* 521 N.Y.S.2d 653, 516 N.E.2d at 193. Put differently, "[i]n the case of actual contracts the agreement defines the duty, while in the case of quasi-contracts the duty defines the contract." 66 AM. JUR.2d RESTITUTION AND IMPLIED CONTRACTS § 6.

*7 [13] In this case, Count III incorporates by reference paragraphs 1 through 54. Certainly, express contracts cover some of the complained of activity. Nevertheless, the plaintiff alleges that the contracts fail to cover all such activity. Thus, to the extent the alleged unjust enrichment deals with matters not covered by an express agreement, the motion to dismiss Count III is denied.

*IV. Fourth Counterclaim--Equitable Subordination*

Count IV of the complaint seeks equitable subordination. The defendants have not moved to dismiss Count IV.

*V. Fifth Counterclaim--Preferential Transfers*

[14] Pursuant to Bankruptcy Code § 547, Count V of the complaint seeks to avoid and recover certain preferential transfers. The defendants seek to have this Count dismissed on the grounds that it fails to satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8. To satisfy Rule 8(a), made applicable by Federal Rule of Bankruptcy Procedure 7008, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). This Rule does not require the pleader to "set out in detail the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, Rule 8(a) only requires that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

On several occasions, this Court has found that a complaint alleging a preferential transfer must contain certain information to survive a motion to dismiss: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." *TWA Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post Confirmation Estate),* 305 B.R. 228, 232 (Bankr.D.Del.2004); *Valley Media v. Borders (In re Valley Media),* 288 B.R. 189, 192 (Bankr.D.Del.2003); *Posman v. Bankers Trust Co. (In re Lomas Fin. Corp.),* Adv. Pro. No. 97-245, 1999 WL 33742299, at *2 (Bankr.D.Del. July 28, 1999). Although in *TWA, Valley Media,* and *Posman* this Court found the complaints lacking, the plaintiffs were nonetheless granted leave to file an amendment. Unlike the above referenced cases, the plaintiff in this matter need not file an amendment because the complaint provides the defendants with "fair notice." *Conley,* 355 U.S. at 47.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The defendants resist this conclusion with two assertions. First, the defendants argue that the complaint fails to detail the nature of the antecedent debt. Second, the defendants contend that the complaint does not sufficiently identify the transferors. Despite the defendants' contentions, I cannot agree that the complaint fails to provide the defendants with fair notice.

In this Court's view, the complaint sufficiently details the nature of the antecedent debt. The defendants cannot challenge the fact that the complaint provides exact dates, precise dollar amounts, and in some cases check numbers for each of the transfers (Adv.Doc. # 1, ¶ ¶ 41, 42). The complaint also details the relationship between the parties and states that many of the transfers arose out of the Loan Assumption Program (LAP) (Adv.Doc. # 1, ¶ ¶ 41, 42). In addition, the complaint sets out the various relationships between the Debtors and the defendants (Adv.Doc. # 1, ¶ 11).

*8 However, the defendants counter that such information fails sufficiently to correlate the antecedent debt with each alleged transfer. The specificity that the defendants would demand goes far beyond the requirements of notice pleading. In *Valley Media,* this Court rejected the argument that a "complaint should also prove: (1) how Defendant is considered a creditor; (2) how an interest in the property was transferred to the Defendant; (3) that Plaintiff owed Defendant an antecedent debt; and (4) how the transfers enable Defendant to receive more than it would have in a Chapter 7 liquidation." *Valley Media,* 288 B.R. at 193. This Court went on to state that such a "view of complaint pleading ... would require detailing all relevant facts." *Id.* Rule 8(a) does not contemplate such specificity.

Likewise, the defendants' assertion that this Court should dismiss the complaint because it fails to articulate the transferors with particularity must fail. The complaint identifies the Oakwood Companies as the transferors. The Oakwood Companies, as defined by the complaint, include the Debtor and all of its subsidiaries and affiliates. As the defendants correctly state, the Oakwood Companies include certain non-debtor subsidiaries and affiliates. Because not all transferors are Debtor entities, the defendants seek to dismiss the preference action.

Although the complaint fails precisely to identify the transferors' names, it gives fair notice as to their identities. This is all that is required under Rule 8(a).

Further, this Court will infer, as the plaintiff suggests, that the Oakwood Companies operated as a unit with little to no distinction between those that were Debtors and those that avoided bankruptcy. Also, the Court will infer that some of the transferors were the alter egos of some of the Debtors. In addition, the complaint creates the inference that these transfers were either made directly by a Debtor entity or were made from property in which the Debtors had an interest (Adv.Doc. # 1, ¶ ¶ 41, 42). In other words, the Court will permit the plaintiffs to pursue these details in discovery. At this early stage, such "significant factual detail is not required." *Valley Media,* 288 B.R. at 192.

This holding is in accord with this Court's prior decisions in *TWA, Valley Media,* and *Posman.* As recognized previously, the rule articulated in those decisions is subject to the facts of the particular case. For example, in *TWA* this Court recognized that certain "fact situation[s] ... warrant a relaxation of the rule as ... articulated [in *Valley Media* and *Posman* ]." *TWA,* 305 B.R. at 234. Where a relaxation of the rule is warranted, the plaintiff "will be entitled to pursue these details in discovery." *Id.* This Court believes that the facts set out in the complaint fairly place the defendants on notice. As such, the defendants' motion to dismiss is denied with respect to Count V.

*VI. Sixth Counterclaim--Preferential Transfers To An Insider*

*9 [15] Count VI of the complaint seeks to avoid and recover certain preferential transfers to insiders. Because the discussion of Count V applies to Count VI, a separate analysis is not warranted-with one exception.

Count VI alleges that the defendants are insiders of the Debtors. As insiders, the defendants would be subjected to a one year reachback period rather than the typical 90 days. 11 U.S.C. § 547(b)(4)(B). If the longer reachback applies, the plaintiff could potentially avoid and recover an additional $429,034,268.88 (Adv.Doc. # 1, ¶ ¶ 41, 42). The defendants fight this result and assert that they are not insiders as a matter of law.

With respect to a corporation, section 101(31)(B) of the Bankruptcy Code contains a nonexclusive list of insiders:
   (31) The term "insider" includes--

* * *

   (B) if the debtor is a corporation--

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or
(vi) relative of a general partner, director, officer or person in control of the debtor ....

In addition, subsections 101(E) and (F) provide that an insider also includes an affiliate and a managing agent of the debtor. Courts refer to the enumerated insiders in section 101(B), (E) and (F) as statutory insiders. *Hirsch v. Va. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262 (Bankr.S.D.N.Y.2002). Those transferees not listed, who nonetheless are determined to be insiders, are referred to as non-statutory insiders. *Id.*

[16][17] In determining whether a transferee qualifies as a non-statutory insider, courts generally rely on the legislative history:

[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.

S. REP. No. 95-989, 1978 WL 8531, at *5810. From this, courts have applied insider status "flexibly to include a broad range of parties who have a close relationship with the debtor." *In re Locke Mills Partners*, 178 B.R. 697, 702 (Bankr.M.D.N.C.1995). In doing so, courts have focused on the closeness between the transferee and the debtor, the degree of control or influence the transferee exerts over the debtor, and whether the transactions were conducted at arm's length. *See, e.g., In re Premiere Network Servs., Inc.*, 333 B.R. 126, 129 (Bankr.N.D.Tex.2005); *Hirsch*, 286 B.R. at 262. At times, these three inquiries blend into one another.

In this case, the plaintiff states that the defendants are insiders because they constitute "a person in control of the debtor," an affiliate, and a "managing agent of the debtor." The plaintiff also suggests that the defendants could qualify as non-statutory insiders. The defendants disagree and seek to dismiss.

In considering a motion to dismiss, this court is required to "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merio Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). The complaint alleges a long-standing multifaceted relationship that enabled the defendants to dominate and control the Debtors. Contrary to the defendants' assertions, the complaint states more than mere conclusions, it alleges an adequate factual basis for these conclusions.

*10 [18] As such, a determination of insider status must await further discovery. Such an inquiry "is fact-intensive and can be made only on a case-by-case basis." *Stanziale v. Pepper Hamilton, LLP, (In re Student Fin. Corp.)*, 335 B.R. 539, 547 (D.Del.2005). Accordingly, the defendants motion to dismiss Count VI is denied. [FN3]

*VII. Seventh Counterclaim-- § 548 Fraudulent Transfers*

[19] Count VII seeks to avoid and recover fraudulent transfers under § 548 of the Bankruptcy Code. The defendants attack Count VII on two grounds. First, the defendants reassert that the complaint fails to identify the transferors with specificity. Second, the defendants claim that the complaint aught to provide more detail regarding the allegation that "no reasonably equivalent value" was received in exchange for the transfers. The defendants' first contention was addressed in Count V and rejected. No further discussion of that argument is necessary.

With respect to the defendants' second contention, the complaint similarly meets the required standard. The complaint identifies the transfers at issue and alleges that the Debtors received less than reasonably equivalent value for such transfers. As such, dismissal is only appropriate if no set of facts would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

[20] Here, facts exist which, if proved, would allow the plaintiff to prevail. For example, the "quality of professional services is within the scope of a fraudulent conveyance action." *BCPM Liquidating LLC v. PricewaterhouseCoopers LLP (In re BCP Mgmt.)*, 320 B.R. 265, 280 (Bankr.D.Del.2005). Therefore, to the extent the defendants provided inadequate professional services, this could serve as a basis for recovery. *Id.* In any event, the complaint states that the Debtors did not receive reasonably equivalent value in return for their transfers. If the defendants disagree with this factual allegation, they may contest it at trial. *See IT Group, Inc. v. D'Aniello*, No. 04-1268, 2005 WL 3050611, at *15-16, 2005 U.S. Dist. LEXIS 27869, at *54-55 (D.Del. Nov. 15, 2005) (rejecting the argument that the complaint failed to disclose how the transferor received less than reasonably equivalent value); *Official Comm. Of Unsecured Creditors v. DVI Bus.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 309-10 (Bankr.D.Del.2005) (denying the defendant's motion to dismiss where the Committee failed to account for the value received in exchange for the transfers); *Neilson v. Cor Karaffa (In re Webvan Group, Inc.)*, No. 01-2404, 2004 WL 483580, at *2, 2004 Bankr.LEXIS 270, at *7 (Bankr.D.Del. Mar. 9, 2004) (holding that an allegation that Debtor received less than reasonably equivalent value was sufficient to survive a motion to dismiss); *see also Litig. Trust of MDIP Inc. v. De La Rue Cash Sys. Inc. (In re MDIP Inc.)*, 332 B.R. 129, 133 (Bankr.D.Del.2005) ("reasonable equivalence has a large factual component.").

**\*11** Though the complaint at times lacks precision, [FN4] the allegations contained therein satisfy the applicable pleading requirements. Therefore, the defendants' motion to dismiss Count VII is denied.

*VIII. Eighth Counterclaim--State Law Fraudulent Transfers*

[21] Count VIII seeks to avoid and recover certain fraudulent transfers under applicable state law. The defendants raise many of the same arguments discussed in Counts V, VI, and VII above. However, the defendants also urge that Count VIII must be dismissed for another reason: a failure to specify a precise statute. In the defendants' words, "Plaintiff's failure to allege any specific state law or any other particulars reduces the Defendants to 'guesswork and conjecture' in responding to the Complaint" (Adv.Doc. # 22, p. 21) (citing *Pardo v. Avanti Corporate Health Sys. (In re APF Co.)*, 274 B.R. 634, 640 (Bankr.D.Del.2001)).

The defendants' reliance on *APF* is misplaced. There, I dismissed a complaint for failing to meet the requisite pleading standards. This had nothing to do with the trustee's failure to identify a particular fraudulent transfer statute:

> [The defendant] contends the Trustee must specifically plead the existence of an identified creditor who held a claim at the time of the transfer and the state law pursuant to which he is proceeding. I am not persuaded that a trustee must do so, but I agree with [the defendant] that in this case, the Trustee's complaint is deficient.

*In re APF Co.*, 274 B.R. at 639. Under the Federal Rules, "the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir.1997); *see Ghebreselassie v. Coleman Sec. Serv.*, 829 F.2d 892, 895 (9th Cir.1987) ("a properly pleaded claim in federal court need not specify under which law it arises.").

Accordingly, to survive dismissal, the complaint need not identify a particular state's uniform fraudulent transfer law. *See Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir.2001) ("Complaints need not plead law or match facts to every element of a legal theory." (citation and quotations omitted)); *see, e.g., Argus Mgmt. Group v. Rider (In re CVEO Corp.)*, No. 03- 50377, 2004 WL 2049316, at *3, 2004 Bankr.LEXIS 1343, at *9 (Bankr.D.Del. Sept.13, 2004) ("we will not dismiss the Complaint on the grounds that the Plaintiff failed to plead the specific state [fraudulent transfer] law applicable to the allegations asserted therein.").

In coming to this conclusion, the Court notes that it can find no support in the Federal Rules for the suggestion that the pleader must cite to a particular statute:

> Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it. Complaints should be short and simple, giving the adversary notice while leaving the rest to further documents. "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." FED. R. CIV. P. 84. None of the forms in the appendix spells out a legal theory.

**\*12** *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992); *see* FED. R. CIV. P. FORM 13 (alleging a Fraudulent Conveyance without pleading law). Nevertheless, the Court acknowledges that *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston, (In re Exide Techs., Inc.)*, 299 B.R. 732 (Bankr.D.Del.2003), came to a different result. There, while the court dismissed five separate counts alleging fraudulent transfers under unspecified state(s) law, it readily granted leave to amend the complaint to rectify the deficiencies. *In re Exide*, 299 B.R. at 749. Given the above cited authorities for this Court's position here, the Court is content to allow state law particulars to be developed in the discovery process. Consequently, the motion to dismiss Count XIII is denied.

*IX. Ninth Counterclaim--Breach of Contract*

[22] Count IX has two theories: breach of an express contract and breach of an implied contract. The defendants argue that both theories "must be

2006 WL 864843                                                                                                Page 13
--- B.R. ----, 2006 WL 864843 (Bankr.D.Del.)
(Cite as: 2006 WL 864843 (Bankr.D.Del.))

dismissed because (i) Plaintiff has not identified any provision of the Financial Advisory Agreement that has been breached; and (ii) the allegations underlying Plaintiff's implied contract theory do not support a finding that any such implied contract existed" (Adv.Doc. 22, p. 36). The Court disagrees.

The liberal standards of notice pleading do not require a plaintiff to identify the specific contract provision at issue. Rule 8 simply does not require such specificity; it merely requires that a complaint provide the defendant with fair notice. FED. R. CIV. P. 8(a); see Otani v. State Farm Fire & Cas. Co., No. 96-16313, 1997 WL 367861, at *2, 1997 U.S.App. LEXIS 16384, at *5 (9th Cir. July 2, 1997) (reversing the dismissal of a breach of contract claim where dismissal was based primarily on the complaint's failure to identify a specific contract provision); D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy, No. 98CIV5847, 1999 WL 58916, at *6, 1999 U.S. Dist. LEXIS 1202, at *19 (S.D.N.Y. Feb.8, 1999) (noting that pleading a specific contract provision may not be necessary).

In Mellencamp v. Riva Music, Ltd., 698 F.Supp. 1154 (S.D.N.Y.1988), for example, the defendants argued that the "breach of contract should be dismissed because it fail[ed] to specify the contracts and specific contract provisions at issue in the lawsuit." Id. at 1160. The court disagreed, stating that "[i]t is now axiomatic that a complaint need only provide 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quotations and citation omitted).

A fair reading of the complaint provides the defendant with the necessary notice of what the claim is and the grounds upon which it rests. The complaint contains the requisite factual allegations. Such factual allegations support the conclusion that there is a valid contract, that the Debtors had complied with the contract by performing their obligations, that all conditions precedent were fulfilled, that there was a breach, and that the Debtors were damaged from that breach. The defendants' only gripe is that a specific provision is not identified; however, this cannot prove fatal at this early stage of the proceeding.

*13 Rule 8 "permits a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint, or the plaintiff may 'attach a copy as an exhibit, or plead it according to its legal effect." ' Pierce v. Montgomery County Opportunity Bd., 884 F.Supp. 965, 970 (E.D.Pa.1995); Stephens v. American Home Assurance Co., 811 F.Supp. 937, 958 (S.D.N.Y.1993); Goshen Veneer Co. v. G & A Aircraft, Inc., 3 F.R.D. 344, 345 (E.D.Pa.1944); 5 CHARLES A. WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1235 at 272-73 (1990).

Here, the plaintiff has plead the contract's legal effect. As such, the plaintiff's claim of breach of an express contract must go forward.

Likewise, the Court rejects the defendants' contentions that the allegations do not support a finding of an implied contract. The defendants' argument is nothing more than an assertion that the plaintiff will not ultimately prevail on the merits. Yet "[t]he issue here is not whether the Liquidating Trust will ultimately prevail on these claims, but only whether the plaintiff may put on evidence to support them." Liquidating Trust of U.S. Wireless Corp. v. Bhatnagar (In re U.S. Wireless Corp., Inc.), 333 B.R. 688, 692 (Bankr.D.Del.2005).

Accordingly, the defendants' motion to dismiss Count IX is denied.

*X. Tenth Counterclaim--Deepening Insolvency*

The tenth claim of the complaint alleges a cause of action for deepening insolvency. Courts and commentators have expressed divergent views about the theory of deepening insolvency. Indeed, courts do not agree whether deepening insolvency even exists. If it exists, however, many have struggled with whether it is simply a measure of damages or whether it is a distinct cause of action. Those that have determined that it is a cause of action are then faced with defining the elements and scope of the tort. Even once defined, there is debate about the proper measure of damages. Being confronted with only a motion to dismiss, this Court need not attempt to answer the many questions relating to deepening insolvency. Still, this Court must at least determine whether the applicable state law would recognize deepening insolvency as a distinct cause of action.

The first issue, thus, is what state's law applies. The parties dispute this issue but neither party makes its position entirely clear. Instead, the parties suggest that either the law of Delaware, North Carolina, or New York law would control. Because this Court believes the result would be identical regardless of which law applies, the choice of law issue need not be decided on this motion. See Litig. Trust of MDIP

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Inc. v. De La Rue cash Sys. Inc. (In re MDIP, Inc.)*, 332 B.R. 129, 132 (Bankr.D.Del.2005).

Unfortunately, it appears that neither the Delaware Supreme Court, the New York Court of Appeals, nor the North Carolina Supreme Court have weighed in on the validity of a claim of deepening insolvency. *Bondi v. Bank of Am. Corp. (In re Parmalat Sec. Litig.)*, 383 F.Supp.2d 587, 601 (S.D.N.Y.2005) ("North Carolina courts barely have considered this question."); *Kittay v. Atl. Bank (In re Global Serv. Group LLC)*, 316 B.R. 451, 458 (Bankr.S.D.N.Y.2004) (stating that no reported New York case has ruled that deepening insolvency is a tort and implying that no New York case has ruled that it is not); *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston, (In re Exide Techs., Inc.)*, 299 B.R. 732, 751 (Bankr.D.Del.2003) ("The Supreme Court of Delaware has not spoken on the tort of deepening insolvency.").

*14 However, several federal courts, applying each of these states' laws, have addressed the issue. Those decisions are far from uniform. *Compare In re Parmalat*, 383 F.Supp.2d at 602 (declining to decide whether North Carolina would recognize deepening insolvency but implying that it would not), *and Rafool v. Goldfarb Corp. (In re Fleming Packaging Corp.)*, No. 04-8166, 2005 WL 2205703, at *10, 2005 Bankr.LEXIS 1740, at *33 (Bankr.C.D.Ill. Aug.26, 2005) (questioning the validity of deepening insolvency under Delaware law), *and In re Global Serv.*, 316 B.R. at 457-60 (granting motion to dismiss deepening insolvency claim under New York law), *with TUG Liquidation, LLC v. Atwood (In re BuildNet, Inc.)*, No. 01-82293, 2004 WL 1534296, at *7, 2004 Bankr.2383, at *21 (Bankr.M.D.N.C. June 16, 2004) (applying North Carolina law and recognizing-but dismissing on different grounds-a claim for deepening insolvency), *and In re Exide Techs.*, 299 B.R. at 752 (Bankr.D.Del.2003) (predicting the Delaware Supreme Court would recognize the tort of deepening insolvency), *and Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 04-01500-608, 2006 Bankr.LEXIS 429, at *76 (Bankr.E.D.N.Y. Mar. 20, 2006) (denying motion to dismiss deepening insolvency claim under New York law).

In the last few years, a growing number of federal courts have issued opinions strongly implying that deepening insolvency aught not be recognized as an independent tort. It appears that Judge Bernstein led the charge in *In re Global Serv.*, 316 B.R. 451. In that case, the court observed that "[t]he distinction between 'deepening insolvency' as a tort or damage theory may be one unnecessary to make." *Id.* at 458. The court went on to hold that "one seeking to recover for 'deepening insolvency' must show that the defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." *Id.* As a result of this interpretation, a number of courts have rejected deepening insolvency as a cause of action. *See, e.g., In re Parmalat*, 383 F.Supp.2d at 602 (dismissing deepening insolvency claim as duplicative under New York law); *Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.)*, 333 B.R. 506, 517 (Bankr.D.D.C.2005) (same under the District of Columbia's law); *Official Comm. of Unsecured Creditors of VarTec Telecom, Inc. v. Rural Tel. Fin. Coop. (In re VarTec Telecom, Inc.)*, 335 B.R. 631, 644 (Bankr.N.D.Tex.2005) (same under Texas law); *see also In re Fleming Packaging Corp.*, 2005 WL 2205703, at *9, 2005 Bankr.LEXIS 1740, at *29 ("If the elements of a deepening insolvency claim are identical to a breach of fiduciary claim, even if cast in slightly different terminology, dismissal ... would be appropriate since duplicative counts are properly dismissed.").

To come to this conclusion, the *Global Service* court traced the theory of deepening insolvency to its roots:
*15 "Deepening insolvency" refers to the "fraudulent prolongation of a corporation's life beyond insolvency," resulting in damage to the corporation caused by increased debt. *Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir.), *cert denied*, 464 U.S. 1002 (1983). Its origin has been traced to *Bloor v. Dansker (In re Investors Funding Corp. of New York Sec. Litig.)*, 523 F.Supp. 533 (S.D.N.Y.1980). *See* Mette H. Kurth, *The Search for Accountability: The Emergence of "Deepening Insolvency" as an Independent Cause of Action*, 9 ANDREW'S BANKR. LITIG. REP. 6 (Aug. 27, 2004). There, the complaint alleged that the debtor's insiders (the Danskers) embarked on a scheme to loot the corporate debtor. *In re Investors Funding Corp.*, 523 F.Supp. at 536. Relying on a false picture of the debtor's financial well-being, they induced creditors and shareholders to invest more funds in the company. Thereafter, they misappropriated a portion of the funds that were raised. *See id.* at 536.
Peat, Marwick, Mitchell & Co. ("PMM") had served as the debtor's outside auditor. The debtor's chapter X trustee sued PMM, charging that the Danskers used the false financial statements that PMM had certified to further their scheme. *Id.* at

537. PMM moved for partial judgment on the pleadings or for partial summary judgment, and argued, inter alia, that the knowledge and wrongful conduct of the insiders should be imputed to the debtor's insiders to defeat recovery. *Id.* at 533.

PMM's argument invoked the "adverse interest" exception to the general rule that the agent's knowledge will be imputed to his principal. According to the District Court, the "adverse interest" exception applied if the agent acted adversely to the interest of his principal, but did not apply "where the agent is also acting for the principal's benefit, even though the agent's primary interest is inimical to that of the principal." *Id.* at 541. PMM urged that although the Dansker's were motivated by personal interests, the complaint also alleged that the debtor benefitted from the infusion of funds.

In words that begat the theory of "deepening insolvency," the District Court rejected the notion that acts that prolong a corporation's existence automatically confer a benefit on the corporation:

[E]ven to the extent one focuses upon the artificial financial picture of IFC [the debtor] created by the Danskers which prolonged IFC's existence several years beyond its actual insolvency, PMM's position is not persuasive. *A corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it.* The complaint plainly alleges that, as a result of the Danskers' practices, IFC's financial situation was caused to deteriorate even further after 1971. Accepting the allegations of the complaint as true, it is manifest that the prolonged artificial solvency of IFC benefited only the Danskers and their confederates, not IFC.

*16 *Id.* (emphasis added).

What began as a justification for recognizing the "adverse interest" exception soon morphed into a theory of recovery.

*In re Global Serv.,* 316 B.R. at 456-57.

The "morph[ing]" that *Global Service* describes seems to have occurred in three steps. The process started with *Bloor v. Dansker (In re Investors Funding Corp. of New York Sec. Litig.),* 523 F.Supp. 533 (S.D.N.Y.1980), discussed above. There, the District Court stated that "[a] corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it." *Id.* at 541. In other words, *Investors Funding* merely held that prolonging a debtor's corporate life was not necessarily a benefit. Three years later, the Seventh Circuit took the holding of *Investors Funding* a step further in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983), *cert denied,* 464 U.S. 1002 (1983). In *Schacht,* the Seventh Circuit concluded that not only was prolonging a failing corporation's life not beneficial, it was a harm to the firm. According to the Seventh Circuit, "the corporate body is ineluctably damaged by the deepening of its insolvency, through increased exposure to creditor liability." *Id.* at 1350. After *Schacht,* courts began to recognize deepening insolvency as a distinct injury. From there, applying the venerable principle that "where there is an injury, the law provides a remedy," the Third Circuit in *Official Comm. of Unsecured Creditors v. R.F. Lafferty Co., Inc.,* 267 F.3d 340, 351 (3d Cir.2001), determined that Pennsylvania would recognize deepening insolvency as a cause of action.

After relaying much of the above history, *Global Service* continued its analysis by collecting the relevant authorities, including *Lafferty*. Once collected, the court addressed the facts of the case before it and rejected a claim that a plaintiff could recover for deepening insolvency "because the bank made a loan that it knew or should have known Global could never repay." *In re Global Serv.,* 316 B.R. at 459. In the court's words, "[t]his may be bad banking, but it isn't a tort." *Id.*

As *Global Service* makes clear, simply lending to an insolvent corporation, without more, cannot possibly be a tort. *Id.* A result contrary to that articulated in *Global Service* would be unfortunate. Encouraging lending to a troubled company can be a good thing, not a tort. To that extent, this Court agrees with *Global Service.* However, this Court will not follow *Global Service* to the extent that decision rejects the vitality of a cause of action for deepening insolvency.

[23] Although this Court is aware of the mounting pile of authority rejecting such a cause of action, this Court is bound to rule as the applicable state's court of last resort would under the circumstances. *Lafferty,* 267 F.3d at 349 ("In the absence of an opinion from the state's highest tribunal, we must don the soothsayer's garb and predict how that court would rule if it were presented with the question."). Put differently, this Court must determine what the Third Circuit would predict the state law was with regard to deepening insolvency as an independent tort. In light of the Third Circuit's decision in *Lafferty,* this Court holds that Delaware, New York, and North Carolina courts would recognize deepening insolvency as a cause of action.

*17 *Lafferty's* words, though sometimes questioned,

are clear: "[w]e conclude that 'deepening insolvency' constitutes a valid cause of action under Pennsylvania state law ...." Id. at 344. In this Court's view, Lafferty expressly held that "deepening insolvency" was a cause of action rather than a measure of damages. In recognizing deepening insolvency as a cause of action, the Third Circuit "believe[d] that the soundness of the theory, its growing acceptance among courts, and the remedial theme in Pennsylvania law would persuade the Pennsylvania Supreme Court to recognize 'deepening insolvency' ...." Id. at 352.

It is not for this Court to question the Third Circuit's view of the soundness of the theory. Moreover, although many courts have rejected the theory of deepening insolvency, other courts continue to accept its validity. See, e.g., Stanziale v. Pepper Hamilton, LLP, (In re Student Fin. Corp.), 335 B.R. 539, 548 (D.Del.2005) (following Lafferty ); Miller v. Dutil, (In re Total Containment, Inc.), 335 B.R. 589, 619 (Bankr.E.D.Pa.2005) (same); In re LTV Steel Co., 333 B.R. 397, 422 (Bankr.N.D.Ohio 2005) (noting the growing acceptance of deepening insolvency and collecting cases). Finally, Delaware, New York, and North Carolina law, all adhere to the broad remedial themes discussed in Lafferty .

A. Soundness of the Theory

The soundness of the theory, rests in part, on the necessity to remedy certain harms. Lafferty identified two broad categories of harm. First, the Third Circuit discussed harms associated with causing a corporation to petition for bankruptcy:

> For example, to the extent that bankruptcy is not already a certainty, the incurrence of debt can force an insolvent corporation into bankruptcy, thus inflicting legal and administrative costs on the corporation. See Richard A. Brealey & Stewart C. Myers, Principles of Corporate Finance 487 (5th ed. 1996) ("[B]y issuing risky debt, [a corporation] gives lawyers and the court system a claim on the firm if it defaults."). When brought on by unwieldy debt, bankruptcy also creates operational limitations which hurt a corporation's ability to run its business in a profitable manner. See id. at 488-89. Aside from causing actual bankruptcy, deepening insolvency can undermine a corporation's relationships with its customers, suppliers, and employees. The very threat of bankruptcy, brought about through fraudulent debt, can shake the confidence of parties dealing with the corporation, calling into question its ability to perform, thereby damaging the corporation's assets, the value of which often depends on the performance of other parties. (citation omitted).

Lafferty, 267 F.3d at 349-50. Second, Lafferty, relying on the Seventh Circuit in Schacht v. Brown, identified damages associated with the "dissipation of corporate assets" arising from not dissolving the corporation in a timely manner. Id. at 350. This harm could supposedly be "averted, and the value within an insolvent corporation salvaged ...." Id. Lafferty explained this position by quoting Schacht v. Brown:

> *18 Cases [that oppose "deepening insolvency"] rest[ ] upon a seriously flawed assumption, i.e., that the fraudulent prolongation of a corporation's life beyond insolvency is automatically to be considered a benefit to the corporation's interests. This premise collides with common sense, *for the corporate body is ineluctably damaged by the deepening of its insolvency, through increased exposure to creditor liability. Indeed, in most cases, it would be crucial that the insolvency of the corporation be disclosed, so that shareholders may exercise their right to dissolve the corporation in order to cut their losses.* Thus, acceptance of a rule which would bar a corporation from recovering damages due to the hiding of information concerning its insolvency would create perverse incentives for wrong-doing officers and directors to conceal the true financial condition of the corporation from the corporate body as long as possible.

Lafferty, 267 F.3d at 350 (quoting Schacht, 711 F.2d at 1350).

[24] In this case, the complaint alleges that "CFSB induced the Debtors to continue their costly borrowing and financing policies and practices, despite knowledge that the Debtors were insolvent;" the complaint continues and states that "CFSB should have been preparing the Debtors for bankruptcy by attempting to conserve all assets" (Adv.Doc. # 1, ¶ 99). Thus, the plaintiff complains of a type of harm contemplated by Schacht-a failure to dissolve the corporation in a timely manner.

However, the complaint also states that the "Debtors' financial problems were a result of, among other factors, CFSB's encouragement of the continued use of the LAP, a downturn in the manufactured housing industry, a weakened economy, and, as it turns out, at least in part from borrowing, lending, loan servicing and financing practices that led to an increasingly large number of delinquent loans and repossessions that in turn lead to the Debtors' insolvency, deepening insolvency, and bankruptcy" (Adv Doc. # 1, ¶ 32). Elsewhere, the complaint states that the LAP

Program not only "deepened the insolvency of the Debtors but, eventually drove them into bankruptcy" (Adv. Doc # 1, ¶ 19). Thus, the complaint also alleges a harm based on the defendants causing the Debtors to petition for bankruptcy.

Depending upon the circumstances, these two theories are not inconsistent. This Court could imagine a situation where a defendant's actions could damage the debtor's business so irreparably that the corporation would eventually have to petition for bankruptcy. The defendant's actions could then artificially prop-up the debtor, delaying the bankruptcy. Thus, under this scenario, the debtor would suffer two distinct harms: first, the costs of bankruptcy, second, the costs of not filing the bankruptcy soon enough. In any event, the Federal Rules allow inconsistent pleadings. FED. R. CIV. P. 8(e)(2). Whether the plaintiff will ultimately prevail on their task of proving that the defendants caused their bankruptcy is a matter not appropriately resolved on a motion to dismiss.

*19 As is clear from the above, the plaintiff's alleged harms are of the sort that were explicitly recognized in *Lafferty* as requiring a remedy.

B. *Growing Acceptance*

The Third Circuit also relied on deepening insolvency's "growing acceptance among courts." *Lafferty*, 267 F.3d at 352. Again, it may be questioned whether deepening insolvency is continuing to gain acceptance or whether it is now falling into disfavor. Luis Salazar, *Is the Tide Turning on D & O Claims?* 24-3 ABIJ 1, at *45 (April 2005)(speculating *Global Service* dealt a "crippling blow" to deepening insolvency claims). Nevertheless, this Court notes that many jurisdictions continue to accept the vitality of deepening insolvency as an independent cause of action. See *In re LTV Steel Co.*, 333 B.R. 397, 422 (Bankr.N.D.Ohio 2005) (collecting cases). Moreover, this Court cannot depart from binding Third Circuit precedent with the ebbs and flows of nonbinding authority.

C. *Remedial Nature*

As the Third Circuit recognized Pennsylvania law's remedial theme, so too will this Court recognize the remedial themes of Delaware, New York, and North Carolina. It may be argued that the Third Circuit's decision does not actually bind this Court in the instant matter because *Lafferty* interpreted only Pennsylvania law. But I do not find this distinction meaningful. Upon examination of the relevant state laws, this Court finds that the reasoning of *Lafferty* would apply with equal force to each.

*Lafferty* noted that Pennsylvania adopts the commonly accepted principle that "where there is an injury, the law provides a remedy ." *Lafferty*, 267 F.3d at 351. The court also noted that such a venerable principle is accepted in "most common law jurisdictions." *Id.* Certainly, Delaware, New York, and North Carolina adopt this broad principle. *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743, 748 (N.C.1986) (noting "the principle that for every injury there is a remedy."); *Robb v. Pennsylvania R.R. Co.*, 210 A.2d 709, 714 (Del.1965) ("It is the duty of the courts to afford a remedy and redress for every substantial wrong."); *Batalla v. State of New York*, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729, 730 (N.Y.1961) ("It is fundamental to our common-law system that one may seek redress for every substantial wrong.").

Therefore, this Court concludes that the Third Circuit would recognize a cause of action for deepening insolvency under these state's laws absent a state court's decision to the contrary. *Lenning v. New York Life Ins. Co.*, 130 F.2d 580, 581 (3d Cir.1942). At this point, neither party has called this Court's attention to any state court decision that would alter *Lafferty's* result. Faced with this silence, *Lafferty* controls. [FN5]

The inquiry, however, is far from over. This Court must still determine the scope of deepening insolvency. Unfortunately, *Lafferty* failed to "specify the elements of a deepening insolvency claim." *In re Student Fin. Corp.*, 335 B.R. at 548. Still, *Lafferty* provides some guidance: "the Committee alleges an injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life. This type of injury has been referred to as 'deepening insolvency.' " *Lafferty*, 267 F.3d at 347. Both the District Court of Delaware and the District Court for the Eastern District of Pennsylvania have interpreted this language to require a showing of fraud. See, e.g., *In re Student Fin. Corp.*, 335 B.R. at 548; *Miller v. Dutil, (In re Total Containment, Inc.)*, 335 B.R. 589, 620 (Bankr.E.D.Pa.2005); *Seitz v. Detweiler, Hershey, & Assocs., P.C.(In re CITX Corp., Inc.)*, 03-727, 2005 WL 1388963, at *10, 2005 U.S. Dist. LEXIS 11374, at *31 (E.D.Pa. June 7, 2005); *Corporate Aviation Concepts, Inc., v. Multi-Serv. Aviation Corp.*, 03-3020, 2004 WL 1900001, at *4 (E.D.Pa. Aug.25,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.