2006 WL 864843   Page 18
--- B.R. ----, 2006 WL 864843 (Bankr.D.Del.)
**(Cite as: 2006 WL 864843 (Bankr.D.Del.))**

2004).

*20 [25] Although most courts in this Circuit have required a showing of fraud, the plaintiff argues that *Lafferty* does not require such an element (Adv.Doc. # 38, pp. 29-30). The plaintiff has some support for its argument. For example, *Lafferty* relied on *In re Gouirian Holdings, Inc.,* 165 B.R. 104 (E.D.N.Y.1994). That case, as stated in *Lafferty,* refused to dismiss claims brought by a committee because it was possible that "under some set of facts two years of negligently prepared financial statements could have been a substantial cause of [the debtor] incurring unmanageable debt and filing for bankruptcy protection." *Lafferty,* 267 F.3d at 350-51 (quoting *In re Gouirian Holdings, Inc.,* 165 B.R. at 107 (E.D.N.Y.1994)). Thus, in crafting the deepening insolvency theory, *Lafferty* relied on a case that permitted recovery for mere negligence. Despite this, *Lafferty* talks in terms of fraud. Thus, this Court will follow the line of authority that requires a showing of fraud for a successful claim of deepening insolvency. In this Court's view, this path more closely tracks the express holding of *Lafferty.*

The plaintiff, therefore, is required to show fraudulent conduct-not mere negligence. *In re Student Fin. Corp.,* 335 B.R. at 548. *But see Crowley v. Chait,* No. 85-2441, 2006 U.S. Dist. LEXIS 8894, at *14 (D.N.J. Mar. 7, 2006) (declining to restrict deepening insolvency to allegations of fraud); *In re LTV Steel Co.,* 333 B.R. 397, 421 (holding deepening insolvency can be based on negligence); *Tabas v. Greenleaf Ventures, Inc., (In re Flagship Healthcare, Inc.),* 269 B.R. 721, 728-29 (Bankr.S.D.Fla.2001) (same); *In re Gouirian Holdings, Inc.,* 165 B.R. at 107 (same).

Although different courts express the elements of fraud in slightly different terms, fraud generally has five elements: "a representation of material fact, falsity, scienter, reliance and injury." *Vermeer Owners, Inc. v. Guterman,* 78 N.Y.2d 1114, 578 N.Y.S.2d 128, 585 N.E.2d 377, 378 (N.Y.1991); *see also Stephenson v. Capano Dev. Inc.,* 462 A.2d 1069, 1074 (Del.1983); *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 374 S.E.2d 385, 391 (N.C.1988). Furthermore, the fraudulent conduct must be suffered by the debtor-not merely an individual creditor. *Lafferty,* 267 F.3d at 348-49.

[26] The plaintiff here is a Liquidating Trust that "holds the right to prosecute, compromise, and settle all of the Debtors' Estate's Claims and Causes of Action ...." (Adv.Doc. # 1, ¶ 9). The plaintiff has no right to prosecute a claim on behalf of an individual creditor. *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). As such, to establish a successful claim of deepening insolvency, the fraud alleged must be a harm to the corporation. *See id.*

Some commentators have questioned whether deepening insolvency hurts the firm or whether it merely hurts an individual creditor. *See* Sabin Willet, *The Shallows of Deepening Insolvency,* 60 BUS. LAW. 549, 574 (2005) (attacking the notion that a corporation can be harmed by deepening insolvency); J.B. Heaton, *Deepening Insolvency,* 30 Iowa J. CORP. L. 465, 500 (2005) (arguing that certain notions of deepening insolvency are "unsupported in financial economics and inconsistent with the traditional understandings and economic functions of corporate injury."). The Third Circuit, however, has spoken on this issue: such harms hurt the debtor qua debtor. *Lafferty,* 267 F.3d at 348-50. To question that determination is not within the province of this Court. Clearly though, where a defendant's actions are akin to the looting of a corporate debtor, the corporation suffers an injury.

*21 "[A]ccept[ing] as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," the plaintiff has stated a cause of action for deepening insolvency. *More v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). These allegations include the following. The defendants acted as the Debtors' insiders, fiduciaries, and exclusive financial advisors (Adv.Doc. # 1, ¶ ¶ 11, 19, 23, 33, 98). Placed in this position of trust and control, the defendants misrepresented to the Debtors that the LAP Program was sustainable (Adv.Doc. # 1, ¶ ¶ , 19, 21, 23, 33, 37, 99). This was false (Adv.Doc. # 1, ¶ ¶ , 19, 21, 22, 23, 33, 37, 98). It can be inferred from the complaint that the defendants made this representation with knowledge (Adv.Doc. # 1, ¶ ¶ 19, 21, 22, 37, 49, 98). Further, these representations were made with the intent to induce the Debtors into continuing an unsustainable program (Adv.Doc. # 1, ¶ 19, 37, 49, 99). The Debtors justifiably relied on the advice of their exclusive financial advisors (Adv.Doc. # 1, ¶ ¶ 21, 31, 32, 33, 98). As a result, the Debtors were injured (Adv.Doc. # 1, ¶ ¶ 21, 32, 37). This injury resulted from the defendants' deliberate inducement of the Debtors to continue the unsustainable LAP Program. The defendants made such inducements for the purpose of enriching themselves at the expense of the Debtors (Adv.Doc. # 1, ¶ 37). "The net effect of CFSB's knowing activity was to cause the Debtors to remain

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in business solely for the purpose of generating lender, investment banking, and restructuring and financial advisory fees for the benefit of CSFB" (Adv.Doc. # 1, ¶ 49).

Taken together, these alleged actions show a fraud on the Debtors. The fraud was an expansion of corporate debt and the propping-up of a failed firm. In other words, the complaint "alleges an injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life." *Lafferty,* 267 F.3d at 347. Accordingly, the complaint states a claim for deepening insolvency. [FN6]

[27] However, the defendants argue that even if the complaint states a claim for deepening insolvency, that claim must be dismissed because of the *in pari delicto* doctrine. The phrase *in pari delicto* means "in equal fault." BLACKS LAW DICTIONARY (8th ed.2004). The phrase is short for "*in pari delicto potior est conditio defendentis,*" meaning "[i]n case of equal or mutual fault ... the position of the [defending] party ... is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). In other words, "a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim ." *Lafferty,* 267 F.3d at 354; *see also Byers v. Byers,* 223 N.C. 85, 25 S.E.2d 466, 469-70 ("The law generally forbids redress to one for an injury done him by another, if he himself first be in the wrong about the same matter whereof he complains.... No one is permitted to profit by his own fraud, or to take advantage of his own wrong, or to found a claim on his own iniquity, or to acquire any rights by his own crime.").

*22 [28][29] *In pari delicto* is an affirmative defense. *In re Exide Techs.,* 299 B.R. at 752. Ordinarily, a court cannot consider an affirmative defense on a motion to dismiss. However, where the defense appears on the face of the complaint, a court may properly grant dismissal. *Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir.2001)("a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face."). [FN7]

Here, *in pari delicto* does not arise on the face of the complaint. The parties dispute whether the complaint demonstrates that the Debtors participated in the fraudulent conduct (*Compare* Adv. Doc. # 22, pp. 24-25, *with* Adv. Doc. # 38, p. 32). At this stage, however, whether the Debtors did or did not participate in fraud is not determinative of the *in pari delicto* issue.

[30][31] The complaint clearly states that the defendants became insiders, fiduciaries, and de facto controllers of the Debtors (Adv.Doc. # 1, ¶ ¶ 11, 14, 31, 37, 48, 99, 100). *In pari delicto* does not provide a defense for insiders. *In re Student Finance Corp.,* 335 B.R. at 547; *Official Committee of Unsecured Creditors v. William Shapiro,* 99-526, 2001 WL 1468250, at *1, 2001 U.S. Dist. LEXIS 18734, at *5 (E.D.Pa.2001); *Official Committee of Unsecured Creditors v. Austin Fin. Servs., Inc.(In re KDI Holdings, Inc.),* 277 B.R. 493, 518 (Bankr.S.D.N.Y.1999); *Goldin v. Primavera Familienstiftung Tag Assocs.(In re Granite Partners, L.P.),* 194 B.R. 318, 332 (Bankr.S.D.N.Y.1996).

As such, *in pari delicto* fails to arise on the face of the complaint and, therefore, cannot bar the plaintiff's claims.

With all this said, some closing observations are necessary. First, the theory of deepening insolvency is one of rapid evolution. [FN8] Courts have taken differing approaches with respect to whether it exists or not, whether it is a cause of action or merely a theory of damages, and if it is a cause of action, whether it requires an already existing duty or tort. *See In re Global Serv.,* 316 B.R. at 457-60 (collecting cases). Second, deepening insolvency, though primarily litigated in federal court proceedings, is a creature of state law. *Lafferty,* 267 F.3d at 344. As such, state courts will have the final word. *Lenning,* 130 F.2d at 581. Third, the complaint articulates the requisite fraudulent conduct: the defendants deliberately misrepresented the sustainability of the LAP Program to enrich themselves by extracting fees from the Debtors. Despite the fact that the complaint alleges such fraud, some statements made elsewhere in the complaint and in the plaintiff's papers cast confusion on the issue (*E.g.* Adv. Doc. # 1, ¶ 22; Adv. Doc. # 38, p. 30; Adv. Doc. # 56, ¶ 5). In the event fraudulent conduct is not alleged, Count X must be dismissed. *See In re Student Fin. Corp.,* 335 B.R. at 548. But from this Court's reading, the complaint adequately sets forth the requisite fraud to maintain an action for deepening insolvency; whether the plaintiff will be able to prove such fraud is a question of fact.

*23 Faced with the rapidly changing nature of the debate, the possibility of state court involvement, and the manner in which the Liquidating Trust has pleaded the action, this Court will treat the motion to dismiss Count X of the complaint as pending.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Part II MOTION TO COMPEL

This part of the opinion is with respect to CSFB's motion (Adv.Doc. # 61) to compel the OHC Liquidating Trust to provide an initial damage computation required by Federal Rule of Civil Procedure 26(a)(1)(C). For the reasons set forth below, the motion will be granted.

BACKGROUND

On July 7, 2005, this Court issued a Scheduling Order, which provided that "Federal Rule of Civil Procedure ("FRCP") Rule 26(a) Initial Disclosures (made applicable to this proceeding by Federal Rule of Bankruptcy Procedure, Rule 7026) shall be served no later than 14 days after entry of the Scheduling Order by the Court" (Adv.Doc. # 42, p. 2). Fourteen days later, on July 21, 2005, the plaintiff delivered its initial disclosures to the defendants (Adv. Doc. # 61, Exh. 1A; Adv. Doc. # 68, Exh. B). These disclosures had no accompanying supporting documents (Adv. Doc. # 61, Exh. 1A; Adv. Doc. # 68, Exh. B).

Part III of the plaintiff's disclosures contained a so-called "computation" of damages. Part III read, in full, as follows:
> The Trust is seeking recovery of certain transfers [that] were preferential and fraudulent. The amount of the transfers currently known and at issue are those articulated in the Trust's pleading in this matter. Moreover, the Trust is claiming unspecified damages as the result of CFSB's breach of fiduciary duties, breach of contract, and wrongful acts in prolonging the Oakwood Companies corporate life in an amount to be proved at trial. Finally, the Trust seeks disgorgement of all unjust profiteering on the part of CSFB.

(Adv. Doc. # 61, Exh. 1A, p. 3-4; Adv. Doc. # 68, Exh. B, p. 3-4). Following this "computation," a series of letters was exchanged between counsel.

On August 1, 2005, the defendants informed the plaintiff that the disclosure of damages was inadequate under Rule 26(a)(1)(C) (Adv. Doc. # 61, Exh. 1B; Adv. Doc. # 68, Exh. C). Plaintiff responded, on August 8, 2005, expressing its belief that its disclosures met all of the Rule's requirements (Adv. Doc. # 61, Exh. 1C; Adv. Doc. # 68, Exh. A). On August 17, 2005, the defendants responded and strongly reaffirmed their belief that the disclosures failed to meet the requisite standards (Adv.Doc. # 61, Exh. 1D). On August 30, 2005, the plaintiff conceded and supplemented its initial disclosures by providing the amount paid pursuant to its breach of contract claim, $450,000 (Adv. Doc. # 61, Exh. 1E; Adv. Doc. # 68, Exh. D). The supplement did not address damages for any of the other eight damage claims (Adv. Doc. # 61, Exh. 1E; Adv. Doc. # 68, Exh. D). On September 8, 2005, the defendants responded, indicating that they intended to file the instant motion to compel due to the plaintiff's failure to comply with Rule 26(a)(1)(C) (Adv. Doc. # 61, Exh. 1F; Adv. Doc. # 68, Exh. E). On September 13, 2005, the plaintiff responded expressing disappointment in the defendants' decision and stating that the plaintiff was under the impression that an agreement between the parties existed (Adv. Doc. # 61, Exh. 1G; Adv. Doc. # 68, Exh. F). According to the plaintiff, the supplemental disclosure of the amount of the contract claim satisfied the supposed agreement. On September 15, 2005, the defendants sent another letter attempting to correct what it perceived as "unacceptable misstatements" in the September 13 letter (Adv.Doc. # 61, Exh. 1H).

*24 On October 10, 2005, the defendants submitted the instant motion (Adv.Doc. # 61). Apparently, the parties have made a good faith effort to resolve their differences regarding the plaintiff's initial disclosure; but they have failed to resolve the issue.

DISCUSSION

Federal Rule of Civil Procedure 26(a)(1)(C), made applicable here by Federal Rule of Bankruptcy Procedure 7026, requires the plaintiff to disclose basic information regarding damages sought. The rule states as follows:
> (1) Initial Disclosures. Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:
>
> * * *
>
> (C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered ....

FED. R. CIV. P. 26(a)(1)(C). When used properly, these disclosure requirements accelerate the flow of basic information between the litigants. FED. R. CIV. P. 26 advisory committee's notes (1993). This flow of information "functions to assist the parties in focusing and prioritizing their organization of discovery." City & County of San Francisco v. Tutor-

*Saliba* Corp., 218 F.R.D. 219, 221 (N.D.Ca.2003). The initial disclosures also enable the parties to assess their risk and undertake an informed settlement analysis. *Id.* More generally, the information facilitates the efficient administration of a case and helps the litigants prepare for trial.

[32][33] With such goals in mind, courts apply the initial disclosure obligations in a common sense fashion so as to avoid gamesmanship. FED. R. CIV. P. 26 advisory committee's notes (1993). Accordingly, "a party would not be expected to provide a calculation of damages ... [that] depends on information in the possession of another party or person." *Id.* Likewise, a party would not be expected to produce supporting documents that are not reasonably available to it. *Id.* However, the party should disclose "the best information then available" regarding its calculation of damages. 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE--CIVIL § 26.22(4)(c)(ii) (3d ed.2005).

In the instant matter, the plaintiff argues that the mandatory initial disclosure obligations do not apply because the parties have varied the procedure by agreement (Adv.Doc. # 68, p. 2). In the alternative, the plaintiff asserts that it has sufficiently provided a computation of damages (Adv.Doc. # 68, p. 2). Lastly, the plaintiff urges that any deficiency in its computation is excused due to the lack of information reasonably available to it (Adv.Doc. # 68, p. 2). I cannot agree. The documents before me do not reveal any such stipulation; the plaintiff's vague disclosures fall far short of the "computation" requirement; and, such inadequate disclosures cannot be excused as the nature of the complained of damages makes at least some information reasonably available to the plaintiff.

A. *No Stipulation Or Order Excused The Plaintiff's Initial Disclosure Obligations*

*25 [34] Throughout its reply brief, the plaintiff boldly asserts that it need not meet its initial disclosure requirements because of an order of this Court and an alleged stipulation between the parties. Specifically, the plaintiff asserts that "the provisions of Rule 26(a)(1) were modified first as to the document production by stipulation, and later as to the damages computations" (Adv.Doc. # 68, p. 7). The defendants hardly respond to these two arguments-and with good reason.

With respect to the first argument, regarding document production, the Court can find no support for the plaintiff's position in the Scheduling Order. Likewise, the Court is not aware of any stipulation that would free the plaintiff from its Rule 26(a) obligations. If there were such an order or stipulation, the plaintiff has not cited it in its brief. To the extent the plaintiff is referring to the Scheduling Order, such reliance is misplaced.

The Scheduling Order explicitly states that "Rule 26(a) Initial Disclosures ... shall be served no later than 14 days after entry of the Scheduling Order by the Court" (Adv.Doc. # 42, p. 2). These disclosures include "documents or other evidentiary material, not privileged or protected from disclosure, on which such [initial] computation is based ...." FED. R. CIV. P. 26(a)(1)(C). Thus, the Scheduling Order, read together with Rule 26(a), clearly and explicitly requires the plaintiff to produce such documents; it in no way excuses such production. Thus, the plaintiff was obliged to produce any documents regarding damages that were reasonably available.

With respect to the plaintiff's argument regarding the sufficiency of the damage calculation, the Court can find no reason why the plaintiff would be excused from performing its Rule 26(a)(1)(C) computation. The plaintiff argues that the defendants "agreed to a compromise, 'starting point' damages calculation, but reneged once they had it" (Adv.Doc. # 68, p. 2). According to the plaintiff, the parties agreed that the plaintiff's damage disclosure with respect to its contract claim extinguished the plaintiff's disclosure obligations with respect to damage computations for all other counts.

It is surpassingly difficult to imagine that the defendants agreed that if the plaintiff were to provide the required calculation as to its contract claim, then its obligations as to the other eight counts would be excused. The complaint alleges nine different causes of action. The contract count has an ascribed value of $450,000 (Adv. Doc. # 61, Exh. 1E; Adv. Doc. # 68, Exh. D). Other counts potentially expose the defendants to liability for hundreds of millions of dollars (*see, e.g.,* Adv. Doc. 1, ¶ 42). As such, the Court agrees with the defendants: "No rational defendant, facing what it is told are hundreds of millions of dollars in damages, would settle for the disclosure made by Plaintiff in the place of the computation required by the Rules" (Adv.Doc. # 76, p. 1).

*26 In the September 15, 2005 letter, the defendants clarify any confusion:
  We did not say that if plaintiff were to provide the

calculation required under Rule 26(a) as to its contract claim, then its obligations across the board would be satisfied. When you pleaded complete ignorance as to how to begin calculating your claims for damages, we stated *by way of example* that a party seeking to estimate damages under a contract would look, as a matter of common sense, to amounts paid under that contract. We did not say that providing such a number would satisfy plaintiff's obligations as to its other claims; to the contrary, as you well know, we moved on to an extended discussion concerning plaintiff's other claims ....

(Adv.Doc. # 61, Exh. 1H)(emphasis in original). Based solely on the briefs and the supporting exhibits, it seems unreasonable for the plaintiff to have held such an interpretation. If the plaintiff honestly believed that such an agreement was in fact in place, the plaintiff should have reduced it to writing.

Federal Rule of Civil Procedure 29 governs stipulations regarding discovery procedures. That rule states that "the parties may by *written* stipulation ... modify other procedures governing or limitations placed upon discovery ...." FED. R. CIV. P. 29 (emphasis added). The plaintiff does not assert that this stipulation was ever reduced to writing. Thus, the Court will not permit the plaintiff to escape its obligations by resort to an oral stipulation which the defendants dispute exists.

*B. The Plaintiff Has Failed To Provide A Computation Of Damages As Required By Rule 26(a)*

As stated above, Rule 26(a)(1) requires that "a party must, without awaiting a discovery request, provide to other parties ... a computation of any category of damages claimed by the disclosing party ...." At issue here is the degree of specificity the plaintiff must provide in its disclosures. This issue turns largely on the meaning of the word "computation."

[35][36] Courts have understood the word to require a "specific computation of a plaintiff's damages." Kleiner v. Burns, No. 00-2160, 2000 WL 1909470, at *2, 2000 U.S. Dist. LEXIS 21850, at *4 (D. Kan. Dec 22, 2000). This specific computation certainly requires a disclosure of a specific dollar figure. See Bullard v. Roadway Exp., 3 Fed.Appx. 418, 420 (6th Cir. Feb.5, 2001)(affirming the District Court's sanctions where "[a]stonishingly" Plaintiff failed to make any reference to a dollar figure); Synergetics, Inc. v. Lumpkin, No. 4:04CV1650, 2005 WL 2179648, at *1, 2005 U.S. Dist. LEXIS 32273, at *2 (E.D. Mo. Sept 9, 2005) (granting motion to compel where the disclosure failed to set out "specific amounts" of damages). [FN9] Simply reciting a dollar figure, however, is not enough. Dogget v. Perez, No. CS-02-282, 2004 WL 2939600, at *5 (E.D.Wash. Mar.4, 2004) ("plaintiff is to provide more than a lump sum statement of damages sustained."); First Nat'l Bank of Chicago v. Ackerley Commc'ns, Inc., No. 94 Civ. 7539, 2001 WL 15693, at *6, n. 6, 2001 U.S. Dist. LEXIS 20895, at *18, n. 6 (S.D.N.Y. Jan.8, 2001) ("calculation of damages requires more than merely setting forth the figure demanded.").

*27 The computation requires at least "some analysis." Tutor-Saliba Corp., 218 F.R.D. at 221. The Rule does not place a great burden on the plaintiff. Rather, "[a]ll the claimant needs to do is sit down and calculate the damages that are claimed." Dixon v. Bankhead, No. 4:00CV344, 2000 WL 33175440, at *1 (N.D.Fla. Dec.20, 2000). Then, the plaintiff need only disclose what those damages are and how they got there. See Tutor-Saliba Corp., 218 F.R.D. at 221; see also Szusterman v. Amoco Oil Co., 112 Fed.Appx. 130, 131 (3d. Cir. Sept.30, 2004) (granting a motion to compel where the plaintiff "did not furnish any facts or methodology based on which he calculated his alleged damages ....").

[37] Put summarily, the plaintiff needs to provide the defendants with an initial estimate as to their claimed damages and at least "some analysis" of how the relevant facts lead to that dollar figure. Again, this is not such an onerous task. The plaintiff must merely disclose "the best information then available to it concerning th[e] claim, however limited and potentially changing it may be." 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE--CIVIL § 26.22(4)(c)(ii) (3d ed.2005); see FED. R. CIV. P. 26(a)(1)(E) ("A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation ...."); see also FED. R. CIV. P. 26(e) (stating a party has a continuing duty to supplement).

Likewise, "[i]f estimates are made which might be subject to revision with expert opinion, that is entirely permissible, but the requirements of Fed.R.Civ.P. 26(a)(1)(C) cannot be avoided if the opposing party insists on compliance." Dixon, 2000 WL 33175440, at *1. Here, the defendants so insist. As such, the plaintiff must disclose the "best information available to it concerning th[e] claim[s]."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE--CIVIL § 26.22(4)(c)(ii) (3d ed.2005).

*C. The Plaintiff Must Have At Least Some Information Regarding Its Damages*

[38] Despite this requirement, the plaintiff seeks to escape its obligations by arguing ignorance. The Court will not accept that the plaintiff has absolutely no information with respect to any of its claims and has no documentation to support the allegations of damages in its complaint. If this is indeed the case, there is a far more troubling problem.

The plaintiff must provide additional information with respect to all of its claims for damages. The plaintiff places its causes of action into three basic categories of harm: avoiding power damages, common law damages, and unjust profiteering damages (Adv.Doc. # 68, pp. 8-9).

With respect to its avoiding power damages, the plaintiff correctly points out that the complaint sufficiently provides an estimate as to the possible preferential and fraudulent transfers. But the plaintiff assumably has information and documentation to support these estimated damages.

*28 With respect to its common law claims, the plaintiff argues that "the Rule merely requires that a party exchange, pre-discovery, all basic information relating to damages that it *already has*. The Trust has accomplished that" (Adv.Doc. # 68, p. 11) (emphasis in original). Clearly, such a representation cannot be credited. The plaintiff initially refused to give an estimate to the defendants with respect to its breach of contract claim (Adv. Doc. # 61, Exh. 1A, p. 3-4; Adv. Doc. # 68, Exh. B, p. 3-4). When pressed, however, the plaintiff provided a "rough estimate" (Adv. Doc. # 61, Exh. 1E; Adv. Doc. # 68, Exh. D). The plaintiff should similarly be able to provide a rough estimate for its other common law claims. In addition, the Rule requires more than just a dollar figure. As stated above, the facts and methodology on how the plaintiff came to its estimates must also be disclosed.

In regards to the plaintiff's claimed damages for unjust profiteering, the plaintiff states that it is "nigh-impossible" to articulate a dollar figure (Adv.Doc. # 68, p. 13). The plaintiff also states that "[n]one of the documents reasonably available to the Trust allow it to determine the profits reaped by Defendants as a result of their untoward manipulation of the Debtors" (Adv.Doc. # 68, p. 13). In sum, the plaintiff alleges that "there is no additional 'basic information' that the Trust can disclose at this time regarding its unjust profiteering claim" (Adv.Doc. # 68, p. 14). To review, the plaintiff's initial disclosure with respect to damages is as follows:

> The Trust is seeking recovery of certain transfers [that] were preferential and fraudulent. The amount of the transfers currently known and at issue are those articulated in the Trust's pleading in this matter. Moreover, the Trust is claiming unspecified damages as the result of CFSB's breach of fiduciary duties, breach of contract, and wrongful acts in prolonging the Oakwood Companies corporate life in an amount to be proved at trial. Finally, the Trust seeks disgorgement of all unjust profiteering on the part of CSFB.

(Adv. Doc. # 61, Exh. 1A, p. 3-4; Adv. Doc. # 68, Exh. B, p. 3-4). From the Court's reading, the first two sentences deal with the avoidance power damages. The next sentence deals with the common law damages; and, the last sentence deals with the plaintiff's claim of unjust profiteering. Thus, the total of what the plaintiff has disclosed with respect to its unjust profiteering claim is that "the Trust seeks disgorgement of all unjust profiteering on the part of CSFB" (Adv. Doc. # 61, Exh. 1A, p. 3-4; Adv. Doc. # 68, Exh. B, p. 3-4).

These disclosures, according to the plaintiff, provide the defendants with "enough information to assess their exposure and craft discovery ...." (Adv.Doc. # 68, p. 2). In fact, the plaintiff finds it "difficult to fathom what more Defendants could want from the Trust in this early, pre-discovery phase" (Adv.Doc. # 68, p. 14). Contrary to the plaintiff's beliefs, the initial disclosures fall woefully short of meeting the requirements of Rule 26(a)(1)(C).

*29 The defendants motion to compel is granted.

ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendants' motion (Doc. # 21) to dismiss is DENIED as to Counts I through III and V through IX, while as to Count X the motion is deemed pending, and the motion (Doc. # 61) to compel discovery is GRANTED.

FN1. The defendants assert that New York law governs Count I.

FN2. The Court notes that if contractual parties "do not create their own relationship of higher trust, courts should not ordinarily

transport them to the higher realm of relationship and fashion the stricter duty for them." *Ne. Gen. Corp. v. Wellington Adver.,* 82 N.Y.2d 158, 604 N.Y.S.2d 1, 624 N.E.2d 129, 131 (N.Y.1993). Despite this, fiduciary "liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation." RESTATEMENT (SECOND) OF TORTS § 874, cmt. b (1979). As such, this Court cannot merely ignore the factual allegations of the complaint.

FN3. Although the motion to dismiss Count VI is denied, it is not clear to this Court how the defendants could be construed as affiliates of the Debtors. The complaint states that the defendants held warrants that, if exercised, would provide the defendants with "*just under* 20% of OHC's common stock" (Adv. Doc # 1, ¶¶ 30, 31) (emphasis added). Further, the plaintiff's brief represents that "had it been exercised, CSFB would have been the largest shareholder of OHC with approximately 17% of the outstanding stock" (Adv.Doc. # 38, p. 18, n. 28).
The definition of affiliate does not include an entity holding warrants for 17% of the outstanding stock:
(2) The term "affiliate" means--
(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--
(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote ....
11 U.S.C. § 101(2). Aside from 17% being less than 20%, the plaintiff fails to cite any authority that supports the view that warrants constitute "outstanding voting securities" under the Bankruptcy Code. At least some authority to the contrary exists. *In re Tex. Equip. Co.,* No. 01- 50829, 2004 Bankr.LEXIS 187, at *9 (N.D.Tex. Feb. 25, 2004) ("the court cannot conclude that the ownership of stock options constitutes 'control' of outstanding shares of stock."). However, this is not to say that the warrants are irrelevant. To the contrary, the warrants are one of many facts relevant in the overall analysis of whether the defendants qualify as non-statutory insiders.

FN4. The complaint stretches 37 pages, contains one-hundred paragraphs, and has ten separate counts.
This type of pleading has been referred to as a 'shotgun' pleading by some courts. "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous."
*In re DVI, Inc.,* 326 B.R. 301, 309 (Bankr.D.Del.2005) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir.2002)).

FN5. Although neither party has pointed this Court to any relevant state court authority, state courts appear to be taking up the issue with increased frequency. *See, e.g., MCA Fin. Corp. v. Thornton,* 263 Mich.App. 152, 687 N.W.2d 850, 858 (Mich.App.2004) (suggesting Michigan might recognize a deepening insolvency claim); *Coroles v. Sabey,* 79 P.3d 974, 983 (Utah Ct.App.2003) (declining to recognize deepening insolvency); *Bondi v. Citigroup, Inc.,* BER-L-10902-04, 2005 WL 975856, at *21 (N.J.Super.Ct. Feb. 28, 2005) (same). Since *Lafferty,* the Delaware Court of Chancery has focused more closely on exploring fiduciary duties and causes of action in the "vicinity of insolvency." *See Rapoport v. Litig. Trust of MDIP, Inc.,* CA No. 1035-N, 2005 WL 3277911, at *5 n. 70, 2005 Del. Ch. LEXIS 180, at *25, n. 70 (Del. Ch. Aug. Nov. 23, 2005). Indeed, Delaware Courts may soon confront the issue. *See id.* ("This action will likely raise at least one novel issue of Delaware corporate law: whether directors and officers' duties change materially in the face of 'deepening insolvency.' "). Nevertheless, at this time, the Court has been pointed to no such state law that would alter the result which *Lafferty* demands.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN6. This Court declines to opine what the proper measure of damages for a successful claim of deepening insolvency might be. The parties have not briefed this issue and it would be premature to address it here.

FN7. The plaintiff suggests that a court may never consider *in pari delicto* before the filing of an answer. This is incorrect. The plaintiff also asserts that, in the context of a deepening insolvency claim, "courts have been reluctant to apply the *in pari delicto* defense against a bankruptcy trustee ...." (Adv.Doc. # 38, p. 31). Although some courts may have taken this approach, the Third Circuit is not among them. According to the express holding of *Lafferty*, the bankruptcy trustee stands in the shoes of the debtor at the time of the filing (for claims proceeding under § 541). *Lafferty*, 267 F.3d at 357. As a result, there is no judicial reluctance to apply the *in pari delicto* defense to a bankruptcy trustee's claim of deepening insolvency. *Id.* In another context, the plaintiff would be correct, but not here. See *McNamara v. PFS (In re Personal & Bus. Ins. Agency)*, 334 F.3d 239, 246 (3d Cir.2003) ("*Lafferty* does not extend to the situation at bar because the Trustee is acting under § 548 rather than § 541.").

FN8. No fewer than eight relevant decisions have been rendered since the completion of briefing (July 22, 2005) in the matter before the Court. See, e.g., *In re Greater Southeast Cmty. Hosp. Corp.*, 333 B.R. at 517 (declining to recognize deepening insolvency as an independent tort); *In re VarTec Telecom, Inc.*, 335 B.R. at 633 ("deepening insolvency would not be recognized as a tort under Texas law"); *In re Fleming Packaging Corp.*, 2005 WL 2205703, at *10, 2005 Bankr.LEXIS 1740, at *35 (leaving motion to dismiss a claim of deepening insolvency pending); *In re Monahan Ford Corp.*, 2006 Bankr.LEXIS 429, at *76 (denying motion to dismiss a clam of deepening insolvency); *In re Student Finance Corp.*, 335 B.R. at 548 (stating that deepening insolvency was a tort under Pennsylvania law); *In re Total Containment, Inc.*, 335 B.R. at 619 (following *Lafferty* ); *Crowley v. Chait*, 2006 U.S. Dist. LEXIS 8894, at *14 (same); *In re LTV Steel Co.*, 333 B.R. at 422 (recognizing deepening insolvency as a free-standing tort).

FN9. The plaintiff relies on *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D.Tex.2005), for the proposition that it need not provide a dollar figure. In that case, the Court excused the required computation because of the nature of the claimed damages:

"compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury" and "may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)." (citations omitted).... Plaintiffs state that they do not intend to ask the jury for a specific dollar amount of damages at trial. (Resp. at 4.) Based on this representation and the Fifth Circuit's holding in *Williams*, Plaintiffs will not be required to disclose a computation of damages at this time .... To the extent that Plaintiffs attempt to assign a specific dollar figure to their emotional distress damages at trial, Defendant may seek to exclude such evidence as provided by Federal Rule of Civil Procedure 37(c)(1).

*Waffle House*, 227 F.R.D. at 470. In this case, the plaintiff bases its damages on injuries resulting from claims of breach of contract, unjust enrichment, and fraudulent transfer. These types of action are certainly more susceptible to calculation than compensatory damages for emotional distress. Further, the Court presumes that the plaintiff will want to ask for a specific amount of damages at trial.

--- B.R. ----, 2006 WL 864843 (Bankr.D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1468250 (E.D.Pa.)
(Cite as: 2001 WL 1468250 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
OFFICIAL COMMITTEE OF UNSECURED
Creditors
v.
WILLIAM SHAPIRO, et al.
No. 99-526.

Nov. 16, 2001.

*MEMORANDUM*

LUDWIG.

*1 This securities fraud action [FN1] arises out of a Ponzi scheme alleged to have been conducted by defendants, [FN2] who occupied various relationships in respect to two now bankrupt lease financing corporations. Motions to dismiss claims against two of the defendants, an accounting firm and an underwriter, who were outside providers, were previously granted and the action against them severed. On October 9, 2001, the dismissals were affirmed on appeal by a divided panel that upheld the application of the doctrine of *in pari delicto* to the derivative claims of the two corporate debtors. On October 30, 2001, the remaining defendants moved for judgment on the pleadings, [FN3] Fed.R.Civ.P. 12(c), and the controlling insider defendants to stay discovery that was directed in a rigorous case management order entered August 1, 2001. [FN4] Jurisdiction is federal question and supplemental. 28 U.S.C. §§ 1331, 1334(b), 1367. The motions will be denied. [FN5]

FN1. The detailed history of this proceeding is set forth in *Official Committee of Unsecured Creditors v. William Shapiro, et al.,* No. 99-526, slip op. (E.D.Pa. Sept. 8, 1999) aff'd, *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 362 (3d Cir.2001) (dismissing claims against defendant R.F. Lafferty & Co. Inc). On February 14, 2001, claims against defendant Cogen Sklar, L.L.P. were also dismissed.

FN2. Remaining defendants are William Schapiro, Kenneth S. Shapiro, Deljean Shapiro, Lester Shapiro, Nathan Tattar, John B. Orr, Adam Varrenti, Jr., Philip Bagley, The Law Offices of William Shapiro, Esq., P.C., and Liss Financial Services, Inc.

FN3. The Rule 12(c) standard is the same as a motion to dismiss under Rule 12(b)(6). *Turbe v. Government of Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991). As with Rule 12(b)(6), all allegations in the complaint are accepted as true and all reasonable inferences drawn in favor of the plaintiff. *Id.* A complaint should be dismissed only if no relief could be granted under any set of facts. *Turbe,* 938 F.2d at 428 (citing *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1394-95 (3d Cir.1991).

FN4. Only the "Shapiro Defendants," William and Kenneth Shapiro, in their individual capacities, and the Law Offices of William Shapiro, Esq., P.C., join in the filing of the "Motion for a Protective Order and/or Stay of Discovery."

FN5. No ruling is made as to defendants The Law Offices of William Shapiro, Esq., P.C. and Liss Financial Services, Inc.

The recent opinion of our Court of Appeals panel majority does not justify or lead to reconsideration of the principled finding that: "Vis-a-vis their corporations, insiders cannot avoid the consequences of their own handiwork." *Official Committee of Unsecured Creditors v. William Shapiro, et al.,* No. 99-526, slip op. at 12 (E.D.Pa. Sept. 8, 1999). The majority did not consider the effect of *in pari delicto* on corporate insiders. [FN6] It does not follow that because the claims against two outsider defendants were dismissed, the claims against the debtor corporations' officers and directors should also be dismissed. "*In pari delicto* bars claims against third parties, but does not apply to corporate insiders or partners." *In re Granite Partners, L.P.,* 194 B.R. 318, 332 (S.D.N.Y.1996). Unlike outside consultants and advisors, insiders exercise control over a corporation and should not benefit from *in pari delicto,* which is an equitable defense.

FN6. Movants rely on the dissent in *Official*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2001 WL 1468250 (E.D.Pa.)
**(Cite as: 2001 WL 1468250 (E.D.Pa.))**

*Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 362 (3d Cir.2001), which criticized the majority's *in pari delicto* analysis as equally applicable to both outsiders and insiders.

The motion for a stay pending the outcome of the motion for judgment on the pleadings will also be denied as moot.

*ORDER*

AND NOW, this 16th day of November, 2001, in accordance with the accompanying memorandum, the following is ordered:

1. The motion by remaining defendants for judgment on the pleadings, Fed.R.Civ.P. 12(c), is denied.

2. The motion by defendants William and Kenneth Shapiro, in their individual capacities, and The Law Offices of William Shapiro, Esq., P.C. for "a Protective Order and/or Stay of Discovery" is denied.

3. The case management order dated August 1, 2001 and all subsequent discovery directives issued by Special Master Seymour Kurland, Esq. shall remain in effect. The parties shall make full compliance.

4. The next Rule 16 Conference will be held on November 20, 2001 at 4:00 p.m. in Courtroom 12-A (changed from November 27, 2001 at 5:30 p.m.).

Not Reported in F.Supp.2d, 2001 WL 1468250 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.