Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 2613993 (E.D.N.Y.)
(Cite as: 2004 WL 2613993 (E.D.N.Y.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
UTILITY METAL RESEARCH, INC., Plaintiff,
v.
GENERAC POWER SYSTEMS, INC., Allegheny
Energy Solutions, Inc., and Allegheny
Energy, Inc., Defendants.
No. 02-CV-6205 FB RML.

Nov. 18, 2004.

Daniel Melucci, Melucci, Celauro & Sklar, LLP, New York, N.Y. for Plaintiff.

William F. Dahill, Woolmuth Maher & Deutsch, LLP, New York, NY, Rod Rogahn, Generac Power Systems, Inc., Waukesha, WI, Paul M. Hellegers, Menaker & Herrmann, LLP, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

*1 This matter is before the Court on defendant Generac Power Systems' ("Generac") motion to dismiss plaintiff Utility Metal Research's ("UMR") amended complaint for failure to comply with the notice pleading requirements of Fed.R.Civ.P. 8(a) or state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). After answering the amended complaint, Defendants Allegheny Energy Services and Allegheny Energy (collectively, "Allegheny") joined, except in one respect, those aspects of the motion that pertained to them. For the reasons that follow, the Court grants the motion and dismisses the amended complaint.

### I.

The Court's recitation of facts is derived from the amended complaint. Generac is a Wisconsin corporation that designs and manufactures a wide range of electrical generation equipment. Allegheny Energy Services and Allegheny Energy are, respectively, Delaware and Maryland corporations whose business includes the sale of electrical-generation equipment purchased from Generac and other manufacturers. UMR is a New York corporation that installs and maintains on-site electrical-generation equipment. UMR alleges that certain Generac power generators that four of its clients purchased from Allegheny did not function properly and, as a result, its clients refused payment for UMR's installation and maintenance services. UMR further alleges that defendants failed to honor their warranties with respect to the generators and that UMR incurred expenses in repairing them.

UMR commenced this action in New York Supreme Court, Richmond County, asserting various contract, warranty and products-liability claims against both Generac and Allegheny, as well as a claim of intentional interference with contracts against Generac. The action was removed on the basis of diversity jurisdiction. See 28 U.S.C. § § 1332 and 1441.

UMR served its amended complaint in August 2003. The amended complaint simply repeated the conclusory allegations contained in the original complaint. In addition, it asserted a defamation claim against Generac. The allegedly defamatory statement is a letter from Generac to one of UMR's clients, Lee Springs, which UMR appended to its amended complaint. In the letter, Generac warns Lee Springs:

> We have reviewed the application and installation of the Generac generators at your site and have determined this application and installation to be inappropriate.
> Specifically, we are concerned about:
> A. The lack of fuel spill protection/containment in the generator area[;]
> B. Operation of bi-fuel conversions is not authorized or recommended on Generac Mitsubishi standard diesel engines[;]
> C. Exhaust systems appear to run into the central chimney of the building, this could be a potential fire hazard[;]
> D. No apparent pressure relief in remote radiator configuration[;]
> E. Inadequate fire suppression.
> For these concerns listed, we request that a certified engineering firm which is experienced with the application, design, construction and installation of standby generators and heat recovery systems be consulted and the appropriate measures

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2613993 (E.D.N.Y.)  
(Cite as: 2004 WL 2613993 (E.D.N.Y.))

Page 2

be taken to address the concerns listed prior to continuing operation of these units.

*2 Accordingly, it is Generac's recommendation the generators be removed unless the application and installations are corrected to eliminate the listed concerns. We regret to make such a recommendation, but feel strongly that the application and installation must be corrected for the concerns stated.

Am. Compl. Ex. A.

## II.

The Court applies New York substantive law in addressing UMR's claims; in matters of procedure, however, federal law governs. See *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

Under Rule 8(a), a plaintiff need provide nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed.R.Civ.P. 8(a)(2)). "Dismissal pursuant to the rule is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir.2004) (describing the Rule 8 pleading standard as "extremely permissive"). Because the Court dismisses UMR's amended complaint under Rule 12(b)(6), it need not reach the question of whether the amended complaint meets the permissive requirements of Rule 8(a).

There is "a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted." *Wynder*, 360 F.3d at 80. Thus, even when a complaint is sufficient to meet Rule 8(a)'s notice requirements, a Rule 12(b)(6) motion will "lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against him." *Id.; see also Straker v. Metropolitan Transit Authority*, 333 F.Supp.2d 91, 102 (E.D.N.Y.2004) ("Conceptually, the Court believes that there is a distinction to be drawn between fair notice of what the plaintiff's claim is and the grounds upon which it rests; conclusory allegations cannot satisfy the latter." (internal quotation omitted)).

When deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. See *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir.2004). Courts may not consider matters outside the pleadings, but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. See *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). Because Allegheny answered the amended complaint before joining in Generac's motion, Allegheny's motion is properly designated as a motion for judgment on the pleadings under Rule 12(c). In considering a Rule 12(c) motion, "courts apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Ziemba*, 366 F.3d at 163.

*3 ## III.

### A. Breach-of-Contract Claims

Under New York law, the essential elements of a contract claim are "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998).

In a portion of its motion not joined by Allegheny, Generac argues that UMR has failed to plead sufficient facts to show the existence of a contract between Generac and UMR. UMR's amended complaint alleges that it "entered into a contract with the defendants" for installation of generators at its four clients' facilities. See Am. Compl. ¶¶ 28, 81, 134, 187. UMR did not attach a copy of the alleged contracts to its amended complaint, did not quote, paraphrase, or otherwise reference any terms of the alleged contracts, and did not identify the contract provisions allegedly breached. Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to identify the contractual provision that defendant allegedly breached. See *Wolff v. Rare Medium Inc.*, 171 F.Supp.2d 353, 358 (S.D.N.Y.2001) (dismissing New York breach-of-contract claim because plaintiffs failed to identify contractual provisions that defendant had allegedly breached); *Leigh Management Assoc's v. Weinstein*, 674 N.Y.S.2d 688, 689 (1st Dep't 1998) (concluding complaint failed to state a viable cause of action where it did not set forth the terms of the parties' contracts or identify the contract terms on which the claim was based). [FN1] Because UMR's amended complaint does not identify the contractual provisions allegedly breached by Generac, it fails to state a breach-of-contract claim against Generac.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN1. As noted, the Court applies New York substantive and federal procedural law. The Court recognizes that *Leigh Management Assoc's* and other New York cases cited herein were decided on motions to dismiss for failure to state a cause of action under N.Y. C.P.L.R. 3211(a)(7), not under Rule 12(b)(6). This is, however, a distinction without a difference. Like under Rule 12(b)(6), under N.Y. C.P.L.R. 3211(a)(7) the pleading is "afforded a liberal construction, its allegations are accepted as true, [and] plaintiffs are accorded the benefit of every possible favorable inference...." *HT Capital Advisors, L.L.C. v. Optical Resources Group, Inc.,* 715 N.Y.S.2d 837, 838 (1st Dep't 2000). Similarly, like under Rule 12(b)(6), under N.Y. C.P.L.R. 3211(a)(7) "vague and conclusory allegations and expression of hope that discovery, if and when conducted, might provide some factual support for [a] cause of action ... provide an insufficient basis for failing to dismiss a patently defective cause of action." *Id.;* see also *Straker,* 333 F.Supp.2d at 102 (noting that notwithstanding the Supreme Court's decision in *Swierkiewicz,* conclusory allegations are still insufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted when the complaint fails to identify facts that support a claim).

Although Allegheny did not join in this portion of Generac's motion, the amended complaint similarly fails to identify the contractual provisions allegedly breached by Allegheny. Regardless of whether or not Allegheny moved for dismissal on this particular ground, "the Court has the power to dismiss a complaint *sua sponte* for failure to state a claim." *Nunez v. Goord,* 172 F.Supp.2d 417, 433 (S.D.N.Y.2001)(citing *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980)). The party defending a *sua sponte* dismissal is ordinarily allowed an opportunity to be heard before issuance of the order. *See id.* (citing *Lewis v. New York,* 547 F.2d 4, 5-6 & n. 4 (2d Cir.1976)). Generac's motion to dismiss for failure to identify contract provisions that were allegedly breached provided UMR with notice of, and an opportunity to defend, this deficiency in its contract claims against all the defendants. *See id.* (*sua sponte* dismissing excessive force claim against three of the defendants without granting plaintiff an opportunity to be heard because, although the motion for summary judgment did not seek dismissal on the ground that the complaint failed to allege facts supporting such a claim against those particular defendants, the defendants' motion for summary judgment "against the complaint" gave plaintiff notice and an opportunity to defend his excessive force claim). Accordingly, the breach-of-contract against Allegheny is dismissed.

### B. Third-Party-Beneficiary, Partnership and Quasi-Contract Claims

*4 In its reply memorandum of law, UMR asserts, for the first time, that it is the third party beneficiary of unspecified contracts between Allegheny and Generac, that Generac is Allegheny's partner and, therefore, liable for its actions, and that it is entitled to recovery against Generac on the theory of quasi-contract. As an initial matter, the Court notes that a complaint may not be amended by briefs. *See Fonte v. Board of Managers of ContinentalFonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988) ("Factual allegations contained in legal briefs or memoranda are ... treated as matters outside the pleading for purposes of Rule 12(b)"); *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). In addition, UMR's new arguments are without merit.

In order to state a claim under New York law that it was the third-party beneficiary of a contract between Generac and Allegheny, UMR must allege, *inter alia,* that they entered into a contract intended for UMR's direct benefit. *See Ogden Dev. Corp. v. Federal Ins. Co.,* 508 F.2d 583, 588 (2d Cir.1974) ( "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit."). UMR has not alleged, even in a conclusory manner, any intent by Generac and Allegheny to directly benefit UMR by contract, let alone plead any facts in support of such a claim. Thus, UMR has not pleaded a third-party-beneficiary claim.

Similarly, UMR has failed to plead essential elements of its claim that Generac is Allegheny's partner and, therefore, is bound by its actions. In New York there are several indicia of the existence of a partnership relationship, namely: "(1) the pro-rata sharing of profits and losses of the enterprise, (2) the pro-rata contribution to the capital of the enterprise, (3) the joint ownership and interest in the enterprise's

Not Reported in F.Supp.2d        Page 4
Not Reported in F.Supp.2d, 2004 WL 2613993 (E.D.N.Y.)
**(Cite as: 2004 WL 2613993 (E.D.N.Y.))**

assets by all investors, (4) the intention of the parties that they be partners, and (5) the partners all having some voice in the management of the enterprise." U.S. v. Bonanno Organized Crime Family, 879 F.2d 20, 27-28 (2d Cir.1989). UMR, having pleaded no facts in support of any of these indicia of partnership, has not stated a claim against Generac as Allegheny's partner.

With respect to the theory of quasi contract, UMR contends that Generac "would be unjustly enriched in having sold defective equipment, essentially to UMR, and avoiding liability for the failure of such equipment." [Pls.' Reply] Mem. at 7. "[T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery." Kagan v. K-Tel Entertainment, Inc., 568 N.Y.S.2d 756, 757 (1st Dept.1991); see also Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F.Supp.2d 157, 167 n. 64 (S.D.N.Y.1998) (explaining that recovery in quasi-contract will not lie absent an allegation that performance was rendered for the defendant). Regardless of UMR's new assertion that Generac "essentially" sold it the generators, it is clear from the amended complaint that the generators were, in fact, purchased from Allegheny by UMR's clients. UMR has pleaded no facts that would show that its installation and maintenance of those generators was performed at Generac's behest. If UMR is entitled to any recovery for the its clients' alleged refusal to pay for its services, such recovery would be against its clients, not Generac. Similarly, any cause of action for alleged defects in the generators belongs to those clients, not UMR.

**C. Implied- and Express-Warranty Claims**

*5 Having failed to plead sufficient facts to support a contract claim against Generac or Allegheny, UMR cannot state an implied-warranty claim. See Castillo v. Tyson, 701 N.Y.S.2d 423, 425 (1st Dep't 2000) (affirming dismissal of implied warranty claim because there was no privity of contract between plaintiff and defendant).

UMR's express-warranty claim is equally defective. Under New York law, breach of an express warranty is proven by showing the existence of an express warranty, reliance on that warranty as part of the agreement between the parties, and that the warranty was false or misleading when made, proximately causing plaintiff's loss. See Rogath v. Siebenmann, 129 F.3d 261, 264 (2d Cir.1997). As a general rule, express warranties are "solely creatures of contract." Mastrangelo v. Howmedica, 903 F.Supp. 439, 443 (E.D.N.Y.1995). However, New York courts recognize that privity of contract is not required to state a claim of breach of warranties contained in public advertising or sales literature. See Chenango County Indus. Dev. Agency v. Lockwood Greene Eng'rs, Inc., 494 N.Y.S.2d 832, 834 (3rd Dep't 1985) ("the lack of privity is not fatal, for plaintiffs have alleged that [defendant] made specific representations in advertising and sales literature upon which plaintiffs relied."). UMR's amended complaint failed to identify any express warranty provisions allegedly breached by defendants or allege reliance on public advertising or sales literature.

**D. Negligence and Strict-Products-Liability Claims**

UMR's amended complaint asserts that "defendants failed to use reasonable care in designing or making" the generators, and that they "were certain to be dangerous and defective when put to normal use." Am. Compl. ¶ ¶ 114, 115. It is unclear from the amended complaint whether, by these assertions, UMR intended to allege a negligence or strict-products-liability claim. Regardless, under New York's so-called "economic-loss" doctrine, where a plaintiff seeks recovery under either a negligence or strict-productsliability theory for damage to a product, as opposed to physical damage to a person or property, the plaintiff may only recover contract damages. See Bocre Leasing Corp. v. General Motors Corp., 84 N.Y.2d 685, 694 (1995) ("Tort recovery in strict products liability and negligence against a manufacturer should not be available to a down-stream purchaser where the claimed losses flow from damage to the property that is the subject of the contract.... Tort law should not be bent so far out of its traditional progressive path and discipline by allowing tort lawsuits where the claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies.").

The amended complaint does not allege any damage to any person or property other than to the generators themselves. Thus, UMR has failed to state a negligence or strict-products-liability claim.

**E. Tortious Interference with Contract**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*6 As noted, UMR's claim of tortious interference with contract is asserted against Generac only. To establish a prima facie case of tortious interference with contractual relations under New York law, a plaintiff must plead the following elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach the contract; (4) and damages. See Kronos Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993).

The amended complaint makes vague reference to alleged contracts between UMR and its clients, but provides no factual allegations regarding the terms of those contracts, how they were breached, or how Generac procured a breach. See Wolff, 171 F.Supp.2d at 360 (dismissing claim of tortious interference with contract that was unsupported by factual allegations regarding plaintiff's rights and obligations under the alleged contracts, how the third parties breached the contracts, or how defendants caused the breach). UMR alleges that Generac "intentionally and without justification induced one or more of [UMR's clients] to breach the contract with [UMR]." Am. Compl. ¶ 240. But UMR offers no facts in support of this vague and conclusory allegation of intent. See Fitzpatrick Constr. Corp. v. County of Suffolk, 525 N.Y.S.2d 863, 866 (2d Dep't 1998) (affirming dismissal because complaint that "vaguely refers to an intentional course of conduct by [defendants] ... [is] insufficient to withstand a motion to dismiss."). Accordingly, UMR has failed to state a claim of tortious interference with contract.

**F. Defamation Claim**

"Under New York law, the elements of a defamation claim are a false statement, published without privilege or authorization to a third party, constituting fault ... and it must either cause special harm or constitute defamation per se." Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 169 (2d Cir.2003) (quotation omitted). Whether a statement is susceptible to a defamatory meaning is a question of law. See Aronson v. Wiersma, 65 N.Y.2d 592, 593 (1985) ("Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance ... and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction.").

Generac argues that the letter merely states its concerns about the installation and, therefore, is a non-actionable expression of opinion. Expressions of subjective opinion, as opposed to statements of objective fact, cannot defame "unless a reasonable factfinder would conclude that the statement implies reasonably specific assertions of fact." See Lee v. Bankers Trust Co., 166 F.3d 540, 547 (2d Cir.1999). Although the letter is couched in terms of Generac's "concerns" about the installation, those concerns are stated in language that is sufficiently verifiable to have a defamatory meaning.

*7 Nonetheless, the Court need not reach the question of whether Generac's statements are susceptible to a defamatory meaning because they were privileged. "Good faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty." Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 409-20 (2d Cir.2000). This qualified privilege may only be overcome by a showing of malice on the part of the defendant. See Kaplan v. MacNamara, 497 N.Y.S.2d 710, 711-12 (3rd Dept.1986) ("Because the communications of which plaintiff now complains were in fact made by those who shared both a common interest and duty, they were indeed cloaked with a qualified privilege[,] which cast upon the plaintiff the burden of proving that defendants acted with actual malice." (internal citations omitted)). Under New York law, a manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known ... [and also] has a duty to warn of the danger of unintended uses of a product provided those uses are reasonably foreseeable." Burke v. Spartanics Ltd., 252 F.3d 131, 138 (2d Cir.2001) (quotation omitted). Having inspected the generators at Lee Springs' facility, Generac became concerned about dangers related to their installation and use. As such, it had a duty to warn Lee Springs about its concerns. Lee Springs, as the user of the generators, had a clear interest in being warned of those concerns. Accordingly, the letter is protected by qualified privilege.

As noted, where a qualified privilege exists, plaintiff has the burden of proving actual malice. "Although the existence of malice is usually a question of fact, the issue is one for the jury only if the plaintiff provides evidence warranting such submission." Kaplan, 497 N.Y.S.2d at 712. Conclusory allegations are insufficient to show malice. See Id. UMR has made no allegations, not even conclusory ones, that the statements were made with malice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 6
Not Reported in F.Supp.2d, 2004 WL 2613993 (E.D.N.Y.)
**(Cite as: 2004 WL 2613993 (E.D.N.Y.))**

**CONCLUSION**

Defendants' motion to dismiss is granted. Because UMR has not requested leave to amend, and because it already had an opportunity to replead, the amended complaint is dismissed with prejudice. *See Faulkner v. Verizon Communications, Inc.,* 189 F.Supp.2d 161, 174 (S.D.N.Y.2002) (dismissing amended complaint with prejudice where plaintiffs had not requested leave to amend and had already been allowed an opportunity to replead).

**SO ORDERED.**

**Motions, Pleadings and Filings (Back to top)**

• 1:02cv06205 (Docket) (Nov. 22, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 1999 WL 729267 (E.D.Pa.)
(Cite as: 1999 WL 729267 (E.D.Pa.))

▷
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
In re: WALNUT LEASING COMPANY, INC. and Equipment Leasing Corporation of America, Inc.
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
v.
William SHAPIRO, et al.
No. 99-526.

Sept. 8, 1999.
Barbara W. Mather, Pepper, Hamilton & Scheetz, Phila, PA, for Official Committee on Unsecured Creditors, Plaintiff.

Marc S. Henzel, Law Offices of Marc S. Henzel, Phila, PA, for John Orr, Defendant.

Stuart L. Melnick, Tanner Propp, LLP, New York, NY, for R.F. Lafferty & Co., Inc., Defendant.

David R. Dwares, Ross, Dickson & Bell, L.L.P., Washington, DC, for Cogen Sklar, L.L.P., Defendant.

MEMORANDAM

LUDWIG, J.

*1 All sixteen defendants except one move to dismiss the complaint or, in the alternative, for summary judgment. [FN1] Fed.R.Civ.P. 9(b), 12(b)(1), (6), 56. [FN2] The complaint asserts claims under § 10(b) and Rule 10b-5 of the Securities Exchange Act as well as supplementary state claims for fraud, negligent misrepresentation, mismanagement and breach of fiduciary duty, aiding and abetting, professional malpractice, and breach of contract. [FN3] Jurisdiction is federal question, bankruptcy, and supplemental. 28 U.S.C. §§ 1331, 1334(b), 1367.

> FN1. Three motions were filed: (1) Cogen, Sklar, L.L.P., accountants; (2) R.F. Lafferty & Co., Inc., stock broker and underwriter; and (3) William Shapiro, for himself, Kenneth Shapiro, Deljean Shapiro, Lester Shapiro, Nathan Tatter, Adam Varrenti, Jr., and Philip Bagley, as well as Welco Securities, Inc., the Law Offices of William Shapiro, Esq., P.C., Financial Data, Inc., Walnut Associates, Inc., and Kenner Collection Agency, Inc. (Shapiro Organization). John Orr joins in the motion of William Shapiro. Liss Financial Services, Inc. has not entered an appearance.

> FN2. Challenges to plaintiff's standing to sue are jurisdictional and are considered under Rule 12(b)(1). If standing is contested, plaintiff has the burden "to plead and prove injury in fact, causation, and redressability." E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 985 (11th Cir.1990) (quoting Steele v. Nat'l Firearms Act Branch, 755 F.2d 1410, 1414 (11th Cir.1985)). Under Rule 12(b)(1), as under Rule 12(b)(6), the allegations of the complaint are accepted as true and all reasonable inferences are drawn in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); Weiner v. Quaker Oats Co., 129 F.3d 310, 315 (3d Cir.1997). Because the motions are decided solely on the basis of the complaint, they will not be converted into motions for summary judgment. Fed.R.Civ.P. 12(b), 56.

> FN3. On December 23, 1997, a class action based on negligent misrepresentation was filed against the Shapiros and some other defendants named in this action. Neuberger v. Shapiro, C.A. No. 97-7947. On November 24, 1998, the class was certified. On April 23, 1999, another class action was filed against Summit Bank, the indentured trustee, for breach of contractual and fiduciary duties. Although not formally consolidated, the three actions have been case-managed together.

The motions to dismiss will be granted as to defendants Cogen, Sklar and Lafferty and denied as to the Shapiros and remaining defendants. Both of these rulings are the result of determinations as to plaintiff's standing to sue. Simply stated, accepting plaintiff's theory of actionability, the doctrine of *in pari delicto* bars this suit against Cogen, Sklar and Lafferty. That defense is not available to the other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 2
Not Reported in F.Supp.2d, 1999 WL 729267 (E.D.Pa.)
**(Cite as: 1999 WL 729267 (E.D.Pa.))**

movant defendants.

### I. Background

The predicate of the complaint is that William Shapiro and Kenneth Shapiro, with the assistance of the other defendants, operated Equipment Leasing Company, Inc. (ELCOA) and Walnut Leasing Company, Inc. (Walnut) as a "de facto Ponzi scheme." Compl. ¶ 66. In 1986, Walnut--an equipment leasing company wholly owned by a corporation owned by William Shapiro, *id.* ¶ 12--was experiencing financial difficulty and, as a result, could not sell its debt certificates. *Id.* ¶ 28. Allegedly to secure more capital for Walnut, the Shapiros organized ELCOA "as a limited purpose financing subsidiary"--and, thereafter, ELCOA debt certificates kept Walnut financially afloat. ELCOA was wholly owned by Walnut.

According to the complaint, ELCOA was fraudulently marketed as an independent business entity, although its only function was to acquire leases from Walnut and to sell certificates to raise moneys for the Ponzi scheme. *Id.* ¶ 30. Moreover, ELCOA and Walnut were part of a network of businesses owned and operated by the Shapiros as a collective Shapiro Organization that included defendants Welco, Shapiro, P.C., Walnut Associates, Financial Data, and Kenner Collection Agency. *Id.* ¶ 4. Ultimately, the Shapiros, together with their counsel, auditors, underwriters, and brokers, are alleged to have: "fraudulently mismanaged their Organization, expanding its outstanding debt out of all proportion with its ability to pay, in an attempt to perpetuate its existence and thus protect[ ] their salaries, commissions and fees." *Id.* ¶ 5.

On August 8, 1997, Walnut and ELCOA filed for bankruptcy relief under Chapter 11. On August 21, 1997, plaintiff Official Committee of Unsecured Creditors (the Committee) was appointed by the United States Trustee. On January 19, 1999, Bankruptcy Judge Sigmund approved a stipulation entered into by the debtors and the Committee in which the Committee was authorized to file suit on behalf of the bankrupt debtors. *In re Walnut and ELCOA,* Bankr.no. 97-19699, 97- 19700, order, Jan. 19, 1999.

*2 The complaint avers the fraudulent sale of the debtors' securities and, specifically, the following fraudulent practices:

(1) material misstatements and omissions in Walnut prospectuses dated January 13 and September 14, 1995 and January 13, 1997 regarding the financial position of Walnut and the proposed plan for Walnut's recovery;

(2) material misstatements and omissions in ELCOA prospectuses and financial statements dated from 1991 to 1997 including overstatements of ELCOA's assets, income, and costs;

(3) material misstatements and omissions in Walnut and ELCOA prospectuses since 1986 regarding ELCOA's independence from Walnut and other affiliated Shapiro businesses;

(4) materially misleading sales and renewal practices.

Compl. ¶¶ 71-72.

According to the complaint: Cogen, Sklar knowingly or recklessly issued audit reports that did not fairly represent the debtors' financial positions, *id.* ¶ 73; Lafferty and Liss, as qualified independent underwriters, knowingly or recklessly rendered fairness opinions without undertaking a full due diligence review of the debtors' financial positions, *id.* ¶ 74; the non-Shapiro director defendants violated their fiduciary duty "by negligently failing to properly supervise and oversee the debtors' affairs," *id.* ¶ 96; and the Shapiro Organization defendants acted in concert with William and Kenneth Shapiro, *id.* ¶¶ 20-24.

### II. Standing of the Committee

Article III standing consists of three elements: (1) an injury in fact--actual harm suffered by plaintiff; (2) causation--connection between the injury and defendants' conduct; and (3) redressability-- likelihood that injury will be redeemed by the requested relief. *See* <u>Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, __, 118 S.Ct. 1003, 1016-17, 140 L.Ed.2d 210 (1998)</u>.

In addition to Article III requirements, there are three prudential considerations that will "discourage judicial action despite a party's satisfaction of the constitutional prerequisites ...:(1) assertion of a third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision." <u>E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 985 (11th Cir.1990)</u> (citing <u>Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 474-75,</u>

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

102 S.Ct. 752, 759-60, 70 L.Ed.2d 700 (1982)).

Here, the Committee is suing on behalf of the bankrupt debtor corporations-- not on behalf of the creditors themselves. The injury alleged is that "the debtors were fraudulently induced to register, offer and sell certificates when insolvent and thus without ability to repay their obligations to investors. As a result, the debtors' outstanding debt was continually expanded out of all proportion with their ability to repay, forcing them into bankruptcy." Compl. ¶ ¶ 1, 77. Defendants Cogen, Sklar and Lafferty counter that the Committee, suing on behalf of the debtors, does not have standing to assert these claims because (1) the alleged injury--deepening insolvency--belongs to the creditors and not the debtors; and (2) the Committee, standing in the shoes of the debtors, is barred by the doctrine of *in pari delicto.* [FN4]

> FN4. The Committee has perfected its right to bring suit on behalf of the debtors under § § 1103(c)(5) (Creditors' Committee may "perform such other services as are in the interest of those represented") and 1109(b) ( "a party in interest, including ... a creditors' committee, ... may raise and may appear and be heard on any issue in a case under this chapter"). 11 U.S.C. § § 1103(c)(5), 1109(b). To maintain an action on behalf of the debtors, the Committee must show that (1) the claim is meritorious, (2) the debtor-in-possession has refused to sue, and (3) the Committee has obtained the permission of the court. See *In re STN Enter.,* 779 F.2d 901, 904-06 (2d Cir.1985); *In re Christopher Pilavis,* 233 B.R. 1, 3 (Bankr.D.Mass.1999); *In re Nicolet, Inc.,* 80 B.R. 733, 738-39 (Bankr.E.D.Pa.1988) (Scholl, J.) (collecting cases); *Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein and Co.,* 1992 WL 196768,*1- 2 (E.D.Pa. Aug. 10, 1992) (Pollack, J.). Alternatively, the debtor-in-possession may stipulate to representation by the Creditors' Committee, as occurred here. See *In re Spaulding Composites Co., Inc.,* 207 B.R. 899, 904 (B.A.P. 9th Cir.1997); *Coral Petroleum, Inc. v. Banque Paribas-London,* 797 F.2d 1351, 1362 (5th Cir.1986). Shapiro defendants' argument that notice and opportunity for creditors to challenge the stipulation was required is not pertinent and should have been raised with the Bankruptcy Judge at the time the stipulation was approved. Furthermore, since plaintiff stands in the shoes of the bankrupt debtors, this is not a shareholder derivative action governed by the procedural requirements of Fed.R.Civ.P. 23 .1.

*3 The principle is well-established that a plaintiff must "assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991) (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). In the bankruptcy context, "the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson,* 944 F.2d at 118. [FN5] Plaintiff cannot assert claims on behalf of the bankrupt's creditors. See id.; *In re Jack Greenberg, Inc.,* 212 B.R. 76, 82 (Bankr.E.D.Pa.1997) (citing *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972)).

> FN5. Section 1107(a) of the Bankruptcy Code provides that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). The Committee, suing on behalf of debtors in possession, is in an analogous position to the trustee. See *In re Mediators, Inc.,* 105 F.3d 822, 826 (2d Cir.1997).

Defendants Cogen, Sklar and Lafferty maintain that the alleged Ponzi scheme claims belong exclusively to the creditors, citing *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085 (2d Cir.1995). [FN6] While the most obvious damages were those sustained by creditors who purchased certificates, the possibility of a distinct and separate injury to the debtor corporations cannot be eliminated at this stage. See *In re Plaza Mortg. and Fin. Corp.,* 187 B.R. 37, 41 (N.D.Ga.1995) (denying motion to dismiss trustee's claims against accountants who participated in Ponzi scheme and distinguishing *Hirsch* where only allegation of injury was "unpaid obligations of the debtor to the creditors"). [FN7]

> FN6. "Whether the rights belong to the debtor or the individual creditors is a question of state law." *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995). Without focusing on this issue, the parties agree that Pennsylvania law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

governs.

> FN7. At least four cases have concluded that deepening insolvency is a cognizable injury to corporate debtors. See *Schacht v. Brown,* 711 F.2d 1343, 1348 (7th Cir.1983) (where debtor corporation was fraudulently continued in business past the point of insolvency, liquidator had standing to bring RICO claim); *Hannover Corp. of America v. Beckner,* 211 B.R. 849, 854-55 (M.D.La.1997) ("[A] corporation can suffer injury from fraudulently extended life, dissipation of assets, or increased insolvency."); *Allard v. Arthur Anderson & Co.,* 924 F.Supp. 488, 494 (S.D.N.Y.1996) (as to suit brought by bankruptcy trustee, "[b]ecause courts have permitted recovery under the 'deepening insolvency' theory, [defendant] is not entitled to summary judgment as to whatever portion of the claim for relief represents damages flowing from indebtedness to trade creditors"); *In re Gouiran Holdings, Inc.,* 165 B.R. 104, 107 (E.D.N.Y.1994) (denying motion to dismiss claims brought by creditors committee because it was possible that "under some set of facts two years of negligently prepared financial statements could have been a substantial cause of [the debtor] incurring unmanageable debt and filing for bankruptcy protection").

However, the effects on standing of debtors' *in pari delicto* relationship to defendants are more problematical. "A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Shearson,* 944 F.2d at 120 (dismissing claims of aiding and abetting against broker); *Hirsch,* 72 F.3d at 1094; *see also Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310-11, 105 S.Ct. 2622, 2628, 86 L.Ed.2d 215 (1985) (*in pari delicto* defense may be asserted in Rule 10b-5 action where "(1) as a direct result of [its] own actions, the plaintiff bears at least substantially equal responsibility for the violations [it] seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public"); *Apostolou v. Fisher,* 188 B.R. 958, 969 (N.D.Ill.1995) (trustee cannot assert claim on behalf of the debtors when the debtors have "not sustained injury as [ ] victim[s] of the fraud but [are] injured, if at all, only because [they] participated *in pari delicto* in the fraudulent scheme as [ ] corporate conspirator[s] and [were] the subject[s] of [ ] involuntary bankruptcy petition[s] when the scheme went sour."), *rev'd on other grounds,* 155 F.3d 876 (7th Cir.1998).

*4 To apply this principle here involves imputing the Shapiros' participation in the fraud to the debtors. "[F]raud of an officer of a corporation is imputed to the corporation when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation." *In re Jack Greenberg,* 212 B.R. at 83 (quoting *Rochez Bros. v. Rhoades,* 527 F.2d 880, 884 (3d Cir.1975)). However, under Pennsylvania law, "knowledge of an agent whose interests are adverse to the principal cannot be imputed to the principal." *In re Jack Greenberg,* 212 B.R. at 84 (citation omitted); *cf. In re Mediators,* 105 F.3d 822, 827 (2d Cir.1997) (the adverse interest exception is "a narrow one and applies only when the agent has 'totally abandoned' the principal's interest" (citation omitted)).

Fairly read, the complaint leaves no doubt that the fraud alleged to have been perpetrated by the Shapiros may be imputed to the debtor corporations. William Shapiro is the sole shareholder of defendant Walnut Associates, Inc., which in turn owns debtor Walnut, which owns debtor ELCOA. Compl. ¶ 12. William Shapiro is president and a director of the debtors. Kenneth Shapiro is debtors' vice-president and a director. *Id.* ¶ 13. Defendants Walnut Associates, William Shapiro, P.C., Welco, Financial Data, and Kenner Collection Agency, which are owned by William Shapiro, are alleged to have played a role in the fraudulent certificate offerings. *Id.* ¶¶ 20-24. The debtor corporations are alleged to have been part of the Shapiro Organization--*i.e.,* owned and controlled by the Shapiros. *Id.* ¶¶ 4, 29, 32, 33.

Even if the Shapiros' alleged fraud were considered adverse to the interest of the debtor corporations, [FN8] William Shapiro effectively was the sole shareholder of the debtors companies that he and Kenneth Shapiro operated. Accordingly, the "sole actor" exception should be applied. *See In re Jack Greenberg,* 212 B.R. at 86 (exception recognized in Pennsylvania); *PNC Bank v. Housing Mortg. Corp.,* 899 F.Supp. 1399, 1405-06 (W.D.Pa.1994) (dismissing corporation's claims against accountants because sole shareholders and officers of corporation participated in alleged fraud); *see also In re Mediators,* 105 F.3d at 827 ("[T]he adverse interest exception does not apply to cases in which the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 729267 (E.D.Pa.)
(Cite as: 1999 WL 729267 (E.D.Pa.))

Page 5

principal is a corporation and the agent is its sole shareholder."); *Sender v. Simon,* 84 F.3d 1299, 1307 (10th Cir.1996) ("To the extent [the debtor] was created as a vehicle to further the Ponzi scheme and utilized to give the scheme a veneer of legitimacy, it was in utter complicity with [the sole owner's] fraud ."). [FN9]

>   FN8. "There is a dispute in the case law on whether to evaluate the benefit to the company based on the short term or long term effect of its agent's fraud." *In re Jack Greenberg, Inc.,* 212 B.R. 76, 85 (Bankr.E.D.Pa.1997).

>   FN9. Plaintiff asserts that imputation is improper because some board members did not participate in the fraud but only negligently failed to supervise and oversee the debtors' affairs. Compl. ¶ 96. This argument does not affect the imputation analysis, however, given the allegation "there could never be a majority of disinterested" directors. *Id.* at ¶ 32. The complaint is clear that the Shapiros dominated control of the debtors. *See Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995) ( "General, conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint.").

Moreover, the Committee--analogous to a trustee--does not rise above defenses that are available against the debtor corporations. *See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc .,* 885 F.2d 1149, 1154 and n. 7 (3d Cir.1989) (the property of the estate is defined within 11 U.S.C. § 541(a)(1) as "all legal and equitable interests of the debtor as of the commencement of the case,", which includes causes of action). [FN10] In this sense, "the estate's rights [are] no stronger than they were when actually held by the debtor." *In re Hedged-Investments,* 84 F.3d 1281, 1285 (10th Cir.1996); *see also In re Dublin Sec., Inc.,* 133 F.3d 377, 380 (6th Cir.1997) (*in pari delicto* defense properly asserted against trustee suing attorneys for malpractice in connection with fraudulent stock offerings). [FN11]

>   FN10. A trustee may also "stand[ ] in the overshoes of the creditors" when it brings action under 11 U.S.C. § 544, avoidance actions. *In re Granite Partnership, L.P.,* 194 B.R. 318, 324 (Bankr.S.D.N.Y.1996). This provision is not implicated here. *But see Welt v. Sirmans,* 3 F.Supp.2d 1396, 1403 (under Florida law, negligence claim against the directors of a corporation brought by a trustee in bankruptcy would not be imputed to the trustee).

>   FN11. The Committee is not analogous to a receiver or liquidator, for which reason this case is distinguishable from the cases that hold a receiver is not subject to defenses based on inequitable conduct or unclean hands. *Compare F.D.I.C. v. O'Melveny & Myers,* 61 F.3d 17, 18 (9th Cir.1995) (unclean hands doctrine does not apply to receiver bringing malpractice claim), *with In re Hedged-Inv. Asso., Inc.,* 84 F.3d 1281, 1284 and n. 5 (10th Cir.1996) (drawing distinction from law of receivership and barring trustee's claims arising out of Ponzi scheme).

*5 Since it is pleaded that the debtors, acting through the Shapiros, perpetrated the Ponzi scheme with the assistance of Cogen, Sklar and Lafferty, the doctrine of *in pari delicto,* as encapsulated in *Wagoner,* 944 F.2d at 120, bars plaintiff from suing these defendants for claims arising out of the fraud. In that the six counts against Cogen, Sklar and Lafferty allege "what is essentially 'a single form of wrongdoing under different names'," *see Hirsch,* 72 F.3d at 1092 (citation omitted), the complaint against these defendants will be dismissed. However, *in pari delicto* will not preclude the claims against corporate insiders. *See In re Granite Partners, L.P.,* 194 B.R. 318, 332 (S.D.N.Y.1996). Vis-a-vis their corporations, insiders cannot avoid the consequences of their own handiwork. [FN12]

>   FN12. No reported authority suggests that an officer or director can assert the defense of *in pari delicto* as defenses to the claim brought here on behalf of the debtor corporations.

III. Pleading Requirements of Fed.R.Civ.P. 9(b) and PSLRA

The Shapiro defendants' argument that the federal securities claim has not been pleaded with particularity must be rejected.

Claims based on securities fraud shall be pleaded with particularity under Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA). To satisfy Rule 10b-5, it must be shown that defendants (1) made misstatements or omissions,

(2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which plaintiff relied, and (6) that reliance caused plaintiff's injury. See In re Phillips Petroleum Sec. Lit., 881 F.2d 1236, 1244 (3d Cir.1989). The PSLRA requires plaintiff to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(2). Furthermore, as to scienter, "[i]t is not enough for plaintiffs to allege generally that defendants 'knew or recklessly disregarded each of the false and misleading statements' for which the defendants were sued." In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1422 (3d Cir.1997) (citation omitted). The complaint must aver facts that give rise to a "strong inference" of scienter by either "(1) identify[ing] circumstances indicating conscious or reckless behavior by defendants, or (2) alleg[ing] facts showing both a motive and a clear opportunity for committing the fraud." Id.

Here, the complaint has sufficiently alleged the elements of the securities fraud claim to meet the heightened pleading requirements of Rule 9(b) and the PSLRA. More than a "mere blanket assertion of fraud," id., the complaint sets forth the "who, what, when, where and how" of the alleged Ponzi scheme. Blum v. Semiconductor Packaging Materials, C.A. 97-7078, 1998 WL 254035, at *1 (E.D.Pa. May 5, 1998) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1991)). The allegations outline the structure of the debtor corporations and their relationship to the Shapiros, compl. ¶¶ 28-29; the establishment of ELCOA for the sole purpose of keeping its parent company, Walnut--and the Shapiros--in business, id. ¶¶ 30-31; statements made in specific offering materials intended to obscure ELCOA's relationship to the Shapiro Organization as well as the debtors' true financial condition, id. ¶¶ 38-46; sales practices that encouraged false confidence in the security of the debt certificates and manipulated investors to "rollover" their certificates in order to stall payouts that the debtors could not afford. Id. ¶¶ 34-36.

*6 These allegations also contain the basis for the inference of scienter on the Shapiros' part and go far beyond mere mismanagement. The complaint depicts the opportunity to commit the fraud. William Shapiro was the debtors' sole shareholder, and he and Kenneth Shapiro were the top officers. The motive was to "ensur[e] the continuation of their gainful employment," id. ¶ 52-- and, inferentially, to avoid detection of their unlawful practices. At the least, sufficient circumstantial evidence of the Shapiros' "conscious or reckless behavior" has been asserted to overcome a motion to dismiss. [FN13]

> FN13. The Shapiros' assertion that the complaint does not delineate the role each defendant played in the fraud is not availing. The Shapiros and Nathan Tatter are the only insiders alleged to have furthered the fraudulent scheme. Compl. ¶ 96. The complaint distinguishes their conduct from that of the accountant and underwriters.
> The complaint also adequately sets forth a claim for mismanagement and breach of fiduciary duty against the remaining director defendants. Id. ¶¶ 94-99. "Generally, under the liberal notice pleading practices in federal civil cases, a claimant 'does not have to set out in detail the facts upon which the claim for relief is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim'." Foulk v. Donjon Marine Co., 144 F.3d 252, 256 (3d Cir.1998) (citation omitted). Claims of mismanagement and breach of fiduciary duty are not subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b).

IV. Statute of Limitations

The statute of limitations for a cause of action under § 10(b) of the Securities Act and Rule 10b-5 is one year after discovery and in no event more than three years after the violation occurred. See Lampf, Pleva, Lipkind & Petigrow v. Gilbertson, 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). The Shapiros contend that the federal securities claim is barred by the one-year statute of limitations because plaintiff had constructive notice of the facts underlying the claim as of December 1997--when the Committee's accountant report was issued.

Even if the statute of limitations was triggered as of December 1997, the statute was tolled by Bankruptcy Rule 108(a), which states "[i]f applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period ...; or (2) two years after the order of relief." 11 U.S.C. § 108(a). Debtors filed for bankruptcy on August 8, 1997. Therefore, because the statute of limitations on the Securities Act claim had not yet run, under the § 108 tolling provision, plaintiff had until August 9, 1999 to file this claim. See Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein &

Case 1:05-cv-00072-JJF   Document 58-12   Filed 04/28/2006   Page 13 of 13

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 1999 WL 729267 (E.D.Pa.)
(Cite as: 1999 WL 729267 (E.D.Pa.))

Co., C.A. 91-4919, 1992 WL 196768,*3 and n. 6 (E.D.Pa. Aug. 10, 1992) (because under Chapter 11, a debtor-in-possession has the powers and duties of a trustee, a creditors' committee standing in the shoes of the debtor is acting like a trustee and is entitled to the tolling provision of § 108). For this reason, Count I survives against the Shapiro defendants.

### ORDER

AND NOW, this 8th day of September, 1999, upon motions to dismiss of defendants Cogen, Sklar, L.L.P. ("Cogen"), R.F. Lafferty & Co., Inc., William Shapiro, Kenneth Shapiro, Deljean Shapiro, Lester Shapiro, Nathan Tatter, Adam Varrenti, Jr., John Orr, Philip Bagley, Welco Securities, Inc., the Law Offices of William Shapiro, Esq., P.C., Financial Data, Inc., Walnut Associates, Inc., and Kenner Collection Agency, Inc., the following is ordered:

1. The complaint is dismissed as to defendants Cogen, Sklar and Lafferty.

2. As to the other movant defendants, their motion is denied.

Not Reported in F.Supp.2d, 1999 WL 729267 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.