# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>STUDENT FINANCE CORPORATION,<br><br>        Debtor. | Chapter 7<br><br>Case No. 02-11620 (DDS) |
| CHARLES A. STANZIALE, JR.,<br>Chapter 7 Trustee of Student Finance Corporation,<br>        Plaintiff,<br><br>v.<br><br>MCGLADREY & PULLEN, LLP, and MICHAEL AQUINO,<br>        Defendants. | Adv. Proceeding No. 04-58003<br><br>District Case No. 1:05-cv-00072-JJF |

## BRIEF IN OPPOSITION TO SUPPLEMENTAL MOTION OF McGLADREY & PULLEN LLP AND MICHAEL AQUINO TO DISMISS MALPRACTICE COUNT

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
Donald J. Crecca, Esquire
McElroy, Deutsch, Mulvaney
& Carpenter LLC
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079
(973) 622-7711
(973) 622-5313 (facsimile)

Dated: July 25, 2006

Daniel K. Astin, Esquire (No. 4068)
Ashley B. Stitzer, Esquire (No. 3891)
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 198999
(302) 655-5000
(302) 658-6395 (facsimile)

*Attorney for Plaintiff, Charles A. Stanziale, Jr., Chapter 7 Trustee for Student Finance Corporation*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ...................................................................................1

SUMMARY OF ARGUMENT ........................................................................................................2

ARGUMENT ....................................................................................................................................4

      STANDARD OF REVIEW ..................................................................................................4

      SEITZ DOES NOT PRECLUDE THE TRUSTEE
      FROM SEEKING TRADITIONAL
      PROFESSIONAL MALPRACTICE DAMAGES AS
      ALLEGED IN THE AMENDED COMPLAINT ................................................................6

CONCLUSION ................................................................................................................................14

# TABLE OF AUTHORITIES

Anoka Orthopaedic Associates, P.A. v. Mutschler,
    773 F. Supp. 158 (D. Minn. 1991) .................................................................................. 7,8

Comeau v. Rupp,
    810 F. Supp. 1127 (D. Kan. 1992) ..................................................................................... 7

Curiale v. Peat, Marwick, Mitchell & Co.,
    214 A.D.2d 16 (N.Y. 1995) ................................................................................................ 8

Gaines v. Krawczyk,
    354 F.Supp.2d 573 (W.D.Pa. 2004) .................................................................................... 4

Lien v. McGladrey & Pullen,
    509 N.W.2d 421, 423 (1993) .............................................................................................. 8

Neitzke v. Williams,
    490 U.S. 319 (1989) ........................................................................................................... 4

Official Comm. of Unsecured Creditors v.
    Credit Suisse First Boston (In re Exide Techs., Inc.),
    299 B.R. 732 (Bankr. D. Del. 2003) ................................................................................... 4

Port Auth. v. Arcadian Corp.,
    189 F.3d 305 (3d Cir. 1999) ............................................................................................... 4

Robert Wooler Co. v. The Fidelity Bank,
    330 Pa.Super. 523 (Pa.Super.Ct. 1984) .............................................................................. 8

Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.),
    448 F.3d 672 (3d Cir. 2006) ........................................................... 1,2,3,5,6,7,9,11,12,13

Williams v. State Farm Mutual Auto. Ins. Co.,
    763 F. Supp. 121 (E.D. Pa. 1991) ...................................................................................... 4

Young v. West Coast Industrial Relations Ass'n.,
    763 F. Supp. 64 (D. Del. 1991) .......................................................................................... 4

## OTHER AUTHORITIES

Sabin Willett, *The Shallows of Deepening Insolvency*,
60 Bus. Law. 549 (2005) ......................................................................................................... 6,7

Rule 12(b) of the Federal Rules of Civil Procedure ................................................................. 4

## NATURE AND STAGE OF PROCEEDINGS[1]

Charles A. Stanziale, as Chapter 7 Trustee in Bankruptcy (the "Trustee") for Student Finance Corporation ("SFC"), brought the present action against McGladrey & Pullen LLP and Michael Aquino (collectively, "McGladrey"), on or about December 22, 2004. McGladrey moved to dismiss a number of the counts of the Complaint. By Order and Opinion dated December 20, 2005 (D.I. 42, 43), this Court denied that motion in part and granted it in part. On January 23, 2006, the Trustee filed an Amended Complaint (D.I. 48), adding a count for professional malpractice, as well as two counts alleging fraudulent conveyance. McGladrey filed a second motion to dismiss, this time seeking to dismiss the malpractice count based on the doctrine of *in pari delicto*; that motion is now pending before the Court.

On May 26, 2006, the Third Circuit issued its opinion in Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.), 448 F.3d 672 (3d Cir. 2006) ("Seitz"), addressing the tort of deepening insolvency and related damages. This Court permitted defendants in the consolidated cases to submit motions based on the holding in Seitz, and on July 6, 2006, McGladrey filed a supplemental brief (D.I. 71) in support of its motion to dismiss the malpractice count of the Amended Complaint, based solely on Seitz.

The parties in the consolidated cases are completing documentary discovery and depositions are scheduled to begin on August 20, 2006.

---

[1] The relevant facts in this case were fully set forth in the Trustee's prior briefs submitted in opposition to McGladrey's motions to dismiss (D.I. 14, 57), and are not set out separately in this brief.

## **SUMMARY OF THE ARGUMENT**

By its supplemental motion to dismiss, McGladrey asks this Court to extend the holding of the Third Circuit in <u>Seitz</u>, by arguing that <u>Seitz</u> requires the dismissal of any malpractice claim in which the harm alleged includes an impact, however incidental, on the solvency of the plaintiff. In so arguing, McGladrey misreads <u>Seitz</u> and mischaracterizes the allegations of the Amended Complaint.

The <u>Seitz</u> Court addressed the harm resulting purely from deepening insolvency of a debtor company, and declined to find injury when, as in <u>Seitz</u>, no other harm was alleged. When, however, damages traditionally associated with tort claims are alleged, the fact that the harm also impacts insolvency is inconsequential. Thus, the Court expressly recognized that when a party alleges harm in the form of increased liabilities, reduced asset value, or lost profits, the claim could proceed. The Third Circuit discounted any "incidental" impact on deepening insolvency when these other traditional damages are present. McGladrey now asks this Court to do exactly what the Third Circuit in <u>Seitz</u> indicates it should not do: evaluate a claim for damages based on the potential effect on the company's solvency, ignoring the fact that these are traditional damages which can be recovered regardless of their effect on solvency.

McGladrey then asks this Court to also find, on the pleadings alone, that the Trustee has not alleged, and cannot prove, damages other than those arising from the increased insolvency of SFC. This is not so. Throughout the Amended Complaint, the Trustee alleges harm of the type specifically recognized in <u>Seitz</u>, flowing from McGladrey's actions. Nothing in the supplemental motion states a basis for precluding the Trustee from pursuing those damages.

2

Because the <u>Seitz</u> opinion does not support a dismissal of the malpractice claim, the supplemental motion to dismiss should be rejected.

Case 1:05-cv-00072-JJF   Document 73   Filed 07/25/2006   Page 6 of 17

## **ARGUMENT**

## **STANDARD OF REVIEW**

In deciding a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Gaines v. Krawczyk, 354 F.Supp.2d 573, 576 (W.D.Pa. 2004); Neitzke v. Williams, 490 U.S. 319, 326 (1989). "The court must determine if plaintiff may be entitled to relief under any reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Port Auth. v. Arcadian Corp., 189 F.3d 305, 310 (3d Cir. 1999); see also Williams v. State Farm Mutual Auto. Ins. Co., 763 F. Supp. 121, 123 (E.D. Pa. 1991) ("[T]he complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved.").

The party seeking dismissal bears the burden of establishing that the plaintiff has failed to state a claim. Young v. West Coast Industrial Relations Ass'n., 763 F. Supp. 64, 67 (D. Del. 1991). Accordingly, "a plaintiff is not required to plead in the complaint all requirements for a claim as well as contemplate and plead in anticipation of all affirmative defenses that may lie against such claim." Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.), 299 B.R. 732, 752 (Bankr. D. Del. 2003).

Thus, McGladrey must prove, on the face of the Amended Complaint, that under any set of facts that could be proven consistent with the allegations of the Amended Complaint, the Trustee has not pled potential damages to SFC other than those incidental damages amounting to deepening insolvency. In support of its supplemental motion, McGladrey relies exclusively on Seitz and claims its holding requires this Court to dismiss the malpractice claim. Although the Court in Seitz refused to extend damages for malpractice to those arising exclusively under the tort of deepening insolvency, it expressly declined to disrupt the traditional damages allowed for a malpractice claim. These damages are pled here, and the Trustee should be entitled to pursue them.

**SEITZ DOES NOT PRECLUDE THE TRUSTEE
FROM SEEKING TRADITIONAL PROFESSIONAL
MALPRACTICE DAMAGES AS ALLEGED IN THE
AMENDED COMPLAINT**

The Third Circuit's opinion in Seitz does not provide a basis to dismiss the Trustee's malpractice claim against McGladrey. While Seitz clearly rejects damages based solely on deepening insolvency for a negligence claim, the Third Circuit made clear that it did not intend to affect the traditional measures of damages available in a malpractice case. Accordingly, McGladrey's supplemental motion to dismiss based on Seitz should be rejected.

In Seitz, an action by a bankruptcy trustee against the debtor's accounting firm, the Court considered the tort of deepening insolvency. In discussing damages based solely on deepening insolvency, the Court declined to recognize such damages on a standalone basis, but then expressly recognized that its ruling did not impact those traditional theories of damages typically alleged in tort actions:

> [T]he deepening of a firm's insolvency is not an independent form of corporate damage. **Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation.**

Id. at *13 quoting Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549, 575 (2005) (emphasis added). As explained in the article relied upon by the Third Circuit in the context of deepening insolvency injury:

> . . . injury to solvency is an incident to the harm, not the harm itself. If the debtor lost asset value through defendant's conversion of property, the law measures

6

> damage; if through breach of contract, commission of tort, breach of fiduciary duty, or fraudulent transfer, the law already measures damage. The damages may include the insult to asset values . . . or the accumulation of a liability (breach of fiduciary duty of care). Depending on the underlying law, the damage may or may not also include lost profits (a measure of damage that captures the economic injury to an operating business because of its reduced liquidity). Solvency analysis will be incidental to all of these damage analyses. It may so happen that the diminished asset value, new liability, or lost profits that measures the damage also measures precisely the deepening of the firm's insolvency. The point is that insolvency analysis adds nothing to the measure of damages the law already allows.

Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law at 572.

The Seitz Court was cognizant of the traditional theories of damages arising in malpractice actions and was careful not to disturb them. Accordingly, a party raising a malpractice claim may seek damages for "the increase in liabilities, the decrease in fair asset value, or its lost profits." Id. Whether those damages have any "incidental impact" upon the solvency or insolvency of the party is irrelevant. Id. Consequently, the Seitz decision has no impact on a claim for traditional damages resulting from legal malpractice. Contrary to McGladrey's assertion, the fact that negligent conduct could have an incidental effect on a company's eventual insolvency does not swallow up all damages.

In professional malpractice actions, the measure of damages is typically the amount of damages actually caused by the defendant's negligence. See, e.g., Anoka Orthopaedic Associates, P.A. v. Mutschler, 773 F. Supp. 158, 171 (D. Minn. 1991) (lost profits and lost investment income are proper measures of damage); Comeau v. Rupp, 810 F. Supp. 1127 (D. Kan. 1992) (recognizing loss causation as measure of damage in

7

FDIC malpractice action against accountants). As the court found in <u>Anoka Orthopaedic Associates, P.A. v. Mutschler</u>, 773 F.Supp. at 171:

> [I]n a professional malpractice action, the proper measure of damages is the amount of damages proximately caused by the defendant's negligence. Plaintiffs contend that they lost between $700,000 and $900,000 of investment income on funds that would have been invested in the Plans but for defendants' negligent failure to audit the Plans. They also claim that lost investment income is readily ascertainable and will be demonstrated by expert testimony. The Court finds that damages for lost investment income are akin to those permitted for lost profits. It further finds that such damages are readily ascertainable by computation and reference to generally recognized standards and that a jury could find that the losses were proximately caused by a negligent failure to audit the Plans. Accordingly, the court concludes that lost investment income, if proven, is a proper element of plaintiffs' compensatory damages …

When an accounting firm is negligent in its assessment of a company, and the company relies on that assessment to its detriment, the company is entitled to recover damages measured by the lost assets caused by the negligence. <u>Robert Wooler Co. v. The Fidelity Bank</u>, 330 Pa.Super. 523, 535 (Pa.Super.Ct. 1984) (after accounting professional conducting audit failed to detect forgeries, court held that it "can be made to respond in damages if its negligence was a substantial factor in bringing about [plaintiff's] loss by employee defalcations.").

Damages may also be measured in terms of increased liabilities arising from the accounting malpractice, <u>Lien v. McGladrey & Pullen</u>, 509 N.W.2d 421, 423 (1993) (increased tax liability resulting from negligent advice), or by expenses generated by delay caused by the malpractice. <u>Curiale v. Peat, Marwick, Mitchell & Co.</u>, 214 A.D.2d 16 (N.Y. 1995) (where reliance on misrepresentations in audit caused delays, portion of damages was based on management fees accruing during delay period). Accordingly, the

damages available to a plaintiff in an accounting malpractice action are not limited to those arising from deepening insolvency.

Furthermore, McGladrey errs in contending that the Trustee's sole theory of damage on the malpractice count is deepening insolvency. This narrow reading of the Amended Complaint ignores the reality that general malpractice damages are asserted throughout. The Trustee's right to seek these damages against McGladrey is not in any way diminished by the holding in Seitz.

As alleged in the Amended Complaint, McGladrey failed to meet the duty of care incumbent upon accountants providing representation and audited financial statements to a corporate client:

> 112. Upon information and belief on an ongoing and continuing basis, defendants breached their contractual obligations to SFC and standard of care that reasonable accountants would have exercised under the circumstances and failing to *inter alia*:
>
> (a) advise SFC regarding its obligations in approaching and eventual insolvency;
>
> (b) advising SFC regarding the requirements to proper disclosures to be made in the MSRs;
>
> (c) perform adequate and due diligence in preparation of the MSRs;
>
> (d) perform adequate and due diligence and meet the standard of care in the preparation of audited financial statements; and
>
> (e) the defendants' actions and omissions with regard to SFC's use of Forbearance Payments, camouflaging default rate information and misrepresentation in MSRs as described above also fell below the standard of care owed to SFC and constituted a breach of the duties of the

>   defendants in the accounting services rendered to
>   the debtor corporation.

As alleged in the Amended Complaint, McGladrey's negligence was a critical component of the Ponzi scheme, without which the scheme would not have been successful. McGladrey failed in its duty as a professional auditor to maintain independence and exercise a heightened duty of care in preparing its audit reports. "The SFC financial statements, as the Aquino team recognized three years earlier in 1998, distorted the delinquency and default rates of the SFC program by not clearly accounting for or disclosing the Ponzi-like nature of the payments SFC was making to cover borrower defaults and of which McGladrey was fully aware." Amended Complaint, ¶ 57. McGladrey failed to disclose that SFC was making "forbearance payments" on the loans to mask the default rates.

Absent McGladrey's failure to perform its duty to SFC, the scheme would have collapsed. McGladrey, a seasoned accounting firm with a heightened duty of care, had a responsibility to SFC to act independently in presenting audited financial statements. McGladrey's negligent conduct resulted in damages not only to the eventual bankruptcy creditors, but to SFC itself. As a proximate result of McGladrey's negligence, SFC ultimately lost significant assets. For example, SFC allotted $15 million toward "forbearance payments" with the assistance of McGladrey. Amended Complaint ¶ 70. The misrepresentations also induced creditors to extend further credit to SFC, which increased its liabilities and impacted its balance sheet. As alleged by the Trustee, "[t]hese breaches of professional duties directly caused and resulted in the collapse of SFC, the filing of proofs of claim in excess of $500 million against the Estate and the payment of

$2,288,000.00 in fraudulent transfers to the defendants in the period from June 6, 1998 through June 5, 2002." ¶ 113.

Thus, in the malpractice count, the Trustee asserts that

> 117.   As a direct and proximate and foreseeable result of the foregoing acts and omissions SFC was ultimately driven into insolvency and operated well beyond the point of insolvency and resulting in SFC's bankruptcy.
>
> 118.   As a direct and proximate and foreseeable result of the aforegoing acts and omissions, **SFC and its creditors were injured and the collapse of debtor's business and loss of property, assets that would have otherwise available to SFC and its creditors**.
>
> WHEREFORE, Defendants are liable for damages in an amount to be determined at trial together with interests, costs, attorneys' fees and such other legal fees and equitable relief as the Court deems appropriate.

(emphasis added).  While paragraph 117 alleges harm related to driving SFC into insolvency, paragraph 118 clearly seeks damages for the broader harm, the injury to SFC and its creditors, including the loss of property and assets that would otherwise have been available.  For example, during this period, millions of dollars of SFC funds were taken by or diverted to the use of Andrew Yao.  As explained in Seitz, it is irrelevant that these same damages also may have led to increased insolvency.  The *ad damnum* seeks relief for malpractice in the broadest possible terms and includes far more than just deepening insolvency damages.

Furthermore, Seitz is not directly on point with the facts of the present case.  In fact, the distinctions outweigh the similarities: in Seitz, the defendant accounting firm had been retained simply to perform a compilation, not an audit.  The Seitz Court went to some length in discussing the difference, noting that the duty of an accounting firm in

11

compiling rather than auditing the records is significantly reduced. See Seitz at 5-6 n. 3 ("An audit gives the greatest assurance, as accountants performing one must verify the financial statements."). In the present case, McGladrey performed an audit of SFC's financial status, and must therefore be viewed in the more stringent light described by the Court in Seitz.

In addition, the Seitz case was before the Court on a motion for summary judgment, not on a motion to dismiss. The parties had had the opportunity to conduct discovery and engage in expert disclosures and were not constrained to respond on the pleadings alone. Even so, the trustee in Seitz failed to put forward valid proofs of injury. The Court was clearly troubled by the fact that the only purported evidence of damage submitted by the plaintiff was what the Court found to be a "sham" affidavit, id. at 16-18; accordingly, the plaintiff had not met its burden of showing it had suffered traditional damages as a result of the alleged malpractice.

Conversely, in the case presently before this Court, the Trustee is entitled to establish that malpractice damages do in fact exist. This is particularly true at this early stage of the proceedings, where the parties have yet to commence deposition discovery. The Trustee is not restricted by Seitz in his ability to demonstrate malpractice damages arising from the loss of assets or increase in liabilities to SFC based on, among other things, increasing SFC's indebtedness (Amended Complaint ¶34), causing loss of property (Id. ¶118), masking forbearance payments by SFC (Id. ¶62), and certifying to false and misleading audit reports. Id. ¶89. All of these allegations are included or incorporated in the malpractice claim. See first paragraph of Count VI ("Paragraphs 1 through 110 are incorporated by reference as if set forth in full herein.")

Thus, it is clear from the face of the Amended Complaint that the Trustee seeks damages traditionally awarded in a malpractice action. Nothing in the <u>Seitz</u> opinion suggests that these traditional damages are precluded. McGladrey's claim that the Trustee has only pleaded insolvency damages is incorrect and its motion to dismiss Count VI should be denied.

## **CONCLUSION**

For the reasons set forth above, plaintiff Charles A. Stanziale, Jr., as Trustee in Bankruptcy for Student Finance Corporation, respectfully requests that this Court deny the motion of defendants McGladrey & Pullen LLP and Michael Aquino to dismiss Count VI of the Amended Complaint.

Dated: July 25, 2006

                                                  Respectfully submitted,

                                                THE BAYARD FIRM

                                                _/s/_____
                                                Daniel K. Astin (No. 4068)
                                                Ashley B. Stitzer, Esquire (No. 3891)
                                                222 Delaware Avenue, Suite 900
                                                P.O. Box 25130
                                                Wilmington, DE 198999
                                                (302) 655-5000
                                                (302) 658-6395 (facsimile)

                                                and

                                                Michael S. Waters, Esquire
                                                Lois H. Goodman, Esquire
                                                Donald J. Crecca, Esquire
                                                McElroy, Deutsch, Mulvaney
                                                & Carpenter LLC
                                                Three Gateway Center
                                                100 Mulberry Street
                                                Newark, NJ 07102-4079
                                                (973) 622-7711
                                                (973) 622-5313 (facsimile)

                                                Attorney for Plaintiff, Charles A.
                                                Stanziale, Jr., Chapter 7 Trustee for
                                                Student Finance Corporation