IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>STUDENT FINANCE CORPORATION,<br><br>                    Debtor. | Chapter 7<br><br>Case No. 02-11620 (DDS) |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>                    Plaintiff,<br><br>               v.<br><br>McGLADREY & PULLEN, LLP and<br>MICHAEL AQUINO,<br><br>                    Defendants. | Adversary Proceeding No. 04-58003<br><br>District Court Case No. 1:05-cv-00072-JJF |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SUPPLEMENTAL
MOTION TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT IN PART**

DUANE MORRIS LLP
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Phone: 302-657-4951
Fax: 302-657-4901

| | |
|---|---|
| ARNOLD & PORTER LLP<br>Veronica E. Rendon<br>Jason M. Butler<br>Glynn Spelliscy<br>399 Park Avenue<br>New York, NY 10022<br>Phone: 212-715-1000<br>Fax: 212-715-1399<br>Attorneys for McGladrey & Pullen, LLP<br>and Michael Aquino | WILLIAMS & CONNOLLY LLP<br>Steven M. Farina<br>Thomas H.L. Selby<br>Amber M. Mettler<br>725 12th Street, N.W.<br>Washington, D.C. 20005<br>Phone: 202-434-5000<br>Fax: 202-434-5029<br>Attorneys for Defendant McGladrey &<br>Pullen, LLP |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    THE TRUSTEE HAS FAILED TO ALLEGE ANY DAMAGES OUTSIDE OF DEEPENING INSOLVENCY AND HIS PROFESSIONAL MALPRACTICE ACTION SHOULD BE DISMISSED ................................................................................................. 2

CONCLUSION .............................................................................................................................. 7

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anoka Orthopaedic Associates, P.A. v. Mutschler,*
    773 F.Supp. 158(D. Minn. 1991)............................................................................2,6

*Bald Eagle Area School District v. Keystone Financial, Inc.,*
    189 F.3d 321(3d Cir. 1999).....................................................................................3,4

*In re C.F. Foods,*
    280 B.R. 103 (E.D. Pa. 2002) ...................................................................................4

*In re Finance Federated Title & Trust,*
    309 F.3d 1325 (11th Cir. 2002) .................................................................................4

*In re Independent Clearing House Co.,*
    77 B.R. 843 (N.D. Utah 1987)..................................................................................4

*Marion v. Benistar,*
    2005 WL 563698 (E.D. Pa. Mar. 10, 2005).............................................................4

*In re Ramirez Rodriguez,*
    209 B.R. 424 (S.D. Tex 1997) .................................................................................4

*Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.),*
    448 F.3d 672 (3d Cir. 2006)...................................................................................1,5

*Stanziale v. McGladrey & Pullen LLP,*
    334 B.R. 776 (D. Del. 2005).....................................................................................4

*In re Taubman,*
    160 B.R. 964 (S.D. Ohio 1993) ...............................................................................4

*Warfield v. Byron,*
    436 F.3d 551 (5th Cir. 2006) ....................................................................................4

**STATE CASES**

*Curiale v. Peat, Marwick, Mitchell & Co.,*
    214 A.D.2d 16 (1st Dep't 1995)..............................................................................2,6

*Lien v. McGladrey & Pullen,*
    509 N.W.2d 421 (S.D. 1993)..................................................................................2,6

*Robert Wooler Co. v. Fidelity Bank,*
   330 Pa.Super. 523 (Pa. Super. Ct. 1984) .................................................................2, 5, 6

**OTHER AUTHORITIES**
Sabin Willett, *The Shallows of Deepening Insolvency,*
   60 Bus.Law. 549 (2005)..........................................................................................2, 3

Defendants McGladrey & Pullen ("McGladrey") and Michael Aquino ("Aquino") submit, by leave of the court, this reply memorandum in further support of their supplemental motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss in part the amended complaint ("Amended Complaint") of Charles A. Stanziale, Jr., the Chapter 7 Trustee (the "Trustee") of Student Finance Corporation ("SFC").

## PRELIMINARY STATEMENT

As conceded by the Trustee, in *Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.)*, 448 F.3d 672 (3d Cir. 2006), the Third Circuit held that a bankruptcy trustee cannot seek damages for the "deepening insolvency" of the debtor under a professional malpractice claim. Since "deepening insolvency" damages are the sole type of damages sought by the Trustee under his professional malpractice claim, the claim must be dismissed.

Both in his opposition brief as well as his Amended Complaint, the Trustee is unable to articulate a traditional theory of out-of-pocket damages in connection with his professional malpractice claim. Indeed, it is not until page ten of his fourteen page opposition brief that the Trustee even attempts to do so, and the list of items the Trustee sets forth only includes deepening insolvency damages artfully described in alternative language. Try as he might to mask the fact, the only damages sought by the Trustee against McGladrey and Aquino are based solely on a deepening insolvency theory. As set forth in his Amended Complaint, the Trustee's basic theory against McGladrey and Aquino is that: "In certifying various SFC financial reports ... McGladrey played a knowing, calculated and direct role in perpetuating the SFC Ponzi scheme and in assisting SFC's officers and directors to defraud SFC's creditors and to deepen SFC's insolvency while delaying the inevitable bankruptcy filing." (Am. Compl.

¶ 6) The Third Circuit's decision in *Seitz* is directly on point and requires dismissal of the Trustee's professional malpractice action.[1]

## ARGUMENT

### THE TRUSTEE HAS FAILED TO ALLEGE ANY DAMAGES OUTSIDE OF DEEPENING INSOLVENCY AND HIS PROFESSIONAL MALPRACTICE ACTION SHOULD BE DISMISSED

The Trustee concedes that "*Seitz* clearly rejects damages based solely on deepening insolvency for a negligence claim." Tr. Opp. Br. at 6. In an attempt to escape the consequence of this admission, the Trustee spends much of his opposition brief setting forth the uncontroversial proposition that *Seitz* "did not impact those traditional theories of damages typically alleged in tort actions ...." The Trustee goes on to cite to accounting malpractice cases for the further uncontroversial proposition that such cases can, in certain circumstances, result in damages to an operating company for lost investment income, lost assets, increased liabilities or expenses generated by delay. *Id.* at 8 (citing *Anoka Orthopaedic Associates, P.A. v. Mutschler*, 773 F.Supp. 158 (D. Minn. 1991); *Robert Wooler Co. v. Fidelity Bank*, 330 Pa. Super. 523 (Pa. Sup. Ct. 1984); *Lien v. McGladrey & Pullen*, 509 N.W.2d 421 (S.D. 1993); and *Curiale v. Peat, Marwick, Mitchell & Co.*, 214 A.D.2d 16 (1st Dep't 1995)). What the Trustee cannot escape, however, is that he has failed to allege any such damages in his Amended Complaint against McGladrey and Aquino.[2]

The Trustee's claim against McGladrey and Aquino is classic deepening insolvency. As stated in *The Shallows of Deepening Insolvency*, the article relied upon by the *Seitz* Court that is also quoted by the Trustee in his opposition brief:

> The essence of the deepening insolvency complaint is that the defendant 'wrongfully' prolonged life, or worse, participated in a scheme to cover up the debtor's true financial condition during the period when

---

[1] The Trustee also claims as items of purported damage the payment of professional fees "in fraudulent transfers." Am. Compl. ¶ 113. These purported damages are, however, covered by the bankruptcy claims set forth in the Amended Complaint, and are not at issue in this motion.

[2] In his lawsuit against the Pepper Hamilton defendants, the Trustee alleges loss as a result of loans made by the Gagne family to SFC. Neither McGladrey nor Aquino are alleged to have had any role in such loans, nor are they charged with any purported damages associated with those loans.

> insolvency deepened. In effect, the factual claim is that the defendant acted to wrongfully improve the debtor's reputation, whether through lies outright, as in *R.F. Lafferty*, or through distressed borrowing, as in *Exide* and *Global Service Group*....

Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law 549, 565-66 (2005).[3]

That is exactly what the Trustee alleges here. According to the Trustee, SFC operated as a "Ponzi-like scheme" (Am. Compl. ¶¶ 2, 3), which fraudulently promoted an allegedly false student default rate, which, when combined with "legitimate seeming financial reports" issued by McGladrey and Aquino "were the bait SFC used to lure unsuspecting creditors and investors to the scheme." *Id.* at ¶4. As discussed above, the Trustee further alleges that, "In certifying various SFC financial reports ... McGladrey played a knowing, calculated and direct role in perpetuating the SFC Ponzi scheme and in assisting SFC's officers and directors to defraud SFC's creditors and to deepen SFC's insolvency while delaying the inevitable bankruptcy filing." (Am. Compl. at ¶ 6) *See also, e.g., id.* ¶ 34 ("McGladrey, by providing the necessary assistance in maintaining the appearance of SFC as a healthy, going concern ... aided and abetted SFC's officers' and directors' inducement of investors and other creditors to continue to do business with SFC and thus increased its indebtedness and damage to SFC's creditors"); ¶ 78 ("McGladrey's misleading Audit Report offered SFC's officers and directors the ability to sustain SFC as a going concern for approximately another year while SFC deepened its insolvency"); ¶ 117 ("As a direct and proximate and foreseeable result of the foregoing acts and omissions SFC was ultimately driven into insolvency and operated well beyond the point of insolvency and resulting in SFC's bankruptcy").

The fundamental problem underlying the Trustee's professional malpractice claim is that he raises it on behalf of an alleged "Ponzi" scheme which, by definition, is insolvent as a matter of law. *See Bald Eagle Area School District v. Keystone Financial, Inc.*, 189 F.3d 321, 324 (3d Cir. 1999) ("'Ponzi' is a term generally used to describe an investment scheme which is not really supported by any

---

[3] The portion of the article cited by the Trustee in support of his argument that damages can result from an increase in liabilities or a decrease in fair value relates to a discussion of "operating" companies that are not yet insolvent, as compared to insolvent "Ponzi-like" schemes, and is thus beside the point. Tr. Opp. Brief at 6-7; quoting *The Shallows of Deepening Insolvency, supra*, at 549.

underlying business venture."); *Marion v. Benistar*, 2005 WL 563698, at *1 (E.D. Pa. Mar. 10, 2005); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *In re Taubman*, 160 B.R. 964 (S.D. Ohio 1993). *See also In re C.F. Foods*, 280 B.R. 103 (E.D. Pa 2002) (holding that when a debtor's business was a Ponzi scheme, charitable transfers could be voided under §548(a)(1)(B) of the Bankruptcy Code because the debtor had incurred debts beyond his ability to pay them as they became due); *In re Fin. Federated Title & Trust*, 309 F.3d 1325, 1332 (11th Cir. 2002); *In re Ramirez Rodriguez*, 209 B.R. 424, 430-431, (S.D. Tex. 1997); *In re Indep. Clearing House Co.*, 77 B.R. 843, 871 (N.D. Utah 1987). Any alleged act that purportedly increases the Ponzi scheme's liabilities, decreases its assets or causes a loss of property, as alleged by the Trustee as well as the bankruptcy trustee in *Seitz*, will only act to deepen the Ponzi scheme's insolvency. It is this problem that the Trustee cannot escape.

In his opposition brief, the Trustee attempts to salvage his professional malpractice claim by arguing that SFC suffered two purportedly "traditional" types of damages resulting from the alleged professional malpractice:

- SFC "ultimately lost significant assets" such as a purported $15 million in forbearance payments. Tr. Opp. Brief at 10; and

- creditors extended "further credit to SFC, which increased its liabilities and impacted its balance sheet," and "resulted in the collapse of SFC, [and] the filing of proofs of claim in excess of $500 million against the Estate ...." *Id. See also id.* at 11.[4]

Such damages, however, are merely a re-characterization of the deepening insolvency damages set forth in his Amended Complaint. For instance, the Company allegedly made the $15 million in forbearance payments in furtherance of the purported "Ponzi-like scheme" discussed above, and thus are part and parcel of the Trustee's deepening insolvency theory. Similarly, the extension of credit to SFC by the allegedly "unsuspecting" creditors which purportedly caused SFC to collapse and the filing of proofs

---

[4] In his opposition, the Trustee attempts to bolster his claim for damages by repeatedly including SFC's creditors as a group who were allegedly harmed by McGladrey's and Aquino's purported negligence. For instance, the Trustee claims that "SFC and its creditors were injured," by the loss of "assets that would have otherwise [been] available to SFC and its creditors." Tr. Opp. at 11. Such statements should be disregarded. This Court has already ruled that the Trustee does not have standing to assert claims for damages on behalf of SFC's creditors. *See Stanziale v. McGladrey & Pullen LLP*, 334 B.R. 776, 779 (D. Del. 2005).

of claim are nothing more than the same items of damage underlying the Trustee's deepening insolvency theory, and do not constitute traditional malpractice damages that can support his professional malpractice claim.

Indeed, it was exactly these types of damages that were alleged in *Seitz*, and which were rejected by the Third Circuit. *Seitz*, 448 F.3d at 677. As discussed in McGladrey's and Aquino's opening brief, *Seitz* involved an accounting malpractice action brought by the bankruptcy trustee of "an insolvent internet company involved in an illegal Ponzi scheme" in which the trustee claimed that the alleged malpractice enabled the debtor to raise capital from third parties and incur more debt which "deepened the insolvency" of the debtor. *Id.* The Third Circuit ruled that such damages were based on a deepening insolvency theory and could not support the professional malpractice action. *Id.* The same result should occur here.[5]

The cases cited by the Trustee as exemplifying types of recoverable accounting malpractice damages are inapposite, and present a good counterpoint to the Trustee's Amended Complaint and *Seitz*. Not one of the cases cited by the Trustee involved a purported "Ponzi-like scheme," or allegations of accounting malfeasance by virtue of issuing "legitimate seeming financial reports" that "were the bait ... used to lure unsuspecting creditors and investors to the scheme," which ultimately "deepen[ed] [the companies'] insolvency while delaying the inevitable bankruptcy filing." (Am. Compl., *supra.* 3

Rather, the cases cited by the Trustee involve facts and circumstances entirely distinguishable from this matter and are entirely irrelevant. *See Robert Wooler Co.*, 330 Pa. Super. at 428-29 (bank claimed accountants harmed its business by failing to detect that one of its customer's bookkeepers was

---

[5] The Trustee's few attempts to distinguish *Seitz* are unpersuasive and should be rejected. First, it is of no import that *Seitz* involved a compilation rather than an audit of the company's financial statements. While the *Seitz* court took note of this fact, the Court did not factor the distinction into the holding of the case. Additionally, the Trustee undermines his own argument by citing to *Wooler* and *Lien*, which involved, respectively, an unaudited accounting engagement and a tax engagement. Additionally, while *Seitz* involved a motion for summary judgment as compared to a motion to dismiss, the Trustee does not and cannot point to any discovery that would cure the defect in his professional malpractice action or the manner in which he has alleged damages. This is a classic scenario where the Trustee is not entitled to relief under any reasonable reading of the pleadings, even assuming the truth of all the factual allegations in his Amended Complaint.

diverting checks with forged corporate endorsements into her personal account at the bank); *Lien*, 509 N.W.2d at 422-23 (owner of a construction corporation claimed accountants provided faulty tax advice in advising him to redeem preferred shares in his construction company in exchange for canceling his personal debt to the corporation); *Curiale*, 215 A.D.2d at 25 (New York Insurance Department alleged accountants' purported malpractice caused a delay which entitled it to a portion of the excess management fees that were incurred; *Anoka*, 773 F.Supp. at 171 (professional association, its employee benefits plans and three shareholders claimed damages under Minnesota law for lost investment income allegedly caused by accountants' alleged negligence in auditing benefit plans). These cases have no bearing on the Trustee's theory of damages and should be disregarded.

Moreover, the Trustee fails to address the secondary basis for dismissal in *Seitz*, which was discussed in McGladrey's and Aquino's opening brief and which also applies here. Specifically, even assuming that the audited financial statements issued by McGladrey allowed SFC to raise money from investors as alleged by the Trustee, that did not deepen SFC's insolvency, it *lessened* it. The fact that SFC's management purportedly took wrongful actions with the money it obtained from the investors, is not something for which McGladrey and Aquino may be held responsible. As stated by the Third Circuit in *Seitz*:

> The crux, then, is the claim that the $1,000,000 equity investment allowed CitX to exist long enough for its management to incur millions more in debt. But that looks at the issue through hindsight bias. As noted, the equity investment was hardly harmful to CitX. Its management surely misused the opportunity created by that investment; that was unfortunate. But they could have instead used that opportunity to turn the company around and transform it into a profitable business. They did not, and therein lies the harm to CitX.

*Id.* at 677-78. For this separate and independent reason, the Trustee's professional malpractice claim should be dismissed.

## CONCLUSION

For the reasons set forth above, and in McGladrey's and Aquino's Supplemental Memorandum of Law in Further Support of Motion to Dismiss the Trustee's Amended Complaint in Part, as well as in McGladrey's and Aquino's original motion to Dismiss the Trustee's Amended Complaint In Part, the Trustee's professional malpractice claim should be dismissed with prejudice.

Dated: August 8, 2006

                      DUANE MORRIS LLP

By: _____
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Phone: 302-657-4951
Fax: 302-657-4901

-and-

| ARNOLD & PORTER LLP | WILLIAMS & CONNOLLY LLP |
|---|---|
| Veronica E. Rendon | Steven M. Farina |
| Jason M. Butler | Thomas H.L. Selby |
| Glynn Spelliscy | Amber M. Mettler |
| 399 Park Avenue | 725 12th Street, N.W. |
| New York, NY 10022 | Washington, D.C. 20005 |
| Phone: 212-715-1000 | Phone: 202-434-5000 |
| Fax: 212-715-1399 | Fax: 202-434-5029 |
| | |
| Attorneys for McGladrey & Pullen, LLP and Michael Aquino | Counsel for Defendant McGladrey & Pullen, LLP |