# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

MBIA INSURANCE CORPORATION, et al.

## SUBPOENA IN A CIVIL CASE

V.

CASE NUMBER: [1]   02-1294-JJF (D. Del)

ROYAL INDEMNITY COMPANY

TO:   Joseph Domal
320 Sylvan St.
Rutherford, NJ 07070

YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Proskauer Rose<br>1585 Broadway<br>New York, NY 10036-8299 | 10/24/2006, 9:00 a.m.<br>10/25/2006, 9:00 a.m. |

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See attached schedule of documents.**

| PLACE | DATE AND TIME |
|---|---|
| Proskauer Rose<br>c/o Andre Castaybert, Esq.<br>1585 Broadway<br>New York, NY 10036-8299 | 10/4/2006, 1:00 p.m. |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 9/18/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

John W. Shaw
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
(302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

ATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
   (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.
(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule of Documents for Joseph Domal Subpoena

### Definitions

1.    "Document" is intended to be given the broadest possible scope and includes any written, recorded or graphic matter, or any other means of preserving thought or expression, including all non-identical copies, drafts, worksheets, work papers, proofs, whether handwritten, typed, printed, photocopied, photographed, tape-recorded, transcribed, filed or otherwise created, specifically including, but not limited to, telephone slips and logs, diary entries facsimiles, presentations, calendars, reports, spreadsheets, minutes, correspondence, memoranda, notes, videotapes, audio tapes, electronic or digital recordings of any kind, photographs, and any other form of communication or representation. It also includes, without limitation, all information stored in a computer system although not yet printed out, all information stored on computer hard drives, all information stored on floppy diskettes, computer tape backups, CD-ROM, and/or e-mail.

2.    "Communication" means any transmission of thoughts, opinions, data, or information, in the form of facts, ideas, inquiries, or otherwise, including, without limitation, correspondence, letters, e-mail, facsimiles, reports, memoranda, contacts, discussions, calculations, presentations and any other written or oral exchange between any two or more persons.

3.    "AIU" means AIU Insurance Company as well as American International Group, Inc. and any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

4.    "Ambac" means Ambac Assurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

5.    "Aquino" refers to the individual Michael Aquino.

6.    "Audit" or Accounting Report" means any opinion or report issued by any auditor, accountant, or other similar professional, including without limitation any Independent Accountant's Report, Audit Report, or repot on Agreed-Upon Procedures or "AUPs," concerning SFC, SLS, or SMS.

7.    "BDO" means BDO Seidman, LLP, as well as its parents, subsidiaries, affiliates, partners, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

8.    "Benfield" means Benfield, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

- 1 -

9.    "Capital" means Capital Reinsurance Company as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

10.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

11.    "Credit Risk Insurance Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction. The term "Credit Risk Insurance Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

12.    "Deutsche Bank" shall mean Deutsche Bank Securities, Inc., Banker's Trust Company, and their current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

13.    "Due Diligence" refers to the process of investigation into a transaction, including, without limitation, the examination of operations and management, research and analysis of historical financial and/or transactional information, verification of any material facts related to the transaction, stress testing the transaction itself and the viability of any assets underlying the transaction, and evaluation of the credit worthiness of any participating parties.

14.    "Eagle" means Eagle Funding Capital Corporation as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

15.    "FEU" means the division of Royal referred to as the Financial Enhancement Unit, as well as any subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives of FEU.

16.    "Finova" means Finova Capital Corporation and Finova Loan Administration, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

17.    "Fitch" means Fitch, Inc. as well as Fitch IBCA, Inc., Fitch IBCA, Duff & Phelps, The International Rating Agency and any subsidiary or affiliate companies predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

18.    "Fleet" means Fleet Securities, Inc. as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or

representatives of Fleet, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

19.    "Fox Rothschild" shall mean Fox Rothschild O'Brien & Frankel and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

20.    "Freed" shall mean Freed Maxick & Battaglia CPAs PC and Freed Maxick Sachs & Murphy, P.C., or either of them, and their current for former principals, partners, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary predecessor or affiliated corporation or entity that have possession of, custody of, control of, knowledge of, or responsibility for any document or information called for by these discovery requests, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

21.    "Gagné" shall mean Roderick Gagné, defendant in this action, including his agents, representatives, and all other persons or entities acting or purporting to act on his behalf, whether authorized to do so or not, including any consultants, brokers, or attorneys.

22.    "GenRe" means General Reinsurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

23.    "Gerling" means any member of the Gerling Group, including but not limited to Gerling American Insurance Company, as well as their parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

24.    "Grant Thornton" means Grant Thornton LLP, as well as its partners, employees, agents, attorneys and representatives as well as any affiliates of Grant Thornton, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

25.    "Great American" means Great American Financial Resources, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

26.    "Havenwood Capital" means Havenwood Capital Markets, LLC as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Havenwood Capital, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

- 3 -

27.    "IBG" means International Benefits Group, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, including but not limited to Joseph F. Domal, each person acting on their behalf or under their control and any parent, subsidiary, predecessor, successor or affiliated corporation.

28.    "Liberty" means Liberty International as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

29.    "Loofbourrow" shall mean John W. Loofbourrow and Associates, Inc. and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

30.    "MAC Insurance" means MAC Insurance Agency and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

31.    "Market Street" refers to Market Street Capital Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

32.    "MBIA" shall mean MBIA Insurance Corporation, and its current or former officers, directors, employees, agent, representatives, and attorneys (including its attorneys Kutak Rah LLP), each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity.

33.    "MBIA Policies" shall mean the MBIA Policies issued by MBIA in connection with the SFC Transactions and any attachments, amendments or modifications thereto.

34.    "McGladrey" means McGladrey & Pullen LLP and RSM McGladrey, as well as their partners, employees, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

35.    "Moody's" means Moody's Corporation as well as Moody's Investors Service and any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation or entity.

36.    "Other Royal Credit Risk Insurance Policies" means any Credit Risk Insurance Policy issued by Royal Indemnity Company between January 1, 1998 and December 31, 2002 other than a Credit Risk Insurance Policy issued in connection with SFC or any SFC Transaction.

- 4 -

37.    "Pepper" shall mean Pepper Hamilton LLP and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

38.    "Person" means and includes, without limitation, every natural person, association, firm, partnership, corporation, board, committee, agency, commission, legal entity of any form or type, and every other organization or entity, whether public or private.

39.    "PNC" shall mean PNC Bank, N.A., and its current or former directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

40.    "Pooling and Servicing Agreement(s)" shall mean all agreements identified as Pooling and Servicing Agreement which pertain to the SFC Trusts, including each of the agreements (and any attachments, amendments, or modifications thereto) among Wells Fargo and SFC affiliates that were executed in connection with the SFC Transactions and pursuant to which Wells Fargo, among other things, undertook the duty to monitor the performance of the SFC Student Loans.

41.    "Private Placement Memoranda" shall mean all Documents identified as Private Placement Memoranda (including any attachments, amendment, or modifications thereto) which pertain to the SFC Loans and SFC Trusts, including those issued by Pepper Hamilton in connection with the SFC Transactions.

42.    "Rating Agencies" shall mean Moody's, Fitch IBCA, Inc., Duff & Phelps, S&P, The International Rating Agency, and their current or former principals, owners, officers, directors, partners, stockholders, shareholders associates, employees, staff members, agent, representatives, attorneys, subsidiaries, affiliates, divisions, successors, and predecessors, and all Persons or entities currently or formerly acting or purporting to act on their behalf.

43.    "Rating" means the procedure by which Fitch, Moody's, Standard & Poor's measure the credit worthiness of an issuer or borrower, including but not limited to the assignment of a standardized credit rating (e.g., AAA, AA, A, etc.). As used herein the term "Rating" includes but is not limited to the decision to issue a rating and the assignment of a particular rating.

44.    "Related Royal and SFC Litigations" means all litigation in which Royal or SFC is or has been a party arising out of Royal's relationship with Student Finance Corporation, including any appeal of such a matter, and including, without limitation:

- *Royal Indemnity Co. v. Franklin Career Service, Inc.*, 3:04-cv-00038-CRS (W.D. Ky.)

- *Wilmington Trust PA v. Royal Indemnity Co.*, 1:02-cv-1361-JJF (D.Del.);

- *Royal Indemnity Co. v. Commercial Driver Inst. Inc.*, o4-cv-107 (M.D. Tenn.);

- *MBIA Ins. Corp. v. Royal Indemnity Co.*, 1:02-cv-1294-JJF (D.Del.);

- *Royal Indemnity Co. v. Pepper Hamilton, 1:05-cv-165-JJF (D.Del.);*

- *Royal Indemnity Co. v. T.E. Moor & Co.*, D167370 (58th Dist., Jefferson County, TX);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-953-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-507-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 04-adv-53306-JBR (Bankr.D.Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 03-cv-507-SLR (D. Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 02-adv-6803-LK (Bankr.D.Del.);

- *Nielsen Electronics Inst. v.. Student Finance Corp.*, 99-285-MNS (D.Del.);

- *FDIC v. Student Finance Corp.*, 98-D-2703SFC (D. Co.);

- *SWH Funding Corp. v. Student Finance Corp.*, BER-L (N.J. Sup. Ct. 2002); and

- *SWH Funding Corp. v. Student Finance Corp.*, 2:02-cv-02464-FSH (D.N.J.)

45.    "Royal" means Royal Indemnity Company and Royal & Sun Alliance, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

46.    "Servicer Reports" shall mean any document delivered or required to be delivered on a monthly basis by SFC to Wells Fargo or any other persons reflecting or representing information as to SFC Loans specifically including, without limitation, any and all "Servicer Reports" as the term is used in the Pooling and Servicing Agreements.

47.    "SFC" means Student Finance Corporation; Student Loan Servicing, LLC; Student Marketing Services, LLC: Student Placement Services, LLC; SFC Financial I, LLC; SFC Financial II, LLC; SFC Acceptance I, LLC, SFC Acceptance II, LLC, SFC Acceptance III, LLC; SFC Acceptance IV, LLC; SFC Acceptance V, LLC; SFC Acceptance VI, LLC; SFC Acceptance VII, LLC; SFC Acceptance VIII, LLC; and SFC Acceptance IX, LLC (and any other

- 6 -

related subsidiaries or affiliates), as well as their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

48.    "SFC Grantor Trust" and "SFC Owner Trust" refer to the trusts settled for the purpose of holding title to the student loans securitized by SFC.  SFC Grantor Trust and SFC Owner Trust include, but are not limited to, SFC Grantor Trust, series 2000-1, SFC Grantor Trust, Series 2000-2, SFC Grantor Trust, Series 2000-3, SFC Grantor Trust, Series 2000-4, SFC Grantor Trust, Series 2001-1, SFC Grantor Trust, Series 2001-2, SFC Grantor Trust, Series 2001-3, and SFC Owner Trust 2001-I.

49.    "SFC Loan", "loan made by SFC", "Loan purchased by SFC" and the combination or derivation of these terms is used interchangeably, as synonymous, and includes, without limitation, all loans, installment contracts, promissory notes and any other form of financing by which SFC financed, funded or promised to finance or fund, in whole or in part, a student's attendance or enrollment in a vocational or educational institution or program, directly or indirectly, contemporaneously, subsequent or prior to the student's enrollment or attendance.

50.    "SFC Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction.  The term "SFC Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

51.    "SFC Transactions" refers to all SFC-related warehouse financings, revolving credit facilities, securitizations, bridge or other loans, whether consummated or unconsummated.

52.    "Shadow Rating" means the determination of a non-public rating used to assess the credit strength of assets backing securities and the structure of a transaction, rather than any guaranty on the underlying assets or on the securities themselves (sometimes referred to as an "underlying rating").  As used herein the term "Shadow Rating" includes but is not limited to the decision to issue a shadow rating and the assignment of a particular shadow rating.

53.    "SWH" means SWH Funding Corp. and Spectrum Funding Corporation LLC, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

54.    "S&P" means Standard & Poor's as well as any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of S&P, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

55.    "T.E. Moor" shall mean T.E. Moor & Co., and its directors, officers, employees, agents and attorneys including Ted E. Moor, III and Gerald Parker, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation including but not limited to any MAC Insurance Agency and Talon Insurance Agency, each

person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

56.    "Truck Schools" means any trucking, trade, or other educational institution having at any time any business relationship with SC including without limitation Neilsen Electronics, Hook Up Drivers, Thoroughbred Truck Driving School, Commercial Driver Institute, Inc., MTC Schools, Truck Driver Institute, Inc., Transport Training, Inc., MPIII Holdings, Inc., Alliance Corp. and Across America, Inc., as well as the parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives of any "Truck School", each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

57.    "Salomon Smith Barney" includes any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Salomon Smith Barney, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

58.    "Trustee" refers to Charles a. Stanziale, Jr., Esquire, as the Chapter 7 (and Chapter 11) Trustee for the Estate of Student Finance Corporation, as well as the Trustee's employees, agents, attorneys and representatives.

59.    "Virgil Baker" shall mean Virgil Baker & Associates Inc. and its current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

60.    "Wells" or "Wells Fargo" shall mean Wells Fargo Bank Minnesota, N.A., and its current or former principals, directors, officers, employees, agents, representatives and attorneys (including Dorsey & Whitney LLP), each person acting on its behalf or under its control and any parent subsidiary, predecessor or affiliated corporation.  "Wells Fargo" specifically includes, without limitation, any trust for which Wells Fargo as defined above acts as a trustee or that Wells Fargo administers, oversees, or that is in any way related, affiliated or connected to Wells Fargo.

61.    "Wilmington Trust" shall mean Wilmington Trust Company of Pennsylvania and its current or former officers, directors, employees, agents, representatives, and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

62.    "XL" means XL Capital Assurance, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

63.    "Yao" refers to the individual Andrew N. Yao.

64.    "You" means T.E. Moor the entity or Ted E. Moor III the individual or Gerald Parker or Patti Gilliam as necessary to read the requests in their broadest sense.

- 8 -

65.    All words and phrases shall be construed in accordance with normal custom and usage in the industries or field of commerce to which they apply.

66.    "Concerning" means relating to, referring to, memorializing, describing, evidencing or constituting.

67.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

68.    The use of the singular form of any word includes the plural and vice versa.

69.    Unless otherwise stated, all requests are for documents created, obtained, generated or produced during the period from January 1, 1996 to the date of this subpoena.

0167/49336-001 Current/8769823v2

## Documents Requested

1.     All Documents and Communications concerning (a) SFC; (b) any SFC Loan; (c) the SFC Grantor Trusts or SFC Owner Trust; (d) the SFC Policies; (e) or any SFC Transactions.

2.     All Documents concerning any Related SFC or Royal Litigation, including, but not limited to, any document produced by you in connection with any such litigation.

3.     All Documents and Communications exchanged between you, on the one hand, and the following persons or entities, on the other hand, that refer or relate to SFC, SFC Loans, the SFC Grantor Trusts, SFC Owner Trust, the SFC Policies, or any SFC Transaction: (a) AIU; (b) Ambac; (c) Bankers Trust; (d) BDO; (e) Benfield; (f) Capital; (g) Duff & Phelps; (h) Deutsche Bank; (i) Eagle; (j) Finova; (k) Fitch; (l) Fleet; (m) Fox Rothschild; (n) Freed; (o) Gagné; (p) GenRe; (q) Gerling; (r) Grant Thornton; (s) Great American; (t) Havenwood Capital; (u) The International Rating Agency; (v) IBG; (w) Liberty; (x) Loofbourrow; (y) Market Street; (z) MBIA; (aa) McGladrey; (bb) Moody's; (cc) Pepper; (dd) PNC; (ee) Roger "Rusty" Saylor; Royal; (ff) SWH; (gg) S&P; (hh) the Trustee; (ii) Trucking Schools; (jj) Salomon Smith Barney; (kk) Virgil Baker; (ll) Wells Fargo; (mm) Wilmington Trust; (nn) XL and (oo) Yao.

4.     All Documents and Communications concerning Due Diligence of SFC in connection with SFC, SFC Policies or SFC Loans, and SFC Transactions.

5.     All Documents and Communications concerning any efforts by SFC to obtain insurance or reinsurance.

6.     All Documents and Communications concerning any Credit Risk Insurance Policies issued by Royal.

7.     All Documents and Communications concerning any MBIA Policies.

8.     All Documents and Communications concerning any inspection, investigation, analysis, review or audit of: (a) SFC, (b) any SFC Loan, (c) the SFC Grantor Trust, (d) the SFC Owner Trust, (e) the SFC Policies; (f) or SFC Transactions, including but not limited to inspections, investigations, analyses, reviews and audits conducted by:  T.E. Moor, IBG, Royal, Grant Thornton, BDO, Freed, McGladrey, Pepper, SWH, MBIA and Wells Fargo.

9.     All Documents or Communications concerning Royal, MBIA, Wells Fargo, PNC, Wilmington Trust, Pepper; Gagné; Truck Schools; IBG; T.E. Moor; McGladrey; Aquino; and/or Yao, referring or relating to SFC, any SFC Loan, the SFC Grantor Trusts or SFC Owner Trust, the SFC Policies or any SFC Transactions.

10.     All Documents or Communications concerning the Ratings or Shadow Ratings by any Rating Agency concerning SFC, SFC Policies or SFC Transactions.

11.     Any and all Documents or Communications concerning any agreement to which SFC was a party, including but not limited to, all Documents or Communications concerning Royal's Credit Risk Insurance Policies and any other agreements between Royal and SFC.

12.    All Documents and Communications with any law enforcement or regulatory agency concerning SFC or Yao.

13.    All Documents or Communications concerning any Other Royal Credit Risk Insurance Policies (see Definition 36 above).

# EXHIBIT B

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| MBIA INSURANCE CORPORATION, et al. | **SUBPOENA IN A CIVIL CASE** |
| V. | CASE NUMBER: [1]   **02-1294-JJF (D. Del)** |
| ROYAL INDEMNITY COMPANY | |

TO:  Ted E. Moor, III
      1245 Nottingham Ln.
      Beaumont, TX 77706

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Vinson & Elkins LLP<br>First City Tower<br>1001 Fannin Street, Suite 2500<br>Houston, Texas 77002-6760 | 10/26/2006, 9:00 a.m.<br>10/27/2006, 9:00 a.m. |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See attached schedule of documents.**

| PLACE | DATE AND TIME |
|---|---|
| Vinson & Elkins LLP<br>c/o Jeffrey S. Johnston, Esq.<br>First City Tower<br>1001 Fannin Street, Suite 2300<br>Houston, Texas 77002-6760 | 10/4/2006, 1:00 p.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 9/18/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

John W. Shaw
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
(302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                                                                                    SIGNATURE OF SERVER
ATE

                                                                                    _____
                                                                                    ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule of Documents for T.E. Moor Subpoena

### Definitions

1.    "Document" is intended to be given the broadest possible scope and includes any written, recorded or graphic matter, or any other means of preserving thought or expression, including all non-identical copies, drafts, worksheets, work papers, proofs, whether handwritten, typed, printed, photocopied, photographed, tape-recorded, transcribed, filed or otherwise created, specifically including, but not limited to, telephone slips and logs, diary entries facsimiles, presentations, calendars, reports, spreadsheets, minutes, correspondence, memoranda, notes, videotapes, audio tapes, electronic or digital recordings of any kind, photographs, and any other form of communication or representation.  It also includes, without limitation, all information stored in a computer system although not yet printed out, all information stored on computer hard drives, all information stored on floppy diskettes, computer tape backups, CD-ROM, and/or e-mail.

2.    "Communication" means any transmission of thoughts, opinions, data, or information, in the form of facts, ideas, inquiries, or otherwise, including, without limitation, correspondence, letters, e-mail, facsimiles, reports, memoranda, contacts, discussions, calculations, presentations and any other written or oral exchange between any two or more persons.

3.    "AIU" means AIU Insurance Company as well as American International Group, Inc. and any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

4.    "Ambac" means Ambac Assurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

5.    "Aquino" refers to the individual Michael Aquino.

6.    "Audit" or Accounting Report" means any opinion or report issued by any auditor, accountant, or other similar professional, including without limitation any Independent Accountant's Report, Audit Report, or repot on Agreed-Upon Procedures or "AUPs," concerning SFC, SLS, or SMS.

7.    "BDO" means BDO Seidman, LLP, as well as its parents, subsidiaries, affiliates, partners, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

8.    "Benfield" means Benfield, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

- 1 -

9. "Capital" means Capital Reinsurance Company as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

10. "Concerning" means relating to, referring to, describing, evidencing or constituting.

11. "Credit Risk Insurance Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction. The term "Credit Risk Insurance Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

12. "Deutsche Bank" shall mean Deutsche Bank Securities, Inc., Banker's Trust Company, and their current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

13. "Due Diligence" refers to the process of investigation into a transaction, including, without limitation, the examination of operations and management, research and analysis of historical financial and/or transactional information, verification of any material facts related to the transaction, stress testing the transaction itself and the viability of any assets underlying the transaction, and evaluation of the credit worthiness of any participating parties.

14. "Eagle" means Eagle Funding Capital Corporation as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

15. "FEU" means the division of Royal referred to as the Financial Enhancement Unit, as well as any subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives of FEU.

16. "Finova" means Finova Capital Corporation and Finova Loan Administration, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

17. "Fitch" means Fitch, Inc. as well as Fitch IBCA, Inc., Fitch IBCA, Duff & Phelps, The International Rating Agency and any subsidiary or affiliate companies predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

18. "Fleet" means Fleet Securities, Inc. as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or

- 2 -

representatives of Fleet, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

19.    "Fox Rothschild" shall mean Fox Rothschild O'Brien & Frankel and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

20.    "Freed" shall mean Freed Maxick & Battaglia CPAs PC and Freed Maxick Sachs & Murphy, P.C., or either of them, and their current for former principals, partners, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary predecessor or affiliated corporation or entity that have possession of, custody of, control of, knowledge of, or responsibility for any document or information called for by these discovery requests, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

21.    "Gagné" shall mean Roderick Gagné, defendant in this action, including his agents, representatives, and all other persons or entities acting or purporting to act on his behalf, whether authorized to do so or not, including any consultants, brokers, or attorneys.

22.    "GenRe" means General Reinsurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

23.    "Gerling" means any member of the Gerling Group, including but not limited to Gerling American Insurance Company, as well as their parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

24.    "Grant Thornton" means Grant Thornton LLP, as well as its partners, employees, agents, attorneys and representatives as well any affiliates of Grant Thornton, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

25.    "Great American" means Great American Financial Resources, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

26.    "Havenwood Capital" means Havenwood Capital Markets, LLC as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Havenwood Capital, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

- 3 -

27.    "IBG" means International Benefits Group, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, including but not limited to Joseph F. Domal, each person acting on their behalf or under their control and any parent, subsidiary, predecessor, successor or affiliated corporation.

28.    "Liberty" means Liberty International as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

29.    "Loofbourrow" shall mean John W. Loofbourrow and Associates, Inc. and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

30.    "MAC Insurance" means MAC Insurance Agency and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

31.    "Market Street" refers to Market Street Capital Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

32.    "MBIA" shall mean MBIA Insurance Corporation, and its current or former officers, directors, employees, agent, representatives, and attorneys (including its attorneys Kutak Rah LLP), each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity.

33.    "MBIA Policies" shall mean the MBIA Policies issued by MBIA in connection with the SFC Transactions and any attachments, amendments or modifications thereto.

34.    "McGladrey" means McGladrey & Pullen LLP and RSM McGladrey, as well as their partners, employees, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

35.    "Moody's" means Moody's Corporation as well as Moody's Investors Service and any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation or entity.

36.    "Other Royal Credit Risk Insurance Policies" means any Credit Risk Insurance Policy issued by Royal Indemnity Company between January 1, 1998 and December 31, 2002 other than a Credit Risk Insurance Policy issued in connection with SFC or any SFC Transaction.

37.    "Pepper" shall mean Pepper Hamilton LLP and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

38.    "Person" means and includes, without limitation, every natural person, association, firm, partnership, corporation, board, committee, agency, commission, legal entity of any form or type, and every other organization or entity, whether public or private.

39.    "PNC" shall mean PNC Bank, N.A., and its current or former directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

40.    "Pooling and Servicing Agreement(s)" shall mean all agreements identified as Pooling and Servicing Agreement which pertain to the SFC Trusts, including each of the agreements (and any attachments, amendments, or modifications thereto) among Wells Fargo and SFC affiliates that were executed in connection with the SFC Transactions and pursuant to which Wells Fargo, among other things, undertook the duty to monitor the performance of the SFC Student Loans.

41.    "Private Placement Memoranda" shall mean all Documents identified as Private Placement Memoranda (including any attachments, amendment, or modifications thereto) which pertain to the SFC Loans and SFC Trusts, including those issued by Pepper Hamilton in connection with the SFC Transactions.

42.    "Rating Agencies" shall mean Moody's, Fitch IBCA, Inc., Duff & Phelps, S&P, The International Rating Agency, and their current or former principals, owners, officers, directors, partners, stockholders, shareholders associates, employees, staff members, agent, representatives, attorneys, subsidiaries, affiliates, divisions, successors, and predecessors, and all Persons or entities currently or formerly acting or purporting to act on their behalf.

43.    "Rating" means the procedure by which Fitch, Moody's, Standard & Poor's measure the credit worthiness of an issuer or borrower, including but not limited to the assignment of a standardized credit rating (e.g., AAA, AA, A, etc.). As used herein the term "Rating" includes but is not limited to the decision to issue a rating and the assignment of a particular rating.

44.    "Related Royal and SFC Litigations" means all litigation in which Royal or SFC is or has been a party arising out of Royal's relationship with Student Finance Corporation, including any appeal of such a matter, and including, without limitation:

- *Royal Indemnity Co. v. Franklin Career Service, Inc.*, 3:04-cv-00038-CRS (W.D. Ky.)

- *Wilmington Trust PA v. Royal Indemnity Co.*, 1:02-cv-1361-JJF (D.Del.);

- *Royal Indemnity Co. v. Commercial Driver Inst. Inc.*, o4-cv-107 (M.D. Tenn.);

- *MBIA Ins. Corp. v. Royal Indemnity Co.*, 1:02-cv-1294-JJF (D.Del.);

- *Royal Indemnity Co. v. Pepper Hamilton, 1:05-cv-165-JJF (D.Del.);*

- *Royal Indemnity Co. v. T.E. Moor & Co.*, D167370 (58th Dist., Jefferson County, TX);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-953-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-507-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 04-adv-53306-JBR (Bankr.D.Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 03-cv-507-SLR (D. Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 02-adv-6803-LK (Bankr.D.Del.);

- *Nielsen Electronics Inst. v.. Student Finance Corp.*, 99-285-MNS (D.Del.);

- *FDIC v. Student Finance Corp.*, 98-D-2703SFC (D. Co.);

- *SWH Funding Corp. v. Student Finance Corp.*, BER-L (N.J. Sup. Ct. 2002); and

- *SWH Funding Corp. v. Student Finance Corp.*, 2:02-cv-02464-FSH (D.N.J.)

45.    "Royal" means Royal Indemnity Company and Royal & Sun Alliance, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

46.    "Servicer Reports" shall mean any document delivered or required to be delivered on a monthly basis by SFC to Wells Fargo or any other persons reflecting or representing information as to SFC Loans specifically including, without limitation, any and all "Servicer Reports" as the term is used in the Pooling and Servicing Agreements.

47.    "SFC" means Student Finance Corporation; Student Loan Servicing, LLC; Student Marketing Services, LLC: Student Placement Services, LLC; SFC Financial I, LLC; SFC Financial II, LLC; SFC Acceptance I, LLC, SFC Acceptance II, LLC, SFC Acceptance III, LLC; SFC Acceptance IV, LLC; SFC Acceptance V, LLC; SFC Acceptance VI, LLC; SFC Acceptance VII, LLC; SFC Acceptance VIII, LLC; and SFC Acceptance IX, LLC (and any other

- 6 -

related subsidiaries or affiliates), as well as their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

48.    "SFC Grantor Trust" and "SFC Owner Trust" refer to the trusts settled for the purpose of holding title to the student loans securitized by SFC.  SFC Grantor Trust and SFC Owner Trust include, but are not limited to, SFC Grantor Trust, series 2000-1, SFC Grantor Trust, Series 2000-2, SFC Grantor Trust, Series 2000-3, SFC Grantor Trust, Series 2000-4, SFC Grantor Trust, Series 2001-1, SFC Grantor Trust, Series 2001-2, SFC Grantor Trust, Series 2001-3, and SFC Owner Trust 2001-I.

49.    "SFC Loan", "loan made by SFC", "Loan purchased by SFC" and the combination or derivation of these terms is used interchangeably, as synonymous, and includes, without limitation, all loans, installment contracts, promissory notes and any other form of financing by which SFC financed, funded or promised to finance or fund, in whole or in part, a student's attendance or enrollment in a vocational or educational institution or program, directly or indirectly, contemporaneously, subsequent or prior to the student's enrollment or attendance.

50.    "SFC Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction.  The term "SFC Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

51.    "SFC Transactions" refers to all SFC-related warehouse financings, revolving credit facilities, securitizations, bridge or other loans, whether consummated or unconsummated.

52.    "Shadow Rating" means the determination of a non-public rating used to assess the credit strength of assets backing securities and the structure of a transaction, rather than any guaranty on the underlying assets or on the securities themselves (sometimes referred to as an "underlying rating").  As used herein the term "Shadow Rating" includes but is not limited to the decision to issue a shadow rating and the assignment of a particular shadow rating.

53.    "SWH" means SWH Funding Corp. and Spectrum Funding Corporation LLC, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

54.    "S&P" means Standard & Poor's as well as any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of S&P, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

55.    "T.E. Moor" shall mean T.E. Moor & Co., and its directors, officers, employees, agents and attorneys including Ted E. Moor, III and Gerald Parker, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation including but not limited to any MAC Insurance Agency and Talon Insurance Agency, each

person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

56.    "Truck Schools" means any trucking, trade, or other educational institution having at any time any business relationship with SC including without limitation Neilsen Electronics, Hook Up Drivers, Thoroughbred Truck Driving School, Commercial Driver Institute, Inc., MTC Schools, Truck Driver Institute, Inc., Transport Training, Inc., MPIII Holdings, Inc., Alliance Corp. and Across America, Inc., as well as the parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives of any "Truck School", each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

57.    "Salomon Smith Barney" includes any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Salomon Smith Barney, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

58.    "Trustee" refers to Charles a. Stanziale, Jr., Esquire, as the Chapter 7 (and Chapter 11) Trustee for the Estate of Student Finance Corporation, as well as the Trustee's employees, agents, attorneys and representatives.

59.    "Virgil Baker" shall mean Virgil Baker & Associates Inc. and its current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

60.    "Wells" or "Wells Fargo" shall mean Wells Fargo Bank Minnesota, N.A., and its current or former principals, directors, officers, employees, agents, representatives and attorneys (including Dorsey & Whitney LLP), each person acting on its behalf or under its control and any parent subsidiary, predecessor or affiliated corporation. "Wells Fargo" specifically includes, without limitation, any trust for which Wells Fargo as defined above acts as a trustee or that Wells Fargo administers, oversees, or that is in any way related, affiliated or connected to Wells Fargo.

61.    "Wilmington Trust" shall mean Wilmington Trust Company of Pennsylvania and its current or former officers, directors, employees, representatives, and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

62.    "XL" means XL Capital Assurance, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

63.    "Yao" refers to the individual Andrew N. Yao.

64.    "You" means T.E. Moor the entity or Ted E. Moor III the individual or Gerald Parker or Patti Gilliam as necessary to read the requests in their broadest sense.

- 8 -

65.    All words and phrases shall be construed in accordance with normal custom and usage in the industries or field of commerce to which they apply.

66.    "Concerning" means relating to, referring to, memorializing, describing, evidencing or constituting.

67.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

68.    The use of the singular form of any word includes the plural and vice versa.

69.    Unless otherwise stated, all requests are for documents created, obtained, generated or produced during the period from January 1, 1996 to the date of this subpoena.

## Documents Requested

1.     All Documents and Communications concerning (a) SFC; (b) any SFC Loan; (c) the SFC Grantor Trusts or SFC Owner Trust; (d) the SFC Policies; (e) or any SFC Transactions.

2.     All Documents concerning any Related SFC or Royal Litigation, including, but not limited to, any document produced by you in connection with any such litigation.

3.     All Documents and Communications exchanged between you, on the one hand, and the following persons or entities, on the other hand, that refer or relate to SFC, SFC Loans, the SFC Grantor Trusts, SFC Owner Trust, the SFC Policies, or any SFC Transaction: (a) AIU; (b) Ambac; (c) Bankers Trust; (d) BDO; (e) Benfield; (f) Capital; (g) Duff & Phelps; (h) Deutsche Bank; (i) Eagle; (j) Finova; (k) Fitch; (l) Fleet; (m) Fox Rothschild; (n) Freed; (o) Gagné; (p) GenRe; (q) Gerling; (r) Grant Thornton; (s) Great American; (t) Havenwood Capital; (u) The International Rating Agency; (v) IBG; (w) Liberty; (x) Loofbourrow; (y) Market Street; (z) MBIA; (aa) McGladrey; (bb) Moody's; (cc) Pepper; (dd) PNC; (ee) Roger "Rusty" Saylor; Royal; (ff) SWH; (gg) S&P; (hh) the Trustee; (ii) Trucking Schools; (jj) Salomon Smith Barney; (kk) Virgil Baker; (ll) Wells Fargo; (mm) Wilmington Trust; (nn) XL and (oo) Yao.

4.     All Documents and Communications concerning Due Diligence of SFC in connection with SFC, SFC Policies or SFC Loans, and SFC Transactions.

5.     All Documents and Communications concerning any efforts by SFC to obtain insurance or reinsurance.

6.     All Documents and Communications concerning any Credit Risk Insurance Policies issued by Royal.

7.     All Documents and Communications concerning any MBIA Policies.

8.     All Documents and Communications concerning any inspection, investigation, analysis, review or audit of: (a) SFC, (b) any SFC Loan, (c) the SFC Grantor Trust, (d) the SFC Owner Trust, (e) the SFC Policies; (f) or SFC Transactions, including but not limited to inspections, investigations, analyses, reviews and audits conducted by: T.E. Moor, IBG, Royal, Grant Thornton, BDO, Freed, McGladrey, Pepper, SWH, MBIA and Wells Fargo.

9.     All Documents or Communications concerning Royal, MBIA, Wells Fargo, PNC, Wilmington Trust, Pepper; Gagné; Truck Schools; IBG; T.E. Moor; McGladrey; Aquino; and/or Yao, referring or relating to SFC, any SFC Loan, the SFC Grantor Trusts or SFC Owner Trust, the SFC Policies or any SFC Transactions.

10.     All Documents or Communications concerning the Ratings or Shadow Ratings by any Rating Agency concerning SFC, SFC Policies or SFC Transactions.

11.     Any and all Documents or Communications concerning any agreement to which SFC was a party, including but not limited to, all Documents or Communications concerning Royal's Credit Risk Insurance Policies and any other agreements between Royal and SFC.

- 10 -

12.    All Documents and Communications with any law enforcement or regulatory agency concerning SFC or Yao.

13.    All Documents or Communications concerning any Other Royal Credit Risk Insurance Policies (see Definition 36 above).

# EXHIBIT C

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS

MBIA INSURANCE CORPORATION, et al.

## SUBPOENA IN A CIVIL CASE

V.

CASE NUMBER: [1]   02-1294-JJF (D. Del)

ROYAL INDEMNITY COMPANY

TO:
T.E. Moor & Co. of Houston, Inc.
c/o Ted E. Moor, III, registered agent
1245 Nottingham Ln
Beaumont, TX 77706

YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See attached schedule of documents.**

| PLACE<br>Vinson & Elkins LLP<br>c/o Jeffrey S. Johnston, Esq.<br>First City Tower<br>1001 Fannin Street, Suite 2300<br>Houston, Texas 77002-6760 | DATE AND TIME<br><br>10/4/2006, 1:00 p.m. |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 9/18/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

John W. Shaw
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
(302) 571-6689

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

ATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule of Documents for T.E. Moor & Co. of Houston, Inc. Subpoena

### Definitions

1.      "Document" is intended to be given the broadest possible scope and includes any written, recorded or graphic matter, or any other means of preserving thought or expression, including all non-identical copies, drafts, worksheets, work papers, proofs, whether handwritten, typed, printed, photocopied, photographed, tape-recorded, transcribed, filed or otherwise created, specifically including, but not limited to, telephone slips and logs, diary entries facsimiles, presentations, calendars, reports, spreadsheets, minutes, correspondence, memoranda, notes, videotapes, audio tapes, electronic or digital recordings of any kind, photographs, and any other form of communication or representation. It also includes, without limitation, all information stored in a computer system although not yet printed out, all information stored on computer hard drives, all information stored on floppy diskettes, computer tape backups, CD-ROM, and/or e-mail.

2.      "Communication" means any transmission of thoughts, opinions, data, or information, in the form of facts, ideas, inquiries, or otherwise, including, without limitation, correspondence, letters, e-mail, facsimiles, reports, memoranda, contacts, discussions, calculations, presentations and any other written or oral exchange between any two or more persons.

3.      "AIU" means AIU Insurance Company as well as American International Group, Inc. and any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

4.      "Ambac" means Ambac Assurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

5.      "Aquino" refers to the individual Michael Aquino.

6.      "Audit" or Accounting Report" means any opinion or report issued by any auditor, accountant, or other similar professional, including without limitation any Independent Accountant's Report, Audit Report, or repot on Agreed-Upon Procedures or "AUPs," concerning SFC, SLS, or SMS.

7.      "BDO" means BDO Seidman, LLP, as well as its parents, subsidiaries, affiliates, partners, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

8.      "Benfield" means Benfield, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

- 1 -

9.    "Capital" means Capital Reinsurance Company as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

10.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

11.    "Credit Risk Insurance Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction.  The term "Credit Risk Insurance Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

12.    "Deutsche Bank" shall mean Deutsche Bank Securities, Inc., Banker's Trust Company, and their current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

13.    "Due Diligence" refers to the process of investigation into a transaction, including, without limitation, the examination of operations and management, research and analysis of historical financial and/or transactional information, verification of any material facts related to the transaction, stress testing the transaction itself and the viability of any assets underlying the transaction, and evaluation of the credit worthiness of any participating parties.

14.    "Eagle" means Eagle Funding Capital Corporation as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

15.    "FEU" means the division of Royal referred to as the Financial Enhancement Unit, as well as any subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives of FEU.

16.    "Finova" means Finova Capital Corporation and Finova Loan Administration, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

17.    "Fitch" means Fitch, Inc. as well as Fitch IBCA, Inc., Fitch IBCA, Duff & Phelps, The International Rating Agency and any subsidiary or affiliate companies predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

18.    "Fleet" means Fleet Securities, Inc. as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or

- 2 -

representatives of Fleet, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

19.    "Fox Rothschild" shall mean Fox Rothschild O'Brien & Frankel and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

20.    "Freed" shall mean Freed Maxick & Battaglia CPAs PC and Freed Maxick Sachs & Murphy, P.C., or either of them, and their current for former principals, partners, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary predecessor or affiliated corporation or entity that have possession of, custody of, control of, knowledge of, or responsibility for any document or information called for by these discovery requests, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

21.    "Gagné" shall mean Roderick Gagné, defendant in this action, including his agents, representatives, and all other persons or entities acting or purporting to act on his behalf, whether authorized to do so or not, including any consultants, brokers, or attorneys.

22.    "GenRe" means General Reinsurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

23.    "Gerling" means any member of the Gerling Group, including but not limited to Gerling American Insurance Company, as well as their parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

24.    "Grant Thornton" means Grant Thornton LLP, as well as its partners, employees, agents, attorneys and representatives as well as any affiliates of Grant Thornton, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

25.    "Great American" means Great American Financial Resources, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

26.    "Havenwood Capital" means Havenwood Capital Markets, LLC as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Havenwood Capital, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

27.    "IBG" means International Benefits Group, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, including but not limited to Joseph F. Domal, each person acting on their behalf or under their control and any parent, subsidiary, predecessor, successor or affiliated corporation.

28.    "Liberty" means Liberty International as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

29.    "Loofbourrow" shall mean John W. Loofbourrow and Associates, Inc. and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

30.    "MAC Insurance" means MAC Insurance Agency and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

31.    "Market Street" refers to Market Street Capital Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

32.    "MBIA" shall mean MBIA Insurance Corporation, and its current or former officers, directors, employees, agent, representatives, and attorneys (including its attorneys Kutak Rah LLP), each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity.

33.    "MBIA Policies" shall mean the MBIA Policies issued by MBIA in connection with the SFC Transactions and any attachments, amendments or modifications thereto.

34.    "McGladrey" means McGladrey & Pullen LLP and RSM McGladrey, as well as their partners, employees, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

35.    "Moody's" means Moody's Corporation as well as Moody's Investors Service and any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation or entity.

36.    "Other Royal Credit Risk Insurance Policies" means any Credit Risk Insurance Policy issued by Royal Indemnity Company between January 1, 1998 and December 31, 2002 other than a Credit Risk Insurance Policy issued in connection with SFC or any SFC Transaction.

- 4 -

37.    "Pepper" shall mean Pepper Hamilton LLP and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

38.    "Person" means and includes, without limitation, every natural person, association, firm, partnership, corporation, board, committee, agency, commission, legal entity of any form or type, and every other organization or entity, whether public or private.

39.    "PNC" shall mean PNC Bank, N.A., and its current or former directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

40.    "Pooling and Servicing Agreement(s)" shall mean all agreements identified as Pooling and Servicing Agreement which pertain to the SFC Trusts, including each of the agreements (and any attachments, amendments, or modifications thereto) among Wells Fargo and SFC affiliates that were executed in connection with the SFC Transactions and pursuant to which Wells Fargo, among other things, undertook the duty to monitor the performance of the SFC Student Loans.

41.    "Private Placement Memoranda" shall mean all Documents identified as Private Placement Memoranda (including any attachments, amendment, or modifications thereto) which pertain to the SFC Loans and SFC Trusts, including those issued by Pepper Hamilton in connection with the SFC Transactions.

42.    "Rating Agencies" shall mean Moody's, Fitch IBCA, Inc., Duff & Phelps, S&P, The International Rating Agency, and their current or former principals, owners, officers, directors, partners, stockholders, shareholders associates, employees, staff members, agent, representatives, attorneys, subsidiaries, affiliates, divisions, successors, and predecessors, and all Persons or entities currently or formerly acting or purporting to act on their behalf.

43.    "Rating" means the procedure by which Fitch, Moody's, Standard & Poor's measure the credit worthiness of an issuer or borrower, including but not limited to the assignment of a standardized credit rating (e.g., AAA, AA, A, etc.). As used herein the term "Rating" includes but is not limited to the decision to issue a rating and the assignment of a particular rating.

44.    "Related Royal and SFC Litigations" means all litigation in which Royal or SFC is or has been a party arising out of Royal's relationship with Student Finance Corporation, including any appeal of such a matter, and including, without limitation:

- *Royal Indemnity Co. v. Franklin Career Service, Inc.,* 3:04-cv-00038-CRS (W.D. Ky.)

- 5 -

- *Wilmington Trust PA v. Royal Indemnity Co.*, 1:02-cv-1361-JJF (D.Del.);

- *Royal Indemnity Co. v. Commercial Driver Inst. Inc.*, o4-cv-107 (M.D. Tenn.);

- *MBIA Ins. Corp. v. Royal Indemnity Co.*, 1:02-cv-1294-JJF (D.Del.);

- *Royal Indemnity Co. v. Pepper Hamilton, 1:05-cv-165-JJF (D.Del.);*

- *Royal Indemnity Co. v. T.E. Moor & Co.*, D167370 (58th Dist., Jefferson County, TX);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-953-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-507-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 04-adv-53306-JBR (Bankr.D.Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 03-cv-507-SLR (D. Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 02-adv-6803-LK (Bankr.D.Del.);

- *Nielsen Electronics Inst. v.. Student Finance Corp.*, 99-285-MNS (D.Del.);

- *FDIC v. Student Finance Corp.*, 98-D-2703SFC (D. Co.);

- *SWH Funding Corp. v. Student Finance Corp.*, BER-L (N.J. Sup. Ct. 2002); and

- *SWH Funding Corp. v. Student Finance Corp.*, 2:02-cv-02464-FSH (D.N.J.)

45.    "Royal" means Royal Indemnity Company and Royal & Sun Alliance, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

46.    "Servicer Reports" shall mean any document delivered or required to be delivered on a monthly basis by SFC to Wells Fargo or any other persons reflecting or representing information as to SFC Loans specifically including, without limitation, any and all "Servicer Reports" as the term is used in the Pooling and Servicing Agreements.

47.    "SFC" means Student Finance Corporation; Student Loan Servicing, LLC; Student Marketing Services, LLC: Student Placement Services, LLC; SFC Financial I, LLC; SFC Financial II, LLC; SFC Acceptance I, LLC, SFC Acceptance II, LLC, SFC Acceptance III, LLC; SFC Acceptance IV, LLC; SFC Acceptance V, LLC; SFC Acceptance VI, LLC; SFC Acceptance VII, LLC; SFC Acceptance VIII, LLC; and SFC Acceptance IX, LLC (and any other

- 6 -

related subsidiaries or affiliates), as well as their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

48.    "SFC Grantor Trust" and "SFC Owner Trust" refer to the trusts settled for the purpose of holding title to the student loans securitized by SFC. SFC Grantor Trust and SFC Owner Trust include, but are not limited to, SFC Grantor Trust, series 2000-1, SFC Grantor Trust, Series 2000-2, SFC Grantor Trust, Series 2000-3, SFC Grantor Trust, Series 2000-4, SFC Grantor Trust, Series 2001-1, SFC Grantor Trust, Series 2001-2, SFC Grantor Trust, Series 2001-3, and SFC Owner Trust 2001-I.

49.    "SFC Loan", "loan made by SFC", "Loan purchased by SFC" and the combination or derivation of these terms is used interchangeably, as synonymous, and includes, without limitation, all loans, installment contracts, promissory notes and any other form of financing by which SFC financed, funded or promised to finance or fund, in whole or in part, a student's attendance or enrollment in a vocational or educational institution or program, directly or indirectly, contemporaneously, subsequent or prior to the student's enrollment or attendance.

50.    "SFC Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction. The term "SFC Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

51.    "SFC Transactions" refers to all SFC-related warehouse financings, revolving credit facilities, securitizations, bridge or other loans, whether consummated or unconsummated.

52.    "Shadow Rating" means the determination of a non-public rating used to assess the credit strength of assets backing securities and the structure of a transaction, rather than any guaranty on the underlying assets or on the securities themselves (sometimes referred to as an "underlying rating"). As used herein the term "Shadow Rating" includes but is not limited to the decision to issue a shadow rating and the assignment of a particular shadow rating.

53.    "SWH" means SWH Funding Corp. and Spectrum Funding Corporation LLC, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

54.    "S&P" means Standard & Poor's as well as any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of S&P, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

55.    "T.E. Moor" shall mean T.E. Moor & Co., and its directors, officers, employees, agents and attorneys including Ted E. Moor, III and Gerald Parker, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation including but not limited to any MAC Insurance Agency and Talon Insurance Agency, each

- 7 -

person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

56.    "Truck Schools" means any trucking, trade, or other educational institution having at any time any business relationship with SC including without limitation Neilsen Electronics, Hook Up Drivers, Thoroughbred Truck Driving School, Commercial Driver Institute, Inc., MTC Schools, Truck Driver Institute, Inc., Transport Training, Inc., MPIII Holdings, Inc., Alliance Corp. and Across America, Inc., as well as the parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives of any "Truck School", each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

57.    "Salomon Smith Barney" includes any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Salomon Smith Barney, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

58.    "Trustee" refers to Charles a. Stanziale, Jr., Esquire, as the Chapter 7 (and Chapter 11) Trustee for the Estate of Student Finance Corporation, as well as the Trustee's employees, agents, attorneys and representatives.

59.    "Virgil Baker" shall mean Virgil Baker & Associates Inc. and its current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

60.    "Wells" or "Wells Fargo" shall mean Wells Fargo Bank Minnesota, N.A., and its current or former principals, directors, officers, employees, agents, representatives and attorneys (including Dorsey & Whitney LLP), each person acting on its behalf or under its control and any parent subsidiary, predecessor or affiliated corporation.  "Wells Fargo" specifically includes, without limitation, any trust for which Wells Fargo as defined above acts as a trustee or that Wells Fargo administers, oversees, or that is in any way related, affiliated or connected to Wells Fargo.

61.    "Wilmington Trust" shall mean Wilmington Trust Company of Pennsylvania and its current or former officers, directors, employees, agents, representatives, and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

62.    "XL" means XL Capital Assurance, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

63.    "Yao" refers to the individual Andrew N. Yao.

64.    "You" means T.E. Moor the entity or Ted E. Moor III the individual or Gerald Parker or Patti Gilliam as necessary to read the requests in their broadest sense.

- 8 -

65.     All words and phrases shall be construed in accordance with normal custom and usage in the industries or field of commerce to which they apply.

66.     "Concerning" means relating to, referring to, memorializing, describing, evidencing or constituting.

67.     The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

68.     The use of the singular form of any word includes the plural and vice versa.

69.     Unless otherwise stated, all requests are for documents created, obtained, generated or produced during the period from January 1, 1996 to the date of this subpoena.

- 9 -

## Documents Requested

1.      All Documents and Communications concerning (a) SFC; (b) any SFC Loan; (c) the SFC Grantor Trusts or SFC Owner Trust; (d) the SFC Policies; (e) or any SFC Transactions.

2.      All Documents concerning any Related SFC or Royal Litigation, including, but not limited to, any document produced by you in connection with any such litigation.

3.      All Documents and Communications exchanged between you, on the one hand, and the following persons or entities, on the other hand, that refer or relate to SFC, SFC Loans, the SFC Grantor Trusts, SFC Owner Trust, the SFC Policies, or any SFC Transaction: (a) AIU; (b) Ambac; (c) Bankers Trust; (d) BDO; (e) Benfield; (f) Capital; (g) Duff & Phelps; (h) Deutsche Bank; (i) Eagle; (j) Finova; (k) Fitch; (l) Fleet; (m) Fox Rothschild; (n) Freed; (o) Gagné; (p) GenRe; (q) Gerling; (r) Grant Thornton; (s) Great American; (t) Havenwood Capital; (u) The International Rating Agency; (v) IBG; (w) Liberty; (x) Loofbourrow; (y) Market Street; (z) MBIA; (aa) McGladrey; (bb) Moody's; (cc) Pepper; (dd) PNC; (ee) Roger "Rusty" Saylor; Royal; (ff) SWH; (gg) S&P; (hh) the Trustee; (ii) Trucking Schools; (jj) Salomon Smith Barney; (kk) Virgil Baker; (ll) Wells Fargo; (mm) Wilmington Trust; (nn) XL and (oo) Yao.

4.      All Documents and Communications concerning Due Diligence of SFC in connection with SFC, SFC Policies or SFC Loans, and SFC Transactions.

5.      All Documents and Communications concerning any efforts by SFC to obtain insurance or reinsurance.

6.      All Documents and Communications concerning any Credit Risk Insurance Policies issued by Royal.

7.      All Documents and Communications concerning any MBIA Policies.

8.      All Documents and Communications concerning any inspection, investigation, analysis, review or audit of: (a) SFC, (b) any SFC Loan, (c) the SFC Grantor Trust, (d) the SFC Owner Trust, (e) the SFC Policies; (f) or SFC Transactions, including but not limited to inspections, investigations, analyses, reviews and audits conducted by:  T.E. Moor, IBG, Royal, Grant Thornton, BDO, Freed, McGladrey, Pepper, SWH, MBIA and Wells Fargo.

9.      All Documents or Communications concerning Royal, MBIA, Wells Fargo, PNC, Wilmington Trust, Pepper; Gagné; Truck Schools; IBG; T.E. Moor; McGladrey; Aquino; and/or Yao, referring or relating to SFC, any SFC Loan, the SFC Grantor Trusts or SFC Owner Trust, the SFC Policies or any SFC Transactions.

10.      All Documents or Communications concerning the Ratings or Shadow Ratings by any Rating Agency concerning SFC, SFC Policies or SFC Transactions.

11.      Any and all Documents or Communications concerning any agreement to which SFC was a party, including but not limited to, all Documents or Communications concerning Royal's Credit Risk Insurance Policies and any other agreements between Royal and SFC.

- 10 -

12.    All Documents and Communications with any law enforcement or regulatory agency concerning SFC or Yao.

13.    All Documents or Communications concerning any Other Royal Credit Risk Insurance Policies (see Definition 36 above).

0167/49336-001 Current/8769823v2

# Exhibit D

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS

MBIA INSURANCE CORPORATION, et al.

# SUBPOENA IN A CIVIL CASE

V.

CASE NUMBER: [1]    **02-1294-JJF (D. Del)**

ROYAL INDEMNITY COMPANY

TO:
  MAC Insurance Agency, Inc.
  c/o Ted E. Moor, III, Registered Agent
  3500 Hwy. 365
  Port Arthur, TX  77642

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See attached schedule of documents.**

| PLACE<br>Vinson & Elkins LLP<br>c/o Jeffrey S. Johnston, Esq.<br>First City Tower<br>1001 Fannin Street, Suite 2300<br>Houston, Texas 77002-6760 | DATE AND TIME<br><br>10/4/2006, 1:00 p.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure.  30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *(signature)* | 9/18/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

John W. Shaw
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
(302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

ATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule of Documents for MAC Insurance Agency, Inc. Subpoena

### Definitions

1.    "Document" is intended to be given the broadest possible scope and includes any written, recorded or graphic matter, or any other means of preserving thought or expression, including all non-identical copies, drafts, worksheets, work papers, proofs, whether handwritten, typed, printed, photocopied, photographed, tape-recorded, transcribed, filed or otherwise created, specifically including, but not limited to, telephone slips and logs, diary entries facsimiles, presentations, calendars, reports, spreadsheets, minutes, correspondence, memoranda, notes, videotapes, audio tapes, electronic or digital recordings of any kind, photographs, and any other form of communication or representation. It also includes, without limitation, all information stored in a computer system although not yet printed out, all information stored on computer hard drives, all information stored on floppy diskettes, computer tape backups, CD-ROM, and/or e-mail.

2.    "Communication" means any transmission of thoughts, opinions, data, or information, in the form of facts, ideas, inquiries, or otherwise, including, without limitation, correspondence, letters, e-mail, facsimiles, reports, memoranda, contacts, discussions, calculations, presentations and any other written or oral exchange between any two or more persons.

3.    "AIU" means AIU Insurance Company as well as American International Group, Inc. and any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

4.    "Ambac" means Ambac Assurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

5.    "Aquino" refers to the individual Michael Aquino.

6.    "Audit" or Accounting Report" means any opinion or report issued by any auditor, accountant, or other similar professional, including without limitation any Independent Accountant's Report, Audit Report, or repot on Agreed-Upon Procedures or "AUPs," concerning SFC, SLS, or SMS.

7.    "BDO" means BDO Seidman, LLP, as well as its parents, subsidiaries, affiliates, partners, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

8.    "Benfield" means Benfield, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

- 1 -

9.    "Capital" means Capital Reinsurance Company as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

10.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

11.    "Credit Risk Insurance Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction.  The term "Credit Risk Insurance Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

12.    "Deutsche Bank" shall mean Deutsche Bank Securities, Inc., Banker's Trust Company, and their current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

13.    "Due Diligence" refers to the process of investigation into a transaction, including, without limitation, the examination of operations and management, research and analysis of historical financial and/or transactional information, verification of any material facts related to the transaction, stress testing the transaction itself and the viability of any assets underlying the transaction, and evaluation of the credit worthiness of any participating parties.

14.    "Eagle" means Eagle Funding Capital Corporation as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

15.    "FEU" means the division of Royal referred to as the Financial Enhancement Unit, as well as any subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives of FEU.

16.    "Finova" means Finova Capital Corporation and Finova Loan Administration, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

17.    "Fitch" means Fitch, Inc. as well as Fitch IBCA, Inc., Fitch IBCA, Duff & Phelps, The International Rating Agency and any subsidiary or affiliate companies predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

18.    "Fleet" means Fleet Securities, Inc. as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or

representatives of Fleet, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

19.    "Fox Rothschild" shall mean Fox Rothschild O'Brien & Frankel and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

20.    "Freed" shall mean Freed Maxick & Battaglia CPAs PC and Freed Maxick Sachs & Murphy, P.C., or either of them, and their current for former principals, partners, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary predecessor or affiliated corporation or entity that have possession of, custody of, control of, knowledge of, or responsibility for any document or information called for by these discovery requests, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

21.    "Gagné" shall mean Roderick Gagné, defendant in this action, including his agents, representatives, and all other persons or entities acting or purporting to act on his behalf, whether authorized to do so or not, including any consultants, brokers, or attorneys.

22.    "GenRe" means General Reinsurance Corporation as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

23.    "Gerling" means any member of the Gerling Group, including but not limited to Gerling American Insurance Company, as well as their parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

24.    "Grant Thornton" means Grant Thornton LLP, as well as its partners, employees, agents, attorneys and representatives as well as any affiliates of Grant Thornton, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

25.    "Great American" means Great American Financial Resources, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

26.    "Havenwood Capital" means Havenwood Capital Markets, LLC as well as any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Havenwood Capital, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

27.    "IBG" means International Benefits Group, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, including but not limited to Joseph F. Domal, each person acting on their behalf or under their control and any parent, subsidiary, predecessor, successor or affiliated corporation.

28.    "Liberty" means Liberty International as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

29.    "Loofbourrow" shall mean John W. Loofbourrow and Associates, Inc. and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

30.    "MAC Insurance" means MAC Insurance Agency and its directors, officers, employees, agents and attorneys, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

31.    "Market Street" refers to Market Street Capital Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

32.    "MBIA" shall mean MBIA Insurance Corporation, and its current or former officers, directors, employees, agent, representatives, and attorneys (including its attorneys Kutak Rah LLP), each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity.

33.    "MBIA Policies" shall mean the MBIA Policies issued by MBIA in connection with the SFC Transactions and any attachments, amendments or modifications thereto.

34.    "McGladrey" means McGladrey & Pullen LLP and RSM McGladrey, as well as their partners, employees, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

35.    "Moody's" means Moody's Corporation as well as Moody's Investors Service and any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of those entities, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation or entity.

36.    "Other Royal Credit Risk Insurance Policies" means any Credit Risk Insurance Policy issued by Royal Indemnity Company between January 1, 1998 and December 31, 2002 other than a Credit Risk Insurance Policy issued in connection with SFC or any SFC Transaction.

37.    "Pepper" shall mean Pepper Hamilton LLP and its current or former principals, partners, directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

38.    "Person" means and includes, without limitation, every natural person, association, firm, partnership, corporation, board, committee, agency, commission, legal entity of any form or type, and every other organization or entity, whether public or private.

39.    "PNC" shall mean PNC Bank, N.A., and its current or former directors, officers, employees, agents, representatives and attorneys, and each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation or entity, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

40.    "Pooling and Servicing Agreement(s)" shall mean all agreements identified as Pooling and Servicing Agreement which pertain to the SFC Trusts, including each of the agreements (and any attachments, amendments, or modifications thereto) among Wells Fargo and SFC affiliates that were executed in connection with the SFC Transactions and pursuant to which Wells Fargo, among other things, undertook the duty to monitor the performance of the SFC Student Loans.

41.    "Private Placement Memoranda" shall mean all Documents identified as Private Placement Memoranda (including any attachments, amendment, or modifications thereto) which pertain to the SFC Loans and SFC Trusts, including those issued by Pepper Hamilton in connection with the SFC Transactions.

42.    "Rating Agencies" shall mean Moody's, Fitch IBCA, Inc., Duff & Phelps, S&P, The International Rating Agency, and their current or former principals, owners, officers, directors, partners, stockholders, shareholders associates, employees, staff members, agent, representatives, attorneys, subsidiaries, affiliates, divisions, successors, and predecessors, and all Persons or entities currently or formerly acting or purporting to act on their behalf.

43.    "Rating" means the procedure by which Fitch, Moody's, Standard & Poor's measure the credit worthiness of an issuer or borrower, including but not limited to the assignment of a standardized credit rating (e.g., AAA, AA, A, etc.). As used herein the term "Rating" includes but is not limited to the decision to issue a rating and the assignment of a particular rating.

44.    "Related Royal and SFC Litigations" means all litigation in which Royal or SFC is or has been a party arising out of Royal's relationship with Student Finance Corporation, including any appeal of such a matter, and including, without limitation:

- *Royal Indemnity Co. v. Franklin Career Service, Inc.,* 3:04-cv-00038-CRS (W.D. Ky.)

- *Wilmington Trust PA v. Royal Indemnity Co.*, 1:02-cv-1361-JJF (D.Del.);

- *Royal Indemnity Co. v. Commercial Driver Inst. Inc.*, o4-cv-107 (M.D. Tenn.);

- *MBIA Ins. Corp. v. Royal Indemnity Co.*, 1:02-cv-1294-JJF (D.Del.);

- *Royal Indemnity Co. v. Pepper Hamilton, 1:05-cv-165-JJF (D.Del.);*

- *Royal Indemnity Co. v. T.E. Moor & Co.*, D167370 (58th Dist., Jefferson County, TX);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-953-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-507-JJF (D.Del.);

- *Stanziale v. Royal Indemnity Co.*, 04-adv-53306-JBR (Bankr.D.Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 03-cv-507-SLR (D. Del.);

- *Student Finance Corp. v. Royal Indemnity Co.,* 02-adv-6803-LK (Bankr.D.Del.);

- *Nielsen Electronics Inst. v.. Student Finance Corp.*, 99-285-MNS (D.Del.);

- *FDIC v. Student Finance Corp.*, 98-D-2703SFC (D. Co.);

- *SWH Funding Corp. v. Student Finance Corp.*, BER-L (N.J. Sup. Ct. 2002); and

- *SWH Funding Corp. v. Student Finance Corp.*, 2:02-cv-02464-FSH (D.N.J.)

45. "Royal" means Royal Indemnity Company and Royal & Sun Alliance, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

46. "Servicer Reports" shall mean any document delivered or required to be delivered on a monthly basis by SFC to Wells Fargo or any other persons reflecting or representing information as to SFC Loans specifically including, without limitation, any and all "Servicer Reports" as the term is used in the Pooling and Servicing Agreements.

47. "SFC" means Student Finance Corporation; Student Loan Servicing, LLC; Student Marketing Services, LLC: Student Placement Services, LLC; SFC Financial I, LLC; SFC Financial II, LLC; SFC Acceptance I, LLC, SFC Acceptance II, LLC, SFC Acceptance III, LLC; SFC Acceptance IV, LLC; SFC Acceptance V, LLC; SFC Acceptance VI, LLC; SFC Acceptance VII, LLC; SFC Acceptance VIII, LLC; and SFC Acceptance IX, LLC (and any other

related subsidiaries or affiliates), as well as their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, attorneys, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

48.    "SFC Grantor Trust" and "SFC Owner Trust" refer to the trusts settled for the purpose of holding title to the student loans securitized by SFC. SFC Grantor Trust and SFC Owner Trust include, but are not limited to, SFC Grantor Trust, series 2000-1, SFC Grantor Trust, Series 2000-2, SFC Grantor Trust, Series 2000-3, SFC Grantor Trust, Series 2000-4, SFC Grantor Trust, Series 2001-1, SFC Grantor Trust, Series 2001-2, SFC Grantor Trust, Series 2001-3, and SFC Owner Trust 2001-I.

49.    "SFC Loan", "loan made by SFC", "Loan purchased by SFC" and the combination or derivation of these terms is used interchangeably, as synonymous, and includes, without limitation, all loans, installment contracts, promissory notes and any other form of financing by which SFC financed, funded or promised to finance or fund, a student's attendance or enrollment in a vocational or educational institution or program, directly or indirectly, contemporaneously, subsequent or prior to the student's enrollment or attendance.

50.    "SFC Policies" means any insurance issued or considered for issuance related to SFC and/or any SFC Transaction. The term "SFC Policies" includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

51.    "SFC Transactions" refers to all SFC-related warehouse financings, revolving credit facilities, securitizations, bridge or other loans, whether consummated or unconsummated.

52.    "Shadow Rating" means the determination of a non-public rating used to assess the credit strength of assets backing securities and the structure of a transaction, rather than any guaranty on the underlying assets or on the securities themselves (sometimes referred to as an "underlying rating"). As used herein the term "Shadow Rating" includes but is not limited to the decision to issue a shadow rating and the assignment of a particular shadow rating.

53.    "SWH" means SWH Funding Corp. and Spectrum Funding Corporation LLC, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

54.    "S&P" means Standard & Poor's as well as any subsidiary or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of S&P, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

55.    "T.E. Moor" shall mean T.E. Moor & Co., and its directors, officers, employees, agents and attorneys including Ted E. Moor, III and Gerald Parker, each person acting on its behalf or under its control, and any parent, subsidiary, predecessor or affiliated corporation including but not limited to any MAC Insurance Agency and Talon Insurance Agency, each

- 7 -

person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

56. "Truck Schools" means any trucking, trade, or other educational institution having at any time any business relationship with SC including without limitation Neilsen Electronics, Hook Up Drivers, Thoroughbred Truck Driving School, Commercial Driver Institute, Inc., MTC Schools, Truck Driver Institute, Inc., Transport Training, Inc., MPIII Holdings, Inc., Alliance Corp. and Across America, Inc., as well as the parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives of any "Truck School", each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

57. "Salomon Smith Barney" includes any parent, subsidiary, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives of Salomon Smith Barney, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

58. "Trustee" refers to Charles a. Stanziale, Jr., Esquire, as the Chapter 7 (and Chapter 11) Trustee for the Estate of Student Finance Corporation, as well as the Trustee's employees, agents, attorneys and representatives.

59. "Virgil Baker" shall mean Virgil Baker & Associates Inc. and its current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

60. "Wells" or "Wells Fargo" shall mean Wells Fargo Bank Minnesota, N.A., and its current or former principals, directors, officers, employees, agents, representatives and attorneys (including Dorsey & Whitney LLP), each person acting on its behalf or under its control and any parent subsidiary, predecessor or affiliated corporation. "Wells Fargo" specifically includes, without limitation, any trust for which Wells Fargo as defined above acts as a trustee or that Wells Fargo administers, oversees, or that is in any way related, affiliated or connected to Wells Fargo.

61. "Wilmington Trust" shall mean Wilmington Trust Company of Pennsylvania and its current or former officers, directors, employees, agents, representatives, and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

62. "XL" means XL Capital Assurance, Inc. as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, agents, officers, directors, attorneys, employees, or representatives, each person acting on their behalf or under their control and any parent, subsidiary, predecessor or affiliated corporation.

63. "Yao" refers to the individual Andrew N. Yao.

64. "You" means T.E. Moor the entity or Ted E. Moor III the individual or Gerald Parker or Patti Gilliam as necessary to read the requests in their broadest sense.

- 8 -

65.    All words and phrases shall be construed in accordance with normal custom and usage in the industries or field of commerce to which they apply.

66.    "Concerning" means relating to, referring to, memorializing, describing, evidencing or constituting.

67.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

68.    The use of the singular form of any word includes the plural and vice versa.

69.    Unless otherwise stated, all requests are for documents created, obtained, generated or produced during the period from January 1, 1996 to the date of this subpoena.

## Documents Requested

1.    All Documents and Communications concerning (a) SFC; (b) any SFC Loan; (c) the SFC Grantor Trusts or SFC Owner Trust; (d) the SFC Policies; (e) or any SFC Transactions.

2.    All Documents concerning any Related SFC or Royal Litigation, including, but not limited to, any document produced by you in connection with any such litigation.

3.    All Documents and Communications exchanged between you, on the one hand, and the following persons or entities, on the other hand, that refer or relate to SFC, SFC Loans, the SFC Grantor Trusts, SFC Owner Trust, the SFC Policies, or any SFC Transaction: (a) AIU; (b) Ambac; (c) Bankers Trust; (d) BDO; (e) Benfield; (f) Capital; (g) Duff & Phelps; (h) Deutsche Bank; (i) Eagle; (j) Finova; (k) Fitch; (l) Fleet; (m) Fox Rothschild; (n) Freed; (o) Gagné; (p) GenRe; (q) Gerling; (r) Grant Thornton; (s) Great American; (t) Havenwood Capital; (u) The International Rating Agency; (v) IBG; (w) Liberty; (x) Loofbourrow; (y) Market Street; (z) MBIA; (aa) McGladrey; (bb) Moody's; (cc) Pepper; (dd) PNC; (ee) Roger "Rusty" Saylor; Royal; (ff) SWH; (gg) S&P; (hh) the Trustee; (ii) Trucking Schools; (jj) Salomon Smith Barney; (kk) Virgil Baker; (ll) Wells Fargo; (mm) Wilmington Trust; (nn) XL and (oo) Yao.

4.    All Documents and Communications concerning Due Diligence of SFC in connection with SFC, SFC Policies or SFC Loans, and SFC Transactions.

5.    All Documents and Communications concerning any efforts by SFC to obtain insurance or reinsurance.

6.    All Documents and Communications concerning any Credit Risk Insurance Policies issued by Royal.

7.    All Documents and Communications concerning any MBIA Policies.

8.    All Documents and Communications concerning any inspection, investigation, analysis, review or audit of: (a) SFC, (b) any SFC Loan, (c) the SFC Grantor Trust, (d) the SFC Owner Trust, (e) the SFC Policies; (f) or SFC Transactions, including but not limited to inspections, investigations, analyses, reviews and audits conducted by: T.E. Moor, IBG, Royal, Grant Thornton, BDO, Freed, McGladrey, Pepper, SWH, MBIA and Wells Fargo.

9.    All Documents or Communications concerning Royal, MBIA, Wells Fargo, PNC, Wilmington Trust, Pepper; Gagné; Truck Schools; IBG; T.E. Moor; McGladrey; Aquino; and/or Yao, referring or relating to SFC, any SFC Loan, the SFC Grantor Trusts or SFC Owner Trust, the SFC Policies or any SFC Transactions.

10.    All Documents or Communications concerning the Ratings or Shadow Ratings by any Rating Agency concerning SFC, SFC Policies or SFC Transactions.

11.    Any and all Documents or Communications concerning any agreement to which SFC was a party, including but not limited to, all Documents or Communications concerning Royal's Credit Risk Insurance Policies and any other agreements between Royal and SFC.

12.    All Documents and Communications with any law enforcement or regulatory agency concerning SFC or Yao.

13.    All Documents or Communications concerning any Other Royal Credit Risk Insurance Policies (see Definition 36 above).

- 11 -