## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MBIA INSURANCE CORPORATION, et al.,<br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>ROYAL INDEMNITY COMPANY,<br>Defendant/Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 02-1294-JJF |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee,<br>Plaintiff,<br><br>v.<br><br>PEPPER HAMILTON LLP, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-1551-JJF |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee,<br>Plaintiff,<br><br>v.<br><br>McGLADREY & PULLEN LLP, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-72-JJF |
| ROYAL INDEMNITY COMPANY,<br>Plaintiff,<br><br>v.<br><br>PEPPER HAMILTON LLP, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-165-JJF |

## ROYAL INDEMNITY COMPANY'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE REGARDING ROYAL'S ALLEGED VIOLATION OF DELAWARE INSURANCE CODE SECTION 909

Royal Indemnity Company ("Royal") respectfully submits this motion *in limine* to exclude from trial all evidence regarding Royal's alleged violation of Section 909 of the Delaware Insurance Code ("Section 909"). This evidence should be precluded because 1) Wells Fargo Bank, N.A. ("Wells") does not have standing to raise this argument as a defense in this action, and 2) evidence regarding Section 909 is factually and legally irrelevant, yet will necessitate a time-wasting mini-trial on a collateral issue.

There is no evidence that Royal violated Section 909. At all times during its involvement with the SFC transactions at issue here, Royal was under careful and strict oversight of the Delaware Department of Insurance. The Department was fully aware of policies Royal issued in connection with the SFC securitizations, yet tellingly the Department never raised any issue that Royal somehow violated Section 909. Even after this litigation was filed, and Royal's alleged violation of Section 909 was raised as an affirmative defense by Pepper Hamilton, the Department never even suggested that Royal's issuance of the policies at issue violated Delaware law. Indeed the former Delaware Insurance Commissioner herself testified in this action that the policies Royal issued in conjunction with the SFC securitizations did not violate Section 909.

Nevertheless, in its July 30, 2007 letter to this Court, Wells stated its intention to "adopt[] Pepper Hamilton's argument" that Royal violated Section 909, and that as a result of this violation, Royal's contributory negligence should reduce any award of damages. The only support for this contention is the after-the-fact testimony of an expert retained by Pepper. As would have been true had Royal's case against Pepper gone to trial, Wells's attempt to introduce evidence regarding Section 909 is an irrelevant sideshow and should not be permitted.[1]

Section 909 provides, in relevant part:

> (a) No insurer shall retain any risk on any one subject of insurance, whether located or to be performed in this State or elsewhere, in an amount exceeding 10% of its surplus to policyholders.

> (b) A "subject of insurance" for the purposes of this section, as to insurance against fire and hazards other than windstorm, earthquake and other catastrophic hazards, includes all properties insured by the same insurer which are customarily considered by

---

[1] Although Wells has expressly announced its intention to inject evidence regarding Section 909 into this case, no party, including the Bast Family, W. Roderick Gagné, and/or Pepper Hamilton, should be permitted to rely on the evidence sought to be precluded by this motion.

> underwriters to be subject to loss or damage from the same fire or the same occurrence of any other hazard insured against.
>
> (c) Reinsurance ceded as authorized by § 910 of this title shall be deducted in determining risk retained….

Pepper's argument, that Wells now seeks to adopt and which Pepper's expert concedes was concocted *sui generis* for this case, is that each of the individual student loans insured by Royal over the course of its five-year dealings with SFC should be aggregated for purposes of Section 909, and that when so aggregated, Royal's insurance of those aggregated loans exceeded 10% of Royal's surplus to policyholders. Pepper contended that Royal's alleged violation of Section 909 constitutes negligence *per se*.

## ARGUMENT

## I.  WELLS FARGO LACKS STANDING TO RAISE ROYAL'S ALLEGED VIOLATION OF SECTION 909

A party can only raise a statutory negligence claim if 1) that party is within the "class of persons" intended to be protected by the statute at issue, and 2) the statute is intended to remedy or prevent the specific harm caused by the alleged negligence. *Stanton by Brooks v. Astra Pharm. Prods., Inc*., 718 F.2d 553, 563-64 (3d Cir. 1983) ("Under Pennsylvania law, the violation of a governmental safety regulation constitutes negligence *per se* if the regulation was, in part, intended to protect the interest of another as an individual [and] the interest of the plaintiff which was invaded ... was one which the act intended to protect.") (internal quotation marks and citations omitted); *Owens v. Process Indus., Inc*., 722 F. Supp. 70, 74 (D. Del. 1989) ("Not every injury following a violation of a regulation is a proper case for negligence *per se.* The injured party must be within "the class of persons protected" by the regulation and the "risk" of the injury must be within the regulation's "purpose." (citation omitted)).

3

As Pepper's expert concedes, the purpose of Section 909 is to ensure that Delaware insurers have adequate funds to pay policy holders in the event of a catastrophe.  *See* Foster Report, attached as Ex. A, at 6 ("The purpose of the single risk provision is to protect policyholder surplus by preventing insurance companies from taking too large a risk."); *see also Curiale v. Ardra Ins. Co*., 88 N.Y.2d 268, 277 (1996) (stating that the purpose of New York Ins. Law §1115, a substantively identical provision to Section 909, is to ensure the "availability of funds within the State to pay losses on insurance policies issued here").  Here, even if Royal had violated Section 909 – which, as discussed below, it did not – no one was damaged.  Any alleged "violation" did not create a shortfall that rendered Royal incapable of paying Wells or any other insureds under the insurance policies at issue.  Indeed, Wells has been paid under those policies.  Since Wells (or any other party) has not suffered any harm that Section 909 is intended to prevent, Wells lacks standing to bring a statutory negligence claim.[2]

## II.    ROYAL DID NOT VIOLATE SECTION 909, AND THE QUESTION OF WHETHER ROYAL COMPLIED WITH THE STATUTE IS FACTUALLY AND LEGALLY IRRELEVANT

Even if Wells could properly raise this statutory negligence argument, it has no bearing on the present case.  First, as discussed at length in Royal's motion *in limine* no. 1, Wells cannot introduce any "contributory negligence" evidence into this breach of contract case.  *See Coffin v. Fidelity-Philadelphia Trust Co*., 97 A.2d 857, 863 (Pa. 1953) (holding that it "is not the state of the law" in a breach of contract action that "somehow the innocence of each side should be weighed in a sort of doctrine of comparative negligence"); *Wheeling-Pittsburg Steel Co. v.*

---

[2] To the extend the Bast Family, Pepper Hamilton or any other party seeks to raise Royal's alleged violation of Section 909 at trial, they lack standing do so on the additional ground that those parties are not within the class of persons intended to be protected by the statute.

4

*Alexander & Alexander, Inc.*, 36 Pa. D. & C.3d 605 (Ct. Com. Pl. Allegheny Co. 1984), *aff'd*,

496 A.2d 861 (Pa. Super. Ct. 1985) ("[I]t is obvious that ordinary negligence is not relevant

where the harm has been found to result from breach of contract."); *Thornton v. Brown*, 84 Pa.

D. & C. 530, 533 (Ct. Com. Pl. Phila. Co. 1952) ("Contributory negligence is no defense to an

action for the breach of contract.").

Further, Wells cannot show that Royal violated Section 909 – negligently or otherwise.

The individual students Royal insured are not properly aggregated as "one risk."  The risk Royal

insured was the risk of whether each of these individual students would pay back their individual

loans, not whether, in the aggregate, the students would collectively pay.  As a Delaware

domestic insurer, Royal was under strict and routine regulatory oversight by the Delaware

Department of Insurance.  During the relevant time period, Royal underwent two multi-state

triennial exams, involving insurance regulators from Delaware, New York, California and

elsewhere reviewing six years of Royal's insurance activity.  Tellingly, neither Delaware's

Department of Insurance nor that of any other state has stated or even suggested that Royal either

violated Section 909 in connection with the SFC transactions or should have aggregated the

student loans as one risk, despite having been aware of Royal's involvement with the SFC

securitizations since at least 2002.

In fact, Donna Lee Williams, the Delaware Insurance Commissioner from 1993-2005 has

opined in this case that Royal did not violate Section 909 because "one subject of insurance"

means one individual student loan.  (*See* Ex. B, Report of Donna Lee Williams, at 2).  Further,

Williams explained at her deposition that she never encountered the issue of aggregation of

credit risk policies like Royal's – thus reinforcing that Royal's conduct could not have been a

violation of a clear standard set forth by Section 909 – and in fact she has never seen risk

aggregated in the manner suggested by Pepper's (and now Wells') expert:

> Q.      What sorts of risks have you seen be the basis for
>         aggregating the sort of risk that Royal insured here?
>
> THE WITNESS:  To the best of my recollection, this issue
> --the specific issue of the aggregation of credit risk was
> never brought to my attention.
>
> Q.      So you have never heard it suggested that the risk of
>         economic downturn be the basis, but you have not heard
>         any other risk being suggested as the basis for aggregating
>         the sort of risk that Royal insured here; is that correct?
>
> A.      Aggregation issues come up very infrequently.
>
> *        *        *
>
> Q.      [A]m I correct in understanding that you have not heard the
>         risk of economic downturn suggested as the basis for
>         aggregating the sort of risk that Royal insured here, but you
>         have likewise not heard any other risk be suggested as the
>         basis for aggregating the sort of risk that Royal insured
>         here, either?
>
> A.      That's correct, because aggregation issues are very
>         infrequent.
>
> *        *        *
>
> Q.      Under what kinds of circumstances would there be any
>         aggregation of risk in credit enhancement insurance… I
>         understand that your opinion is that they… the loans in this
>         case are not aggregated, so as to make them one risk; is that
>         right?
>
> A.      That's correct.
>
> Q.      Is there a circumstance you can think of where they would
>         be aggregated in the credit enhancement arena?
>
> A.      I don't know.  I mean, I can't think of any off the top of my
>         head.

6

(Ex. C, Williams Dep. Tr. at 81, 103-05 (objections omitted)).[3]

The testimony of Pepper's expert, Constance Foster, likewise demonstrates that the issue of risk aggregation under Section 909 has not been addressed in any definitive way:

> Q.     [A]re you aware in your experience as a regulatory lawyer or as a commissioner of the one risk rule ever being applied to credit risk policies where the aggregating factor used was the threat of economic downturn?
>
> THE WITNESS:  I'm not aware -- and we looked, but I am not aware that this issue has come up.  As the attorney general opinion notes, despite the fact that versions of these rules have been around for a long time, there's very little that's out there that assists in making these determinations. So, no, I'm not aware of any situation where it was applied specifically to a credit enhancement policy.

(Ex. D, Foster Dep. Tr., at 135).

Given the amorphous nature of what constitutes "one risk" under Section 909 – not even the Delaware Insurance Department found that Royal violated Section 909 in this situation – Wells cannot show that Royal violated a clear standard of conduct set forth by the statute, as is required to prove negligence.  *See Harden v. Allstate Ins. Co*., 883 F. Supp. 963, 969 (D. Del. 1995) (stating that in order to prove statutory negligence, a plaintiff must show that the statute at issue "embodies a standard of conduct" (internal quotation marks and citation omitted)); *see also Baraukas v. Danek Med., Inc*., 2000 WL 223508, *4 (M.D.N.C. 2000) (finding defendants' contention that statute is "too vague to act as a standard of care which could be used to establish negligence *per se*" is "support[ed by] North Carolina law") (citation omitted); *Chadbourne v.*

---

[3] George K. Bernstein, a former First Deputy Superintendent of the New York State Insurance Department and former Federal Insurance Administrator, also testified that he had never seen risks aggregated in the manner suggested by Pepper. (Ex. E, Bernstein Dep. Tr. at pp. 71, 104-106).

*Kappaz*, 779 A.2d 293, 297 (D.C. Ct. App. 2001) (finding statute "too general… to be the

subject of a negligence *per se* [jury] instruction"); *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1201

(Alaska 1992) (finding trial court properly refused to instruct jury on statutory negligence where

"statute is too vague or arcane to be used as a reasonable standard of care").

III.    **RESOLVING THE SECTION 909 ISSUE WOULD REQUIRE A TIME-CONSUMING TRIAL WITHIN A TRIAL**

      Finally, to explain fully Royal why did not violate Section 909 will necessitate a lengthy

trial within a trial.  Evidence may be excluded under Federal Rule of Evidence 403 if its

probative value is substantially outweighed by considerations of undue delay or waste of time.

*Lindquist v. Buckingham Tp.*, 2004 WL 1598735, *8 (3d Cir. 2004);  *Langer v. Monarch Life

Ins. Co.*, 966 F.2d 786, 799 (3d Cir. 1992) (Affirming preclusion of evidence because it "would

have confused the jury and misplaced their focus onto the minor subsidiary issue…rather [than

on] the major issues in the case."); *Skretvedt v. E.I. Du Pont De Nemours Co.*, 262 F. Supp. 2d

366, 373 (D. Del. 2003).  Trying the Section 909 issue will require testimony from no less than

three expert witnesses who will testify regarding the aggregation of losses, as well as a

significant detour through the language of the Royal Insurance 1989 Reinsurance Pooling

Agreement and its nine addenda.  All of this time and effort will be wasted at trial in order to

decide an issue that is completely irrelevant to this litigation and has no bearing on whether

Wells breached its contractual obligations.  Such a sideshow should not be permitted.  *See

Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992) ("[E]vidence may be excluded

when its admission would lead to litigation of collateral issues, thereby creating a side issue

which might distract the jury from the main issues.").

## CONCLUSION

For the foregoing reasons, Royal respectfully requests that this Court preclude the admission of any evidence relating to Royal's alleged violation of Section 909.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

*Of Counsel:*                                                         _____

Michael H. Barr                                          Philip Trainer, Jr. (I.D. #2788)
Kenneth J. Pfaehler                                      Tiffany Geyer Lydon (I.D. #3950)
SONNENSCHEIN NATH & ROSENTHAL LLP          Andrew D. Cordo (I.D. #4534)
1221 Avenue of the Americas                     500 Delaware Avenue, 8th Floor
New York, New York 10020-1089                   Wilmington, Delaware 19899
(212) 768-6700                                  (302) 654-1888
                                                ptrainer@ashby-geddes.com
- and -                                         tlydon@ashby-geddes.com
                                                acordo@ashby-geddes.com
John Grossbart
Steve Merouse                                   *Attorneys for Defendant/Counterclaim Plaintiff*
SONNENSCHEIN NATH & ROSENTHAL LLP          *Royal Indemnity Company*
7800 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000

Dated: September 28, 2007
184599.1

9